# NO. "13"

FILED
2/5/10          10:30 AM
MICHAEL K. JEANES, Clerk
By _J. Rutledge_
Deputy

PERMANENT ASSIGNMENT
540 Judge Willett
CC 848

1   J. Jeffrey Coughlin (013801)
    **J. JEFFREY COUGHLIN PLLC**
2   114 S. Pleasant Street
    Prescott, Arizona 86303
3   Telephone: (928) 445-7137
    Facsimile: (866) 890-8989
4   j.coughlin@azbar.org
    Attorneys for Plaintiffs
5

6           **IN THE SUPERIOR COURT OF THE STATE OF ARIZONA**

7               **IN AND FOR THE COUNTY OF MARICOPA**

8   PAUL VAN WEELDEN AND KAREN VAN
    WEELDEN, husband and wife; Paul Van          CV2010-000896
9   Weelden, as Trustee for THE VAN
    WEELDEN FAMILY TRUST.                    CASE NO. CV_____
10
                  Plaintiffs,
11                                          **TEMPORARY RESTRAINING**
                                                      **ORDER**
12  vs.

13  HILLCREST BANK, a Kansas banking
    corporation,
14                Defendants.

15

16      To:    Hillcrest Bank

17      This matter having come on before the Court on Plaintiff's Complaint and request for

18  temporary restraining order without notice, and the Court having considered the allegations of

19  the Verified Complaint, and Plaintiffs' attorney having certified to the Court in writing the

20  reasons supporting Plaintiffs' claim that notice should not be required, and it appearing that

21  immediate and irreparable injury, loss and damage will result to Plaintiffs before notice can be

22  given to Defendants or Defendants attorneys for the following reasons:

23
24      •   Plaintiffs will lose their judgment lien interest in real property prior to a

25          determination of the parties' rights in Maricopa County Cause No. CV2007-

            022139, a complaint pending before the Kansas State Bank Commissioner, a

                                    -1-

Cease and Desist Order issued by the DEIC and Office of the Kansas State Bank Commissioner and a complaint filed with the Arizona Department of Real Estate;

- Some of the property being sold in the trustee's sale is common area property to which Plaintiffs have a legal interest and a sale of such property will deprive Plaintiffs of their interest in such property permanently;

- There is insufficient time to give notice to Defendant before Defendant and Defendant's attorneys can be heard in opposition and conduct a hearing on Plaintiffs' request for temporary restraining order prior to the trustee's sale;

- Defendant has noticed and postponed the trustee's sale on multiple occasions prior to the currently scheduled sale on January 13, 2010 and will therefore be minimally harmed, if at all and good cause appearing therefor;

IT IS HEREBY ORDERED that a temporary retraining order be issued immediately, retraining Defendant, Defendant's attorneys, officers, agents, servants, employees, and any and all other persons in active concert or participation with them from conducting a trustee's sale or otherwise foreclosing upon the property described in Exhibit A attached hereto and incorporated herein by this reference prior to the completion of the litigation of the above-captioned matter.

IT IS FURTHER ORDERED that, unless further extended by Order of this Court, this Temporary Restraining Order shall remain in full force and effect pending a hearing upon and disposition of Plaintiffs' request for a preliminary injunction.

IT IS FURTHER ORDERED that, pursuant to Rule 65(e), Arizona Rules of Civil Procedure, that Plaintiffs file a bond, to be approved by the Court or deposit security with the Clerk of this Court, in the sum of $ _1,000. or_ for payment of such costs and

-2-

1  damages as may be incurred or suffered by any party found to have been wrongfully enjoined or

2  restrained by this Order.

3      DONE IN OPEN COURT this 5 day of Feb        2010.

4

5

6

7                              Judge of the Superior Court

8                              **HONORABLE EILEEN S. WILLETT**

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

-3-

EXHIBIT A

**First American Title**

**WHEN RECORDED, RETURN TO:**

Tambre L. Ruud, Paralegal
Engelman Berger, P.C.
3636 North Central Avenue, Suite 700
Phoenix, Arizona 85012

Trustee Sale File No.: 2329.001 or 385161

¾₄

OFFICIAL RECORDS OF
MARICOPA COUNTY RECORDER
HELEN PURCELL
20090625632  07/08/2009  11:20
ELECTRONIC RECORDING

385161-28-4-2--
sarabiam

**(SPACE ABOVE FOR RECORDER'S USE)**

**NOTICE OF TRUSTEE'S SALE**

   The following legally described trust property will be sold for cash, pursuant to the power of sale under that certain Construction Deed of Trust recorded on March 8, 2005, at Instrument No. 20050286616, and re-recorded on April 25, 2005, as 20050533163, of the official records of the Office of the County Recorder of Maricopa County, Arizona. A portion of the property encumbered by the Construction Deed of Trust will be sold at public auction to the highest bidder *at the law offices of Engelman Berger, P.C., 3636 N. Central Avenue, Suite 700, Phoenix, AZ 85012*, on **October 7, 2009, at 10:00 o'clock a.m.** of said day:

**LEGAL DESCRIPTION OF PROPERTY BEING SOLD:**

SEE EXHIBIT "A" ATTACHED HERETO

The street address or identifiable location of the trust property being sold is:

SEE EXHIBIT "1" ATTACHED HERETO

TAX PARCEL NO.:     SEE EXHIBIT "2" ATTACHED HERETO

ORIGINAL PRINCIPAL BALANCE:  $31,134,000.00

NAME AND ADDRESS OF
CURRENT BENEFICIARY:    Hillcrest Bank
            11111 W. 95th Street
            Overland Park, KS 66214

NAME AND ADDRESS OF
ORIGINAL TRUSTOR:     Quintero Golf & Country Club, L.L.C.
            16752 W. St. Rt. 74
            Peoria, AZ 85383

{00094725.DOC /}

20090625632

NAME AND ADDRESS OF
CURRENT TRUSTOR:                    Quintero Golf & Country Club, L.L.C.
                                    16752 W. St. Rt. 74
                                    Peoria, AZ  85383

NAME AND ADDRESS OF
VESTED OWNERS:                      Quintero Golf & Country Club, L.L.C.
                                    16752 W. St. Rt. 74
                                    Peoria, AZ  85383

                                    Quintero Entrada, L.L.C.
                                    16752 W. St. Rt. 74
                                    Peoria, AZ  85383

NAME AND ADDRESS OF
TRUSTEE:                            Wade M. Burgeson, Esq.
                                    Engelman Berger, P.C.
                                    3636 North Central Avenue, Suite 700
                                    Phoenix, Arizona  85012
                                    Telephone (602) 271-9090
                                    Facsimile (602) 222-4999
                                    snb@engelmanberger.com

QUALIFICATION OF TRUSTEE:           Member of the State Bar of Arizona

        The current Beneficiary reserves the right to make a credit bid, in lieu of cash bid,
at such sale. Every bidder, except the Beneficiary, shall be required to provide a Ten Thousand
Dollar ($10,000.00) deposit in the form of a cashier's check, made payable to the Trustee, as a
condition of entering a bid. The Trustee shall return deposits to any bidders whose bid(s) do not
result in the highest bid price.

        DATED this 7th day of July, 2009

                                    Wade M. Burgeson, Esq.

STATE OF ARIZONA        )
                        ) ss.
County of Maricopa      )

        The foregoing Notice of Trustee's Sale was acknowledged before me this 7th day
of July, 2009, by Wade M. Burgeson, Esq.

                                    Notary Public

Notary Expiration and Seal:

{00094725.DOC /}

"OFFICIAL SEAL"
Tambre L. Ruud
Notary Public-Arizona
Maricopa County
My Commission Expires 8/17/2009

20090625632

## EXHIBIT "A"

PARCEL NO. 1:

THE VILLAGES PARCEL 2, FOUNDERS GOLF COURSE PARCEL 1, FOUNDERS GOLF COURSE PARCEL 2, FOUNDERS GOLF COURSE PARCEL 3, FOUNDERS GOLF COURSE PARCEL 4, FOUNDERS GOLF COURSE PARCEL 5, RECREATIONAL PARCEL 1, RECREATIONAL PARCEL 2, OF QUINTERO GOLF AND COUNTRY CLUB PHASE I, ACCORDING TO THE PLAT OF RECORD IN THE OFFICE OF THE COUNTY RECORDER OF MARICOPA COUNTY, ARIZONA, RECORDED AS BOOK 592 OF MAPS, PAGE 42.

PARCEL NO. 2:

TRACTS A THROUGH D, INCLUSIVE, OF QUINTERO LANE, QUINTERO GOLF AND COUNTRY CLUB PHASE 1, ACCORDING TO THE PLAT OF RECORD IN THE OFFICE OF THE COUNTY RECORDER OF MARICOPA COUNTY, ARIZONA, RECORDED AS BOOK 592 OF MAPS, PAGE 44.

PARCEL NO. 3:

LOT 21, OF SUNSET VISTAS, QUINTERO GOLF AND COUNTRY CLUB PHASE 1, ACCORDING TO THE PLAT OF RECORD IN THE OFFICE OF THE COUNTY RECORDER OF MARICOPA COUNTY, ARIZONA, RECORDED AS BOOK 664 OF MAPS, PAGE 08.

PARCEL NO. 4:

LOTS 23, 25 AND 26, OF FOUNDERS ESTATES 2, QUINTERO GOLF AND COUNTRY CLUB PHASE 1, ACCORDING TO THE PLAT OF RECORD IN THE OFFICE OF THE COUNTY RECORDER OF MARICOPA COUNTY, ARIZONA, RECORDED AS BOOK 668 OF MAPS, PAGE 17.

PARCEL NO. 5:

LOT 16, OF THE RIDGE, QUINTERO GOLF AND COUNTRY CLUB PHASE 1, ACCORDING TO THE PLAT OF RECORD IN THE OFFICE OF THE COUNTY RECORDER OF MARICOPA COUNTY, ARIZONA, RECORDED AS BOOK 668 OF MAPS, PAGE 18.

PARCEL NO. 6:

LOTS 7 AND 11, OF FOUNDERS ESTATES 1, QUINTERO GOLF AND COUNTRY CLUB PHASE 1, ACCORDING TO THE PLAT OF RECORD IN THE OFFICE OF THE COUNTY RECORDER OF MARICOPA COUNTY, ARIZONA, RECORDED AS BOOK 668 OF MAPS, PAGE 19.

PARCEL NO. 7:

LOT 37, OF FOUNDERS ESTATES 3, QUINTERO GOLF AND COUNTRY CLUB PHASE 1, ACCORDING TO THE PLAT OF RECORD IN THE OFFICE OF THE COUNTY RECORDER OF MARICOPA COUNTY, ARIZONA, RECORDED AS BOOK 668 OF MAPS, PAGE 20.

PARCEL NO. 8:

LOTS 1 THROUGH 4, INCLUSIVE, LOTS 6 THROUGH 8, INCLUSIVE, LOTS 11, 13, 15, 16, 18 THROUGH 20, INCLUSIVE, OF THE ENCLAVE, QUINTERO GOLF AND COUNTRY CLUB PHASE 1, ACCORDING TO THE PLAT OF RECORD IN THE OFFICE OF THE COUNTY RECORDER OF MARICOPA COUNTY, ARIZONA, RECORDED AS BOOK 671 OF MAPS, PAGE 8.

20090625632

PARCEL NO. 9:

LOTS 46, 50, 51, 52, 55 AND TRACT A OF FOUNDERS ESTATES 4, QUINTERO GOLF AND COUNTRY CLUB PHASE 1, ACCORDING TO THE PLAT OF RECORD IN THE OFFICE OF THE COUNTY RECORDER OF MARICOPA COUNTY, ARIZONA, RECORDED AS BOOK 701 OF MAPS, PAGE 49.

PARCEL NO. 10:

INTENTIONALLY OMITTED

PARCEL NO. 11:

INTENTIONALLY OMITTED

PARCEL NO. 12:

INTENTIONALLY OMITTED

PARCEL NO. 13:

INTENTIONALLY OMITTED

PARCEL NO. 14:

INTENTIONALLY OMITTED

PARCEL NO. 15:

THOSE PORTIONS OF BESSEMER MINING CLAIMS NO. 9, 10, 15 AND 16, SITUATED IN SECTIONS 8 AND 17 OF TOWNSHIP 6 NORTH, RANGE 1 WEST OF THE GILA AND SALT RIVER BASE AND MERIDIAN, MARICOPA COUNTY, ARIZONA, MORE PARTICULARLY DESCRIBED AS FOLLOWS:

COMMENCING AT THE NORTHWEST CORNER OF SAID BESSEMER MINING CLAIM NO. 17, SAID CORNER LYING NORTH 68 DEGREES 52 MINUTES 55 SECONDS EAST A DISTANCE OF 7546.57 FEET FROM THE EAST QUARTER CORNER OF SECTION 13, TOWNSHIP 6 NORTH, RANGE 2 WEST OF THE SAID GILA AND SALT RIVER BASE AND MERIDIAN (BASIS OF BEARING BEING THE EAST LINE OF THE SOUTHEAST QUARTER OF SAID SECTION 13, SOUTH 00 DEGREES 18 MINUTES 33 SECONDS WEST A DISTANCE OF 2638.75 FEET);

THENCE NORTH 56 DEGREES 41 MINUTES 01 SECONDS EAST, ALONG THE NORTHERLY LINE OF SAID BESSEMER MINING CLAIM NO. 17, A DISTANCE OF 1247.15 FEET;

THENCE SOUTH 08 DEGREES 58 MINUTES 49 SECONDS EAST, LEAVING SAID NORTHERLY LINE, A DISTANCE OF 142.60 FEET;

THENCE SOUTH 72 DEGREES 30 MINUTES 48 SECONDS EAST A DISTANCE OF 140.00 FEET;

THENCE SOUTH 35 DEGREES 31 MINUTES 20 SECONDS EAST A DISTANCE OF 183.24 FEET;

THENCE SOUTH 35 DEGREES 46 MINUTES 32 SECONDS WEST A DISTANCE OF 24.12 FEET;

THENCE SOUTH 50 DEGREES 55 MINUTES 56 SECONDS EAST A DISTANCE OF 40.00 FEET TO A POINT LYING ON A CURVE CONCAVE NORTHWESTERLY HAVING A RADIUS OF WHICH BEARS NORTH 50

2

20090625632

DEGREES 55 MINUTES 56 SECONDS WEST A DISTANCE OF 250.00 FEET;

THENCE SOUTHWESTERLY ALONG THE ARC OF SAID CURVE THROUGH A CENTRAL ANGLE OF 25 DEGREES 20 MINUTES 30 SECONDS A DISTANCE OF 110.57 FEET TO THE BEGINNING OF A REVERSE CURVE CONCAVE SOUTHEASTERLY HAVING A RADIUS OF 210.00 FEET;

THENCE SOUTHWESTERLY ALONG THE ARC OF SAID CURVE THROUGH A CENTRAL ANGLE OF 31 DEGREES 31 MINUTES 56 SECONDS A DISTANCE OF 115.57 FEET TO THE BEGINNING OF A REVERSE CURVE CONCAVE NORTHWESTERLY HAVING A RADIUS OF 180.00 FEET;

THENCE SOUTHWESTERLY ALONG THE ARC OF SAID CURVE THROUGH A CENTRAL ANGLE OF 54 DEGREES 12 MINUTES 27 SECONDS A DISTANCE OF 170.30 FEET TO THE BEGINNING OF A REVERSE CURVE CONCAVE SOUTHEASTERLY HAVING A RADIUS OF 600.00 FEET;

THENCE SOUTHWESTERLY ALONG THE ARC OF SAID CURVE THROUGH A CENTRAL ANGLE OF 13 DEGREES 36 MINUTES 48 SECONDS A DISTANCE OF 142.56 FEET TO A POINT OF NON-TANGENCY;

THENCE SOUTH 16 DEGREES 33 MINUTES 47 SECONDS EAST A DISTANCE OF 23.23 FEET;

THENCE SOUTH 23 DEGREES 03 MINUTES 36 SECONDS WEST A DISTANCE OF 185.64 FEET;

THENCE SOUTH 61 DEGREES 47 MINUTES 41 SECONDS EAST A DISTANCE OF 191.28 FEET TO THE TRUE POINT OF BEGINNING;

THENCE SOUTH 66 DEGREES 56 MINUTES 24 SECONDS EAST A DISTANCE OF 106.03 FEET;

THENCE SOUTH 78 DEGREES 43 MINUTES 46 SECONDS EAST A DISTANCE OF 317.98 FEET;

THENCE SOUTH 59 DEGREES 15 MINUTES 14 SECONDS EAST A DISTANCE OF 103.95 FEET;

THENCE NORTH 73 DEGREES 22 MINUTES 02 SECONDS EAST A DISTANCE OF 569.02 FEET TO THE NORTHEAST CORNER OF SAID BESSEMER MINING CLAIM NO. 15, ALSO THE SOUTHWEST CORNER OF BESSEMER MINING CLAIM NO. 21;

THENCE SOUTH 33 DEGREES 24 MINUTES 57 SECONDS EAST, ALONG THE EASTERLY LINE OF SAID BESSEMER MINING CLAIM NO. 15, A DISTANCE OF 252.91 FEET;

THENCE SOUTH 77 DEGREES 04 MINUTES 59 SECONDS WEST, LEAVING SAID EASTERLY LINE, A DISTANCE OF 651.34 FEET;

THENCE SOUTH 03 DEGREES 17 MINUTES 25 SECONDS EAST A DISTANCE OF 194.27 FEET;

THENCE SOUTH 51 DEGREES 50 MINUTES 56 SECONDS WEST A DISTANCE OF 931.56 FEET TO A POINT LYING ON A CURVE CONCAVE SOUTHEASTERLY HAVING A RADIUS OF WHICH BEARS SOUTH 78 DEGREES 43 MINUTES 49 SECONDS EAST A DISTANCE OF 144.00 FEET;

THENCE SOUTHWESTERLY ALONG THE ARC OF SAID CURVE THROUGH A CENTRAL ANGLE OF 08 DEGREES 20 MINUTES 17 SECONDS A DISTANCE OF 20.96 FEET TO A POINT OF TANGENCY;

THENCE SOUTH 02 DEGREES 55 MINUTES 54 SECONDS WEST A DISTANCE OF 96.29 FEET TO THE BEGINNING OF A CURVE CONCAVE SOUTHEASTERLY HAVING A RADIUS OF 160.00 FEET;

THENCE SOUTHEASTERLY ALONG THE ARC OF SAID CURVE THROUGH A CENTRAL ANGLE OF 36

3

20090625632

DEGREES 19 MINUTES 36 SECONDS A DISTANCE OF 101.44 FEET TO A POINT OF TANGENCY;

THENCE SOUTH 33 DEGREES 23 MINUTES 42 SECONDS EAST A DISTANCE OF 42.46 FEET TO A POINT LYING ON THE SOUTHERLY LINE OF BESSEMER MINING CLAIM NO. 10;

THENCE SOUTH 56 DEGREES 36 MINUTES 18 SECONDS WEST, ALONG SAID SOUTHERLY LINE, A DISTANCE OF 40.00 FEET;

THENCE NORTH 33 DEGREES 23 MINUTES 42 SECONDS WEST, LEAVING SAID SOUTHERLY LINE, A DISTANCE OF 42.46 FEET TO THE BEGINNING OF A CURVE CONCAVE NORTHEASTERLY HAVING A RADIUS OF 200.00 FEET;

THENCE NORTHWESTERLY ALONG THE ARC OF SAID CURVE THROUGH A CENTRAL ANGLE OF 36 DEGREES 19 MINUTES 36 SECONDS A DISTANCE OF 126.80 FEET TO A POINT OF TANGENCY;

THENCE NORTH 02 DEGREES 55 MINUTES 54 SECONDS EAST A DISTANCE OF 77.56 FEET;

THENCE SOUTH 52 DEGREES 29 MINUTES 54 SECONDS WEST A DISTANCE OF 227.40 FEET;

THENCE NORTH 83 DEGREES 12 MINUTES 51 SECONDS WEST A DISTANCE OF 100.68 FEET;

THENCE NORTH 04 DEGREES 39 MINUTES 39 SECONDS EAST A DISTANCE OF 590.15 FEET;

THENCE NORTH 22 DEGREES 52 MINUTES 07 SECONDS EAST A DISTANCE OF 780.11 FEET;

THENCE NORTH 56 DEGREES 17 MINUTES 46 SECONDS EAST A DISTANCE OF 109.07 FEET TO THE TRUE POINT OF BEGINNING.

PARCEL NO. 16:

THOSE PORTIONS OF BESSEMER MINING CLAIMS NO. 8 AND 17, SITUATED IN SECTIONS 8 AND 17 OF TOWNSHIP 6 NORTH, RANGE 1 WEST OF THE GILA AND SALT RIVER BASE AND MERIDIAN, MARICOPA COUNTY, ARIZONA, MORE PARTICULARLY DESCRIBED AS FOLLOWS:

BEGINNING AT THE NORTHWEST CORNER OF SAID BESSEMER MINING CLAIM NO. 17, SAID CORNER LYING NORTH 68 DEGREES 52 MINUTES 55 SECONDS EAST A DISTANCE OF 7546.57 FEET FROM THE EAST QUARTER CORNER OF SECTION 13, TOWNSHIP 6 NORTH, RANGE 2 WEST OF THE SAID GILA AND SALT RIVER BASE AND MERIDIAN (BASIS OF BEARING THE EAST LINE OF THE SOUTHEAST QUARTER OF SAID SECTION 13, SOUTH 00 DEGREES 18 MINUTES 33 SECONDS WEST A DISTANCE OF 2638.75 FEET);

THENCE NORTH 56 DEGREES 41 MINUTES 01 SECONDS EAST, ALONG THE NORTHERLY LINE OF SAID BESSEMER MINING CLAIM NO. 17, A DISTANCE OF 1247.15 FEET;

THENCE SOUTH 08 DEGREES 58 MINUTES 49 SECONDS EAST, LEAVING SAID NORTHERLY LINE, A DISTANCE OF 142.60 FEET;

THENCE SOUTH 72 DEGREES 30 MINUTES 48 SECONDS EAST A DISTANCE OF 140.00 FEET;

THENCE SOUTH 35 DEGREES 31 MINUTES 20 SECONDS EAST A DISTANCE OF 183.24 FEET;

THENCE SOUTH 35 DEGREES 46 MINUTES 32 SECONDS WEST A DISTANCE OF 24.12 FEET;

4

20090625632

THENCE SOUTH 50 DEGREES 55 MINUTES 56 SECONDS EAST A DISTANCE OF 40.00 FEET TO A POINT LYING ON A CURVE CONCAVE NORTHWESTERLY HAVING A RADIUS OF WHICH BEARS NORTH 50 DEGREES 55 MINUTES 56 SECONDS WEST A DISTANCE OF 250.00 FEET;

THENCE SOUTHWESTERLY ALONG THE ARC OF SAID CURVE THROUGH A CENTRAL ANGLE OF 25 DEGREES 20 MINUTES 30 SECONDS A DISTANCE OF 110.57 FEET TO THE BEGINNING OF A REVERSE CURVE CONCAVE SOUTHEASTERLY HAVING A RADIUS OF 210.00 FEET;

THENCE SOUTHWESTERLY ALONG THE ARC OF SAID CURVE THROUGH A CENTRAL ANGLE OF 31 DEGREES 31 MINUTES 56 SECONDS A DISTANCE OF 115.57 FEET TO THE BEGINNING OF A REVERSE CURVE CONCAVE NORTHWESTERLY HAVING A RADIUS OF 180.00 FEET;

THENCE SOUTHWESTERLY ALONG THE ARC OF SAID CURVE THROUGH A CENTRAL ANGLE OF 54 DEGREES 12 MINUTES 27 SECONDS A DISTANCE OF 170.30 FEET TO THE BEGINNING OF A REVERSE CURVE CONCAVE SOUTHEASTERLY HAVING A RADIUS OF 600.00 FEET;

THENCE SOUTHWESTERLY ALONG THE ARC OF SAID CURVE THROUGH A CENTRAL ANGLE OF 13 DEGREES 36 MINUTES 48 SECONDS A DISTANCE OF 142.56 FEET TO A POINT OF NON-TANGENCY;

THENCE SOUTH 16 DEGREES 33 MINUTES 47 SECONDS EAST A DISTANCE OF 23.23 FEET;

THENCE SOUTH 23 DEGREES 03 MINUTES 36 SECONDS WEST A DISTANCE OF 185.64 FEET;

THENCE SOUTH 72 DEGREES 33 MINUTES 28 SECONDS WEST A DISTANCE OF 258.71 FEET;

THENCE SOUTH 42 DEGREES 06 MINUTES 18 SECONDS WEST A DISTANCE OF 475.44 FEET;

THENCE NORTH 86 DEGREES 54 MINUTES 20 SECONDS WEST A DISTANCE OF 284.68 FEET;

THENCE SOUTH 35 DEGREES 31 MINUTES 25 SECONDS WEST A DISTANCE OF 247.56 FEET;

THENCE NORTH 48 DEGREES 53 MINUTES 21 SECONDS WEST A DISTANCE OF 275.03 FEET;

THENCE NORTH 14 DEGREES 44 MINUTES 23 SECONDS WEST A DISTANCE OF 268.58 FEET TO A POINT LYING ON THE NORTHERLY LINE OF BESSEMER MINING CLAIM NO. 8;

THENCE NORTH 56 DEGREES 27 MINUTES 55 SECONDS EAST, ALONG SAID NORTHERLY LINE OF SAID BESSEMER MINING CLAIM NO. 8, A DISTANCE OF 561.35 FEET TO THE POINT OF BEGINNING.

PARCEL NO. 17:

INTENTIONALLY OMITTED

PARCEL NO. 18:

BESSEMER MINING CLAIMS NO. 16 AND 21 SITUATED IN SECTION 8, TOWNSHIP 6 NORTH, RANGE 1 WEST OF THE GILA AND SALT RIVER BASE AND MERIDIAN, MARICOPA COUNTY, ARIZONA;

EXCEPT ANY PORTION LYING WITHIN THE FOLLOWING DESCRIBED PROPERTY:

THOSE PORTIONS OF BESSEMER MINING CLAIMS NO. 17, 20 AND 21, SITUATED IN SECTION 8 OF TOWNSHIP 6 NORTH, RANGE 1 WEST OF THE GILA AND SALT RIVER BASE AND MERIDIAN, MARICOPA COUNTY, ARIZONA, MORE PARTICULARLY DESCRIBED AS FOLLOWS:

5

20090625632

BEGINNING AT THE NORTHEAST CORNER OF SAID BESSEMER MINING CLAIM NO. 20, SAID CORNER LYING NORTH 65 DEGREES 24 MINUTES 23 SECONDS EAST A DISTANCE OF 10502.55 FEET FROM THE EAST QUARTER CORNER OF SECTION 13, TOWNSHIP 6 NORTH RANGE 2 WEST (BASIS OF BEARING BEING THE EAST LINE OF THE SOUTHEAST QUARTER OF SAID SECTION 13, SOUTH 00 DEGREES 18 MINUTES 33 SECONDS WEST A DISTANCE OF 2638.75 FEET);

THENCE SOUTH 33 DEGREES 18 MINUTES 11 SECONDS EAST ALONG THE EASTERLY LINE OF SAID BESSEMER MINING CLAIM NO. 20, A DISTANCE OF 281.01 FEET;

THENCE SOUTH 83 DEGREES 29 MINUTES 29 SECONDS WEST LEAVING SAID EASTERLY LINE, A DISTANCE OF 511.77 FEET;

THENCE SOUTH 31 DEGREES 22 MINUTES 00 SECONDS WEST A DISTANCE OF 353.55 FEET TO A POINT LYING IN A CURVE HAVING A RADIUS OF WHICH BEARS SOUTH 40 DEGREES 01 MINUTES 24 SECONDS WEST A DISTANCE OF 140.00 FEET;

THENCE SOUTHEASTERLY ALONG THE ARC OF SAID CURVE THROUGH A CENTRAL ANGLE OF 11 DEGREES 54 MINUTES 22 SECONDS A DISTANCE OF 29.09 FEET TO A POINT OF TANGENCY;

THENCE SOUTH 38 DEGREES 04 MINUTES 14 SECONDS EAST A DISTANCE OF 208.05 FEET;

THENCE NORTH 23 DEGREES 36 MINUTES 11 SECONDS EAST A DISTANCE OF 47.11 FEET;

THENCE SOUTH 31 DEGREES 24 MINUTES 48 SECONDS EAST A DISTANCE OF 38.85 FEET;

THENCE SOUTH 51 DEGREES 09 MINUTES 16 SECONDS EAST A DISTANCE OF 171.77 FEET;

THENCE SOUTH 45 DEGREES 01 MINUTES 34 SECONDS EAST A DISTANCE OF 60.50 FEET;

THENCE SOUTH 31 DEGREES 40 MINUTES 04 SECONDS EAST A DISTANCE OF 68.86 FEET TO A POINT LYING ON A CURVE HAVING A RADIUS OF WHICH BEARS NORTH 04 DEGREES 07 MINUTES 50 SECONDS EAST A DISTANCE OF 230.00 FEET;

THENCE NORTHEASTERLY ALONG THE ARC OF SAID CURVE THROUGH A CENTRAL ANGLE OF 33 DEGREES 46 MINUTES 04 SECONDS A DISTANCE OF 135.55 FEET TO A POINT OF TANGENCY;

THENCE NORTH 60 DEGREES 21 MINUTES 46 SECONDS EAST A DISTANCE OF 13.81 FEET;

THENCE NORTH 57 DEGREES 32 MINUTES 35 SECONDS WEST A DISTANCE OF 173.98 FEET;

THENCE NORTH 48 DEGREES 32 MINUTES 17 SECONDS WEST A DISTANCE OF 267.33 FEET;

THENCE NORTH 23 DEGREES 36 MINUTES 11 SECONDS EAST A DISTANCE OF 90.00 FEET;

THENCE NORTH 83 DEGREES 29 MINUTES 51 SECONDS EAST A DISTANCE OF 323.58 FEET;

THENCE SOUTH 44 DEGREES 41 MINUTES 01 SECONDS EAST A DISTANCE OF 745.54 FEET TO A POINT LYING ON THE SOUTHERLY LINE OF SAID BESSEMER MINING CLAIM NO. 21;

THENCE SOUTH 56 DEGREES 37 MINUTES 21 SECONDS WEST ALONG SAID SOUTHERLY LINE, A DISTANCE OF 261.01 FEET;

20090625632

THENCE NORTH 33 DEGREES 22 MINUTES 39 MINUTES WEST LEAVING SAID SOUTHERLY LINE, A DISTANCE OF 228.51 FEET;

THENCE SOUTH 65 DEGREES 59 MINUTES 57 SECONDS WEST A DISTANCE OF 145.00 FEET;

THENCE NORTH 11 DEGREES 42 MINUTES 24 SECONDS WEST A DISTANCE OF 127.55 FEET;

THENCE SOUTH 60 DEGREES 21 MINUTES 46 SECONDS WEST A DISTANCE OF 28.61 FEET TO THE BEGINNING OF A CURVE CONCAVE NORTHWESTERLY A RADIUS OF 270.00 FEET;

THENCE SOUTHWESTERLY ALONG THE ARC OF SAID CURVE THROUGH A CENTRAL ANGLE OF 28 DEGREES 44 MINUTES 55 SECONDS A DISTANCE OF 135.47 FEET TO A POINT OF NON-TANGENCY;

THENCE SOUTH 13 DEGREES 33 MINUTES 51 SECONDS EAST A DISTANCE OF 144.57 FEET;

THENCE SOUTH 65 DEGREES 59 MINUTES 57 SECONDS WEST A DISTANCE OF 280.04 FEET;

THENCE SOUTH 49 DEGREES 21 MINUTES 34 SECONDS WEST A DISTANCE OF 390.88 FEET;

THENCE NORTH 57 DEGREES 36 MINUTES 07 SECONDS WEST A DISTANCE OF 143.74 FEET;

THENCE NORTH 46 DEGREES 13 MINUTES 07 SECONDS EAST A DISTANCE OF 175.87 FEET;

THENCE NORTH 23 DEGREES 36 MINUTES 11 SECONDS EAST A DISTANCE OF 554.76 FEET;

THENCE NORTH 38 DEGREES 04 MINUTES 14 SECONDS WEST A DISTANCE OF 229.61 FEET TO THE BEGINNING OF A CURVE CONCAVE SOUTHWESTERLY HAVING A RADIUS OF 100.00 FEET;

THENCE NORTHWESTERLY ALONG THE ARC OF SAID CURVE THROUGH A CENTRAL ANGLE OF 08 DEGREES 23 MINUTES 55 SECONDS A DISTANCE OF 14.66 FEET TO A POINT OF NON-TANGENCY;

THENCE SOUTH 31 DEGREES 22 MINUTES 00 SECONDS WEST A DISTANCE OF 610.33 FEET;

THENCE SOUTH 46 DEGREES 13 MINUTES 07 SECONDS WEST A DISTANCE OF 391.21 FEET;

THENCE NORTH 20 DEGREES 37 MINUTES 26 SECONDS WEST A DISTANCE OF 82.77 FEET;

THENCE NORTH 50 DEGREES 55 MINUTES 56 SECONDS WEST A DISTANCE OF 40.00 FEET;

THENCE NORTH 35 DEGREES 46 MINUTES 32 SECONDS EAST A DISTANCE OF 24.12 FEET;

THENCE NORTH 35 DEGREES 31 MINUTES 20 SECONDS WEST A DISTANCE OF 183.24 FEET;

THENCE NORTH 72 DEGREES 30 MINUTES 48 SECONDS WEST A DISTANCE OF 140.00 FEET;

THENCE NORTH 08 DEGREES 58 MINUTES 49 SECONDS WEST A DISTANCE OF 142.60 FEET TO A POINT LYING ON THE NORTHERLY LINE OF SAID BESSEMER MINING CLAIM NO. 17;

THENCE NORTH 56 DEGREES 41 MINUTES 01 SECONDS EAST ALONG SAID NORTHERLY LINE, A DISTANCE OF 255.39 FEET TO THE NORTHEAST CORNER OF SAID BESSEMER MINING CLAIM NO. 17, ALSO BEING THE NORTHWEST CORNER OF BESSEMER MINING CLAIM NO. 20;

THENCE NORTH 56 DEGREES 36 MINUTES 52 SECONDS EAST ALONG THE NORTHERLY LINE OF SAID

20090625632

BESSEMER MINING CLAIM NO. 20, A DISTANCE OF 1502.36 FEET TO THE POINT OF BEGINNING; AND

EXCEPT ANY PORTION LYING WITHIN THE FOLLOWING DESCRIBED PROPERTY:

BEGINNING AT THE SOUTHWEST CORNER OF SAID BESSEMER MINING CLAIM NO. 21, SAID CORNER LYING NORTH 74 DEGREES 09 MINUTES 19 SECONDS EAST A DISTANCE OF 9309.75 FEET FROM THE EAST QUARTER CORNER OF SECTION 13, TOWNSHIP 6 NORTH RANGE 2 WEST (BASIS OF BEARING BEING THE EAST LINE OF THE SOUTHEAST QUARTER OF SAID SECTION 13, SOUTH 00 DEGREES 18 MINUTES 33 SECONDS WEST A DISTANCE OF 2638.75 FEET);

THENCE SOUTH 73 DEGREES 22 MINUTES 02 SECONDS WEST 569.02 FEET;

THENCE NORTH 59 DEGREES 15 MINUTES 14 SECONDS WEST 103.95 FEET;

THENCE NORTH 78 DEGREES 43 MINUTES 46 SECONDS WEST 317.98 FEET;

THENCE NORTH 66 DEGREES 56 MINUTES 24 SECONDS WEST 106.03 FEET;

THENCE SOUTH 56 DEGREES 17 MINUTES 46 SECONDS WEST 109.07 FEET;

THENCE SOUTH 22 DEGREES 52 MINUTES 07 SECONDS WEST 780.11 FEET;

THENCE NORTH 31 DEGREES 22 MINUTES 51 SECONDS WEST 466.08 FEET;

THENCE NORTH 42 DEGREES 06 MINUTES 18 SECONDS EAST 475.44 FEET;

THENCE NORTH 72 DEGREES 33 MINUTES 28 SECONDS EAST 258.71 FEET;

THENCE NORTH 23 DEGREES 03 MINUTES 36 SECONDS EAST 185.64 FEET;

THENCE NORTH 16 DEGREES 33 MINUTES 47 SECONDS WEST A DISTANCE OF 23.23 FEET TO A POINT LYING ON A CURVE CONCAVE SOUTHERLY THE RADIUS OF WHICH BEARS SOUTH 16 DEGREES 31 MINUTES 43 SECONDS EAST A DISTANCE OF 600.00 FEET;

THENCE EASTERLY, ALONG THE ARC OF SAID CURVE THROUGH A CENTRAL ANGLE OF 13 DEGREES 36 MINUTES 48 SECONDS A DISTANCE OF 142.56 FEET TO THE BEGINNING OF A REVERSE CURVE CONCAVE NORTHWESTERLY AND HAVING A RADIUS OF 180.00 FEET;

THENCE NORTHEASTERLY, ALONG THE ARC OF SAID CURVE THROUGH A CENTRAL ANGLE OF 54 DEGREES 12 MINUTES 27 SECONDS A DISTANCE OF 170.30 FEET TO THE BEGINNING OF A REVERSE CURVE CONCAVE SOUTHEASTERLY AND HAVING A RADIUS OF 210.00 FEET;

THENCE NORTHEASTERLY, ALONG THE ARC OF SAID CURVE THROUGH A CENTRAL ANGLE OF 31 DEGREES 31 MINUTES 56 SECONDS A DISTANCE OF 115.57 FEET TO THE BEGINNING OF A REVERSE CURVE CONCAVE NORTHWESTERLY AND HAVING A RADIUS OF 250.00 FEET;

THENCE NORTHEASTERLY, ALONG THE ARC OF SAID CURVE THROUGH A CENTRAL ANGLE OF 25 DEGREES 20 MINUTES 30 SECONDS A DISTANCE OF 110.57 FEET;

THENCE SOUTH 20 DEGREES 37 MINUTES 26 SECONDS EAST, LEAVING SAID CURVE, A DISTANCE OF 82.77 FEET;

THENCE NORTH 46 DEGREES 13 MINUTES 07 SECONDS EAST 391.21 FEET;

8

20090625632

THENCE NORTH 31 DEGREES 22 MINUTES 00 SECONDS EAST A DISTANCE OF 610.00 FEET TO A POINT LYING ON A CURVE CONCAVE SOUTHWESTERLY THE RADIUS OF WHICH BEARS SOUTH 43 DEGREES 31 MINUTES 51 SECONDS WEST A DISTANCE OF 100.00 FEET;

THENCE SOUTHEASTERLY, ALONG THE ARC OF SAID CURVE THROUGH A CENTRAL ANGLE OF 08 DEGREES 23 MINUTES 55 SECONDS A DISTANCE OF 14.66 FEET TO A POINT OF TANGENCY;

THENCE SOUTH 38 DEGREES 04 MINUTES 14 SECONDS EAST 229.61 FEET;

THENCE SOUTH 23 DEGREES 36 MINUTES 11 SECONDS WEST 554.76 FEET;

THENCE SOUTH 46 DEGREES 13 MINUTES 07 SECONDS WEST 390.50 FEET;

THENCE SOUTH 51 DEGREES 44 MINUTES 00 SECONDS WEST 34.60 FEET;

THENCE SOUTH 15 DEGREES 44 MINUTES 19 SECONDS WEST 154.99 FEET;

THENCE SOUTH 27 DEGREES 24 MINUTES 46 SECONDS EAST 42.47 FEET;

THENCE NORTH 49 DEGREES 21 MINUTES 34 SECONDS EAST 820.48 FEET;

THENCE NORTH 65 DEGREES 59 MINUTES 57 SECONDS EAST 280.04 FEET;

THENCE NORTH 13 DEGREES 33 MINUTES 51 SECONDS WEST A DISTANCE OF 144.57 FEET TO A POINT LYING ON A CURVE CONCAVE NORTHWESTERLY THE RADIUS OF WHICH BEARS NORTH 00 DEGREES 53 MINUTES 19 SECONDS WEST A DISTANCE OF 270.00 FEET;

THENCE NORTHEASTERLY, ALONG THE ARC OF SAID CURVE THROUGH A CENTRAL ANGLE OF 28 DEGREES 44 MINUTES 55 SECONDS A DISTANCE OF 135.47 FEET TO A POINT OF TANGENCY;

THENCE NORTH 60 DEGREES 21 MINUTES 46 SECONDS EAST 28.61 FEET;

THENCE SOUTH 11 DEGREES 42 MINUTES 24 SECONDS EAST 127.55 FEET;

THENCE NORTH 65 DEGREES 59 MINUTES 57 SECONDS EAST 145.00 FEET;

THENCE SOUTH 33 DEGREES 22 MINUTES 39 SECONDS EAST A DISTANCE OF 228.51 FEET TO A POINT LYING ON THE SOUTHERLY LINE OF SAID B.M.C. NO. 21;

THENCE SOUTH 56 DEGREES 37 MINUTES 21 SECONDS WEST, ALONG SAID SOUTHERLY LINE, A DISTANCE OF 1095.57 FEET TO THE POINT OF BEGINNING; AND

EXCEPT ANY PORTION LYING WITHIN THE FOLLOWING DESCRIBED PROPERTY:

THOSE PORTIONS OF BESSEMER MINING CLAIMS NO. 9, 10, 15 AND 16, SITUATED IN SECTIONS 8 AND 17 OF TOWNSHIP 6 NORTH, RANGE 1 WEST OF THE GILA AND SALT RIVER BASE AND MERIDIAN, MARICOPA COUNTY, ARIZONA, MORE PARTICULARLY DESCRIBED AS FOLLOWS:

COMMENCING AT THE NORTHWEST CORNER OF SAID BESSEMER MINING CLAIM NO. 17, SAID CORNER LYING NORTH 68 DEGREES 52 MINUTES 55 SECONDS EAST A DISTANCE OF 7546.57 FEET FROM THE EAST QUARTER CORNER OF SECTION 13, TOWNSHIP 6 NORTH, RANGE 2 WEST OF THE SAID GILA AND SALT RIVER BASE AND MERIDIAN (BASIS OF BEARING BEING THE EAST LINE OF THE SOUTHEAST

9

20090625632

QUARTER OF SAID SECTION 13, SOUTH 00 DEGREES 18 MINUTES 33 SECONDS WEST A DISTANCE OF 2638.75 FEET);

THENCE NORTH 56 DEGREES 41 MINUTES 01 SECONDS EAST, ALONG THE NORTHERLY LINE OF SAID BESSEMER MINING CLAIM NO. 17, A DISTANCE OF 1247.15 FEET;

THENCE SOUTH 08 DEGREES 58 MINUTES 49 SECONDS EAST, LEAVING SAID NORTHERLY LINE, A DISTANCE OF 142.60 FEET;

THENCE SOUTH 72 DEGREES 30 MINUTES 48 SECONDS EAST A DISTANCE OF 140.00 FEET;

THENCE SOUTH 35 DEGREES 31 MINUTES 20 SECONDS EAST A DISTANCE OF 183.24 FEET;

THENCE SOUTH 35 DEGREES 46 MINUTES 32 SECONDS WEST A DISTANCE OF 24.12 FEET;

THENCE SOUTH 50 DEGREES 55 MINUTES 56 SECONDS EAST A DISTANCE OF 40.00 FEET TO A POINT LYING ON A CURVE CONCAVE NORTHWESTERLY HAVING A RADIUS OF WHICH BEARS NORTH 50 DEGREES 55 MINUTES 56 SECONDS WEST A DISTANCE OF 250.00 FEET;

THENCE SOUTHWESTERLY ALONG THE ARC OF SAID CURVE THROUGH A CENTRAL ANGLE OF 25 DEGREES 20 MINUTES 30 SECONDS A DISTANCE OF 110.57 FEET TO THE BEGINNING OF A REVERSE CURVE CONCAVE SOUTHEASTERLY HAVING A RADIUS OF 210.00 FEET;

THENCE SOUTHWESTERLY ALONG THE ARC OF SAID CURVE THROUGH A CENTRAL ANGLE OF 31 DEGREES 31 MINUTES 56 SECONDS A DISTANCE OF 115.57 FEET TO THE BEGINNING OF A REVERSE CURVE CONCAVE NORTHWESTERLY HAVING A RADIUS OF 180.00 FEET;

THENCE SOUTHWESTERLY ALONG THE ARC OF SAID CURVE THROUGH A CENTRAL ANGLE OF 54 DEGREES 12 MINUTES 27 SECONDS A DISTANCE OF 170.30 FEET TO THE BEGINNING OF A REVERSE CURVE CONCAVE SOUTHEASTERLY HAVING A RADIUS OF 600.00 FEET;

THENCE SOUTHWESTERLY ALONG THE ARC OF SAID CURVE THROUGH A CENTRAL ANGLE OF 13 DEGREES 36 MINUTES 48 SECONDS A DISTANCE OF 142.56 FEET TO A POINT OF NON-TANGENCY;

THENCE SOUTH 16 DEGREES 33 MINUTES 47 SECONDS EAST A DISTANCE OF 23.23 FEET;

THENCE SOUTH 23 DEGREES 03 MINUTES 36 SECONDS WEST A DISTANCE OF 185.64 FEET;

THENCE SOUTH 61 DEGREES 47 MINUTES 41 SECONDS EAST A DISTANCE OF 191.28 FEET TO THE TRUE POINT OF BEGINNING;

THENCE SOUTH 66 DEGREES 56 MINUTES 24 SECONDS EAST A DISTANCE OF 106.03 FEET;

THENCE SOUTH 78 DEGREES 43 MINUTES 46 SECONDS EAST A DISTANCE OF 317.98 FEET;

THENCE SOUTH 59 DEGREES 15 MINUTES 14 SECONDS EAST A DISTANCE OF 103.95 FEET;

THENCE NORTH 73 DEGREES 22 MINUTES 02 SECONDS EAST A DISTANCE OF 569.02 FEET TO THE NORTHEAST CORNER OF SAID BESSEMER MINING CLAIM NO. 15, ALSO THE SOUTHWEST CORNER OF BESSEMER MINING CLAIM NO. 21;

THENCE SOUTH 33 DEGREES 24 MINUTES 57 SECONDS EAST, ALONG THE EASTERLY LINE OF SAID BESSEMER MINING CLAIM NO. 15, A DISTANCE OF 252.91 FEET;

20090625632

THENCE SOUTH 77 DEGREES 04 MINUTES 59 SECONDS WEST, LEAVING SAID EASTERLY LINE, A DISTANCE OF 651.34 FEET;

THENCE SOUTH 03 DEGREES 17 MINUTES 25 SECONDS EAST A DISTANCE OF 194.27 FEET;

THENCE SOUTH 51 DEGREES 50 MINUTES 56 SECONDS WEST A DISTANCE OF 931.56 FEET TO A POINT LYING ON A CURVE CONCAVE SOUTHEASTERLY HAVING A RADIUS OF WHICH BEARS SOUTH 78 DEGREES 43 MINUTES 49 SECONDS EAST A DISTANCE OF 144.00 FEET;

THENCE SOUTHWESTERLY ALONG THE ARC OF SAID CURVE THROUGH A CENTRAL ANGLE OF 08 DEGREES 20 MINUTES 17 SECONDS A DISTANCE OF 20.96 FEET TO A POINT OF TANGENCY;

THENCE SOUTH 02 DEGREES 55 MINUTES 54 SECONDS WEST A DISTANCE OF 96.29 FEET TO THE BEGINNING OF A CURVE CONCAVE SOUTHEASTERLY HAVING A RADIUS OF 160.00 FEET;

THENCE SOUTHEASTERLY ALONG THE ARC OF SAID CURVE THROUGH A CENTRAL ANGLE OF 36 DEGREES 19 MINUTES 36 SECONDS A DISTANCE OF 101.44 FEET TO A POINT OF TANGENCY;

THENCE SOUTH 33 DEGREES 23 MINUTES 42 SECONDS EAST A DISTANCE OF 42.46 FEET TO A POINT LYING ON THE SOUTHERLY LINE OF BESSEMER MINING CLAIM NO. 10;

THENCE SOUTH 56 DEGREES 36 MINUTES 18 SECONDS WEST, ALONG SAID SOUTHERLY LINE, A DISTANCE OF 40.00 FEET;

THENCE NORTH 33 DEGREES 23 MINUTES 42 SECONDS WEST, LEAVING SAID SOUTHERLY LINE, A DISTANCE OF 42.46 FEET TO THE BEGINNING OF A CURVE CONCAVE NORTHEASTERLY HAVING A RADIUS OF 200.00 FEET;

THENCE NORTHWESTERLY ALONG THE ARC OF SAID CURVE THROUGH A CENTRAL ANGLE OF 36 DEGREES 19 MINUTES 36 SECONDS A DISTANCE OF 126.80 FEET TO A POINT OF TANGENCY;

THENCE NORTH 02 DEGREES 55 MINUTES 54 SECONDS EAST A DISTANCE OF 77.56 FEET;

THENCE SOUTH 52 DEGREES 29 MINUTES 54 SECONDS WEST A DISTANCE OF 227.40 FEET;

THENCE NORTH 83 DEGREES 12 MINUTES 51 SECONDS WEST A DISTANCE OF 100.68 FEET;

THENCE NORTH 04 DEGREES 39 MINUTES 39 SECONDS EAST A DISTANCE OF 590.15 FEET;

THENCE NORTH 22 DEGREES 52 MINUTES 07 SECONDS EAST A DISTANCE OF 780.11 FEET;

THENCE NORTH 56 DEGREES 17 MINUTES 46 SECONDS EAST A DISTANCE OF 109.07 FEET TO THE TRUE POINT OF BEGINNING.

PARCEL NO. 19:

INTENTIONALLY OMITTED

PARCEL NO. 20:

BESSEMER MINING CLAIM NO. 10, SECTION 17, TOWNSHIP 6 NORTH, RANGE 1 WEST OF THE GILA AND SALT RIVER BASE AND MERIDIAN, MARICOPA COUNTY, ARIZONA;

20090625632

EXCEPT ANY PORTION LYING WITHIN THE FOLLOWING DESCRIBED PROPERTY:

COMMENCING AT ABOVE DESCRIBED POINT 'B' IN PARCEL NO. 12;

THENCE SOUTH 56 DEGREES 36 MINUTES 18 SECONDS WEST, ALONG THE SOUTHERLY LINE OF SAID B.M.C. NO. 10, A DISTANCE OF 40.26 FEET TO THE TRUE POINT OF BEGINNING;

THENCE SOUTH 56 DEGREES 36 MINUTES 18 SECONDS WEST ALONG SAID SOUTHERLY LINE A DISTANCE OF 266.88 FEET;

THENCE NORTH 33 DEGREES 23 MINUTES 42 SECONDS WEST, LEAVING SAID SOUTHERLY LINE, A DISTANCE OF 100.00 FEET;

THENCE SOUTH 69 DEGREES 30 MINUTES 02 SECONDS WEST 92.04 FEET;

THENCE SOUTH 50 DEGREES 01 MINUTES 11 SECONDS WEST 161.35 FEET;

THENCE SOUTH 33 DEGREES 23 MINUTES 42 SECONDS EAST A DISTANCE OF 102.04 FEET TO A POINT LYING ON SAID SOUTHERLY LINE OF B.M.C. NO. 10;

THENCE SOUTH 56 DEGREES 36 MINUTES 18 SECONDS WEST, ALONG SAID SOUTHERLY LINE, A DISTANCE OF 215.98 FEET;

THENCE SOUTH 56 DEGREES 35 MINUTES 00 SECONDS WEST, ALONG THE SOUTHERLY LINE OF SAID B.M.C. NO. 3, A DISTANCE OF 852.18 FEET TO A POINT LYING ON A CURVE CONCAVE EASTERLY THE RADIUS OF WHICH BEARS SOUTH 88 DEGREES 06 MINUTES 13 SECONDS EAST A DISTANCE OF 340.00 FEET;

THENCE NORTHERLY, LEAVING SAID SOUTHERLY LINE ALONG THE ARC OF SAID CURVE THROUGH A CENTRAL ANGLE OF 06 DEGREES 51 MINUTES 29 SECONDS A DISTANCE OF 40.70 FEET TO THE BEGINNING OF A REVERSE CURVE CONCAVE SOUTHWESTERLY AND HAVING A RADIUS OF 285.00 FEET;

THENCE NORTHWESTERLY, ALONG THE ARC OF SAID CURVE THROUGH A CENTRAL ANGLE OF 49 DEGREES 03 MINUTES 31 SECONDS A DISTANCE OF 244.03 FEET TO A POINT OF TANGENCY;

THENCE NORTH 40 DEGREES 18 MINUTES 14 SECONDS WEST 107.95 FEET;

THENCE NORTH 56 DEGREES 40 MINUTES 57 SECONDS EAST 497.48 FEET;

THENCE NORTH 51 DEGREES 13 MINUTES 33 SECONDS EAST 609.92 FEET;

THENCE NORTH 64 DEGREES 12 MINUTES 00 SECONDS EAST 192.21 FEET;

THENCE NORTH 89 DEGREES 54 MINUTES 07 SECONDS WEST 451.08 FEET;

THENCE NORTH 06 DEGREES 37 MINUTES 51 SECONDS EAST 306.47 FEET;

THENCE SOUTH 83 DEGREES 58 MINUTES 55 SECONDS EAST 498.62 FEET;

THENCE SOUTH 19 DEGREES 00 MINUTES 07 SECONDS EAST A DISTANCE OF 85.49 FEET TO THE BEGINNING OF CURVE CONCAVE NORTHEASTERLY AND HAVING A RADIUS OF 120.00 FEET;

12

20090625632

THENCE SOUTHEASTERLY, ALONG THE ARC OF SAID CURVE THROUGH A CENTRAL ANGLE OF 44 DEGREES 47 MINUTES 38 SECONDS A DISTANCE OF 93.82 FEET TO THE BEGINNING OF A REVERSE CURVE CONCAVE SOUTHWESTERLY AND HAVING A RADIUS OF 180.00 FEET;

THENCE SOUTHEASTERLY, ALONG THE ARC OF SAID CURVE THROUGH A CENTRAL ANGLE OF 14 DEGREES 33 MINUTES 32 SECONDS A DISTANCE OF 45.74 FEET TO A POINT OF TANGENCY;

THENCE SOUTH 49 DEGREES 14 MINUTES 12 SECONDS EAST A DISTANCE OF 81.15 FEET TO THE BEGINNING OF A CURVE CONCAVE SOUTHWESTERLY AND HAVING A RADIUS OF 80.00 FEET;

THENCE SOUTHEASTERLY, ALONG THE ARC OF SAID CURVE THROUGH A CENTRAL ANGLE OF 42 DEGREES 01 MINUTES 09 SECONDS A DISTANCE OF 58.67 FEET TO THE BEGINNING OF A REVERSE CURVE CONCAVE NORTHEASTERLY AND HAVING A RADIUS OF 320.00 FEET;

THENCE SOUTHEASTERLY, ALONG THE ARC OF SAID CURVE THROUGH A CENTRAL ANGLE OF 32 DEGREES 44 MINUTES 01 SECONDS A DISTANCE OF 182.82 FEET TO A POINT OF TANGENCY;

THENCE SOUTH 39 DEGREES 57 MINUTES 04 SECONDS EAST A DISTANCE OF 34.25 FEET TO A POINT LYING ON THE SOUTHERLY LINE OF SAID B.M.C. NO. 10, ALSO BEING THE TRUE POINT OF BEGINNING; AND

EXCEPT ANY PORTION LYING WITHIN THE FOLLOWING DESCRIBED PROPERTY:

THOSE PORTIONS OF BESSEMER MINING CLAIMS NO. 9, 10, 15 AND 16, SITUATED IN SECTIONS 8 AND 17 OF TOWNSHIP 6 NORTH, RANGE 1 WEST OF THE GILA AND SALT RIVER BASE AND MERIDIAN, MARICOPA COUNTY, ARIZONA, MORE PARTICULARLY DESCRIBED AS FOLLOWS:

COMMENCING AT THE NORTHWEST CORNER OF SAID BESSEMER MINING CLAIM NO. 17, SAID CORNER LYING NORTH 68 DEGREES 52 MINUTES 55 SECONDS EAST A DISTANCE OF 7546.57 FEET FROM THE EAST QUARTER CORNER OF SECTION 13, TOWNSHIP 6 NORTH, RANGE 2 WEST OF THE SAID GILA AND SALT RIVER BASE AND MERIDIAN (BASIS OF BEARING BEING THE EAST LINE OF THE SOUTHEAST QUARTER OF SAID SECTION 13, SOUTH 00 DEGREES 18 MINUTES 33 SECONDS WEST A DISTANCE OF 2638.75 FEET);

THENCE NORTH 56 DEGREES 41 MINUTES 01 SECONDS EAST, ALONG THE NORTHERLY LINE OF SAID BESSEMER MINING CLAIM NO. 17, A DISTANCE OF 1247.15 FEET;

THENCE SOUTH 08 DEGREES 58 MINUTES 49 SECONDS EAST, LEAVING SAID NORTHERLY LINE, A DISTANCE OF 142.60 FEET;

THENCE SOUTH 72 DEGREES 30 MINUTES 48 SECONDS EAST A DISTANCE OF 140.00 FEET;

THENCE SOUTH 35 DEGREES 31 MINUTES 20 SECONDS EAST A DISTANCE OF 183.24 FEET;

THENCE SOUTH 35 DEGREES 46 MINUTES 32 SECONDS WEST A DISTANCE OF 24.12 FEET;

THENCE SOUTH 50 DEGREES 55 MINUTES 56 SECONDS EAST A DISTANCE OF 40.00 FEET TO A POINT LYING ON A CURVE CONCAVE NORTHWESTERLY HAVING A RADIUS OF WHICH BEARS NORTH 50 DEGREES 55 MINUTES 56 SECONDS WEST A DISTANCE OF 250.00 FEET;

THENCE SOUTHWESTERLY ALONG THE ARC OF SAID CURVE THROUGH A CENTRAL ANGLE OF 25 DEGREES 20 MINUTES 30 SECONDS A DISTANCE OF 110.57 FEET TO THE BEGINNING OF A REVERSE

13

20090625632

CURVE CONCAVE SOUTHEASTERLY HAVING A RADIUS OF 210.00 FEET;

THENCE SOUTHWESTERLY ALONG THE ARC OF SAID CURVE THROUGH A CENTRAL ANGLE OF 31 DEGREES 31 MINUTES 56 SECONDS A DISTANCE OF 115.57 FEET TO THE BEGINNING OF A REVERSE CURVE CONCAVE NORTHWESTERLY HAVING A RADIUS OF 180.00 FEET;

THENCE SOUTHWESTERLY ALONG THE ARC OF SAID CURVE THROUGH A CENTRAL ANGLE OF 54 DEGREES 12 MINUTES 27 SECONDS A DISTANCE OF 170.30 FEET TO THE BEGINNING OF A REVERSE CURVE CONCAVE SOUTHEASTERLY HAVING A RADIUS OF 600.00 FEET;

THENCE SOUTHWESTERLY ALONG THE ARC OF SAID CURVE THROUGH A CENTRAL ANGLE OF 13 DEGREES 36 MINUTES 48 SECONDS A DISTANCE OF 142.56 FEET TO A POINT OF NON-TANGENCY;

THENCE SOUTH 16 DEGREES 33 MINUTES 47 SECONDS EAST A DISTANCE OF 23.23 FEET;

THENCE SOUTH 23 DEGREES 03 MINUTES 36 SECONDS WEST A DISTANCE OF 185.64 FEET;

THENCE SOUTH 61 DEGREES 47 MINUTES 41 SECONDS EAST A DISTANCE OF 191.28 FEET TO THE TRUE POINT OF BEGINNING;

THENCE SOUTH 66 DEGREES 56 MINUTES 24 SECONDS EAST A DISTANCE OF 106.03 FEET;

THENCE SOUTH 78 DEGREES 43 MINUTES 46 SECONDS EAST A DISTANCE OF 317.98 FEET;

THENCE SOUTH 59 DEGREES 15 MINUTES 14 SECONDS EAST A DISTANCE OF 103.95 FEET;

THENCE NORTH 73 DEGREES 22 MINUTES 02 SECONDS EAST A DISTANCE OF 569.02 FEET TO THE NORTHEAST CORNER OF SAID BESSEMER MINING CLAIM NO. 15, ALSO THE SOUTHWEST CORNER OF BESSEMER MINING CLAIM NO. 21;

THENCE SOUTH 33 DEGREES 24 MINUTES 57 SECONDS EAST, ALONG THE EASTERLY LINE OF SAID BESSEMER MINING CLAIM NO. 15, A DISTANCE OF 252.91 FEET;

THENCE SOUTH 77 DEGREES 04 MINUTES 59 SECONDS WEST, LEAVING SAID EASTERLY LINE, A DISTANCE OF 651.34 FEET;

THENCE SOUTH 03 DEGREES 17 MINUTES 25 SECONDS EAST A DISTANCE OF 194.27 FEET;

THENCE SOUTH 51 DEGREES 50 MINUTES 56 SECONDS WEST A DISTANCE OF 931.56 FEET TO A POINT LYING ON A CURVE CONCAVE SOUTHEASTERLY HAVING A RADIUS OF WHICH BEARS SOUTH 78 DEGREES 43 MINUTES 49 SECONDS EAST A DISTANCE OF 144.00 FEET;

THENCE SOUTHWESTERLY ALONG THE ARC OF SAID CURVE THROUGH A CENTRAL ANGLE OF 08 DEGREES 20 MINUTES 17 SECONDS A DISTANCE OF 20.96 FEET TO A POINT OF TANGENCY;

THENCE SOUTH 02 DEGREES 55 MINUTES 54 SECONDS WEST A DISTANCE OF 96.29 FEET TO THE BEGINNING OF A CURVE CONCAVE SOUTHEASTERLY HAVING A RADIUS OF 160.00 FEET;

THENCE SOUTHEASTERLY ALONG THE ARC OF SAID CURVE THROUGH A CENTRAL ANGLE OF 36 DEGREES 19 MINUTES 36 SECONDS A DISTANCE OF 101.44 FEET TO A POINT OF TANGENCY;

THENCE SOUTH 33 DEGREES 23 MINUTES 42 SECONDS EAST A DISTANCE OF 42.46 FEET TO A POINT LYING ON THE SOUTHERLY LINE OF BESSEMER MINING CLAIM NO. 10;

14

20090625632

THENCE SOUTH 56 DEGREES 36 MINUTES 18 SECONDS WEST, ALONG SAID SOUTHERLY LINE, A DISTANCE OF 40.00 FEET;

THENCE NORTH 33 DEGREES 23 MINUTES 42 SECONDS WEST, LEAVING SAID SOUTHERLY LINE, A DISTANCE OF 42.46 FEET TO THE BEGINNING OF A CURVE CONCAVE NORTHEASTERLY HAVING A RADIUS OF 200.00 FEET;

THENCE NORTHWESTERLY ALONG THE ARC OF SAID CURVE THROUGH A CENTRAL ANGLE OF 36 DEGREES 19 MINUTES 36 SECONDS A DISTANCE OF 126.80 FEET TO A POINT OF TANGENCY;

THENCE NORTH 02 DEGREES 55 MINUTES 54 SECONDS EAST A DISTANCE OF 77.56 FEET;

THENCE SOUTH 52 DEGREES 29 MINUTES 54 SECONDS WEST A DISTANCE OF 227.40 FEET;

THENCE NORTH 83 DEGREES 12 MINUTES 51 SECONDS WEST A DISTANCE OF 100.68 FEET;

THENCE NORTH 04 DEGREES 39 MINUTES 39 SECONDS EAST A DISTANCE OF 590.15 FEET;

THENCE NORTH 22 DEGREES 52 MINUTES 07 SECONDS EAST A DISTANCE OF 780.11 FEET;

THENCE NORTH 56 DEGREES 17 MINUTES 46 SECONDS EAST A DISTANCE OF 109.07 FEET TO THE TRUE POINT OF BEGINNING; AND

EXCEPT ANY PORTION LYING WITHIN THE FOLLOWING DESCRIBED PROPERTY:

THAT PORTION OF BESSEMER MINING CLAIMS NO. 3, 9, 10 AND 15, SITUATED IN SECTION 17 OF TOWNSHIP 6 NORTH, RANGE 1 WEST OF THE GILA AND SALT RIVER BASE AND MERIDIAN, MARICOPA COUNTY, ARIZONA, MORE PARTICULARLY DESCRIBED AS FOLLOWS:

COMMENCING AT ABOVE DESCRIBED POINT 'A' IN PARCEL NO. 11;

THENCE SOUTH 56 DEGREES 36 MINUTES 18 SECONDS WEST, ALONG THE SOUTHERLY LINE OF SAID B.M.C. NO. 10, A DISTANCE OF 40.00 FEET TO THE TRUE POINT OF BEGINNING;

THENCE CONTINUING SOUTH 56 DEGREES 36 MINUTES 18 SECONDS WEST, ALONG SAID SOUTHERLY LINE, A DISTANCE OF 452.77 FEET, TO A POINT HEREON KNOWN AS POINT 'B';

THENCE NORTH 39 DEGREES 57 MINUTES 04 SECONDS WEST, LEAVING SAID SOUTHERLY LINE, A DISTANCE OF 30.20 FEET;

THENCE NORTH 56 DEGREES 36 MINUTES 18 SECONDS EAST 165.54 FEET;

THENCE NORTH 09 DEGREES 22 MINUTES 03 SECONDS EAST 108.55 FEET;

THENCE NORTH 34 DEGREES 05 MINUTES 02 SECONDS WEST 90.06 FEET;

THENCE SOUTH 51 DEGREES 03 MINUTES 21 SECONDS WEST A DISTANCE OF 220.40 FEET TO A POINT LYING ON A CURVE CONCAVE EASTERLY THE RADIUS OF WHICH BEARS NORTH 79 DEGREES 15 MINUTES 55 SECONDS EAST A DISTANCE OF 280.00 FEET;

THENCE NORTHERLY, ALONG THE ARC OF SAID CURVE THROUGH A CENTRAL ANGLE OF 03 DEGREES 31 MINUTES 02 SECONDS A DISTANCE OF 17.19 FEET TO THE BEGINNING OF A REVERSE CURVE

15

20090625632

CONCAVE SOUTHWESTERLY AND HAVING A RADIUS OF 120.00 FEET;

THENCE NORTHWESTERLY, ALONG THE ARC OF SAID CURVE THROUGH A CENTRAL ANGLE OF 42 DEGREES 01 MINUTES 09 SECONDS A DISTANCE OF 88.00 FEET TO A POINT OF TANGENCY;

THENCE NORTH 49 DEGREES 14 MINUTES 12 SECONDS WEST A DISTANCE OF 81.15 FEET TO THE BEGINNING OF A CURVE CONCAVE SOUTHWESTERLY AND HAVING A RADIUS OF 220.00 FEET;

THENCE NORTHWESTERLY, ALONG THE ARC OF SAID CURVE THROUGH A CENTRAL ANGLE OF 14 DEGREES 33 MINUTES 32 SECONDS A DISTANCE OF 55.90 FEET TO THE BEGINNING OF A REVERSE CURVE CONCAVE NORTHEASTERLY AND HAVING A RADIUS OF 80.00 FEET;

THENCE NORTHWESTERLY, ALONG THE ARC OF SAID CURVE THROUGH A CENTRAL ANGLE OF 44 DEGREES 47 MINUTES 38 SECONDS A DISTANCE OF 62.54 FEET TO A POINT OF TANGENCY;

THENCE NORTH 19 DEGREES 00 MINUTES 07 SECONDS WEST 66.82 FEET;

THENCE SOUTH 83 DEGREES 58 MINUTES 55 SECONDS EAST 50.23 FEET;

THENCE NORTH 04 DEGREES 39 MINUTES 39 SECONDS EAST 596.89 FEET;

THENCE NORTH 09 DEGREES 22 MINUTES 24 SECONDS EAST 313.65 FEET;

THENCE SOUTH 31 DEGREES 22 MINUTES 51 SECONDS EAST 466.08 FEET;

THENCE SOUTH 04 DEGREES 39 MINUTES 39 SECONDS WEST 590.15 FEET;

THENCE SOUTH 83 DEGREES 12 MINUTES 51 SECONDS EAST 100.68 FEET;

THENCE NORTH 52 DEGREES 29 MINUTES 54 SECONDS EAST 227.40 FEET;

THENCE SOUTH 02 DEGREES 55 MINUTES 54 SECONDS WEST A DISTANCE OF 77.56 FEET TO THE BEGINNING OF CURVE CONCAVE NORTHEASTERLY AND HAVING A RADIUS OF 200.00 FEET;

THENCE SOUTHEASTERLY, ALONG THE ARC OF SAID CURVE THROUGH A CENTRAL ANGLE OF 36 DEGREES 19 MINUTES 36 SECONDS A DISTANCE OF 126.80 FEET TO A POINT OF TANGENCY;

THENCE SOUTH 33 DEGREES 23 MINUTES 42 SECONDS EAST A DISTANCE OF 42.46 FEET TO A POINT LYING ON THE SOUTHERLY LINE OF SAID B.M.C. NO. 10, ALSO BEING THE TRUE POINT OF BEGINNING; AND

EXCEPT ANY PORTION LYING WITHIN THE FOLLOWING DESCRIBED PROPERTY:

THAT PORTION OF BESSEMER MINING CLAIMS NO. 3, 9, 10 AND 15, SITUATED IN SECTION 17 OF TOWNSHIP 6 NORTH, RANGE 1 WEST OF THE GILA AND SALT RIVER BASE AND MERIDIAN, MARICOPA COUNTY, ARIZONA, MORE PARTICULARLY DESCRIBED AS FOLLOWS:

BEGINNING AT THE SOUTHEAST CORNER OF SAID BESSEMER MINING CLAIM NO. 15, SAID CORNER LYING NORTH 77 DEGREES 36 MINUTES 37 SECONDS EAST A DISTANCE OF 9508.48 FEET FROM THE EAST QUARTER CORNER OF SECTION 13, TOWNSHIP 6 NORTH RANGE 2 WEST (BASIS OF BEARING BEING THE EAST LINE OF THE SOUTHEAST QUARTER OF SAID SECTION 13, SOUTH 00 DEGREES 18 MINUTES 33 SECONDS WEST A DISTANCE OF 2638.75 FEET);

16

20090625632

THENCE SOUTH 56 DEGREES 36 MINUTES 12 SECONDS WEST, ALONG THE SOUTHERLY LINE OF SAID B.M.C. NO. 15, A DISTANCE OF 1501.86 FEET TO THE SOUTHEAST CORNER OF SAID B.M.C. NO. 10;

THENCE SOUTH 56 DEGREES 36 MINUTES 18 SECONDS WEST, ALONG THE SOUTHERLY LINE OF SAID B.M.C. NO. 10, A DISTANCE OF 235.94 FEET, TO A POINT HEREON KNOWN AS POINT 'A';

THENCE NORTH 33 DEGREES 23 MINUTES 42 SECONDS WEST, LEAVING SAID SOUTHERLY LINE, A DISTANCE OF 42.46 FEET TO THE BEGINNING OF A CURVE CONCAVE NORTHEASTERLY AND HAVING A RADIUS OF 160.00 FEET;

THENCE NORTHWESTERLY, ALONG THE ARC OF SAID CURVE THROUGH A CENTRAL ANGLE OF 36 DEGREES 19 MINUTES 36 SECONDS A DISTANCE OF 101.44 FEET TO A POINT OF TANGENCY;

THENCE NORTH 02 DEGREES 55 MINUTES 54 SECONDS EAST A DISTANCE OF 96.29 FEET TO THE BEGINNING OF A CURVE CONCAVE EASTERLY AND HAVING A RADIUS OF 144.00 FEET;

THENCE NORTHERLY, ALONG THE ARC OF SAID CURVE THROUGH A CENTRAL ANGLE OF 08 DEGREES 20 MINUTES 17 SECONDS A DISTANCE OF 20.96 FEET;

THENCE NORTH 51 DEGREES 50 MINUTES 56 SECONDS EAST, LEAVING SAID CURVE, A DISTANCE OF 931.56 FEET;

THENCE NORTH 03 DEGREES 17 MINUTES 25 SECONDS WEST 194.27 FEET;

THENCE NORTH 77 DEGREES 04 MINUTES 59 SECONDS EAST A DISTANCE OF 651.34 FEET TO A POINT LYING ON THE EASTERLY LINE OF SAID B.M.C. NO. 15;

THENCE SOUTH 33 DEGREES 24 MINUTES 57 SECONDS EAST, ALONG SAID EASTERLY LINE, A DISTANCE OF 248.13 FEET TO THE POINT OF BEGINNING; AND

EXCEPT ANY PORTION LYING WITHIN THE FOLLOWING DESCRIBED PROPERTY:

THOSE PORTIONS OF PIG IRON MINING CLAIMS NO. 25, 26 AND 27 AND BESSEMER MINING CLAIMS NO. 3, 4, 5, 8, 9 AND 10, SITUATED IN SECTIONS 17 AND 18 OF TOWNSHIP 6 NORTH, RANGE 1 WEST OF THE GILA AND SALT RIVER BASE AND MERIDIAN, MARICOPA COUNTY, ARIZONA, MORE PARTICULARLY DESCRIBED AS FOLLOWS:

BEGINNING AT THE NORTHWEST CORNER OF SAID BESSEMER MINING CLAIM NO. 5, SAID CORNER LYING NORTH 76 DEGREES 47 MINUTES 46 SECONDS EAST A DISTANCE OF 4658.52 FEET FROM THE EAST QUARTER CORNER OF SECTION 13, TOWNSHIP 6 NORTH, RANGE 2 WEST (BASIS OF BEARING BEING THE EAST LINE OF THE SOUTHEAST QUARTER OF SAID SECTION 13, SOUTH 00 DEGREES 18 MINUTES 33 SECONDS WEST A DISTANCE OF 2638.75 FEET);

THENCE NORTH 56 DEGREES 37 MINUTES 20 SECONDS EAST ALONG THE NORTHERLY LINE OF SAID B.M.C. NO. 5, A DISTANCE OF 1501.46 FEET TO THE NORTHEAST CORNER OF SAID B.M.C. NO. 5, ALSO BEING THE NORTHWEST CORNER OF SAID B.M.C. NO. 8;

THENCE NORTH 56 DEGREES 27 MINUTES 55 SECONDS EAST ALONG THE NORTHERLY LINE OF SAID B.M.C. NO. 8 A DISTANCE OF 938.94 FEET;

THENCE SOUTH 14 DEGREES 44 MINUTES 23 SECONDS EAST LEAVING SAID NORTHERLY LINE A DISTANCE OF 268.58 FEET;

17

20090625632

THENCE SOUTH 48 DEGREES 53 MINUTES 21 SECONDS EAST 275.03 FEET;

THENCE NORTH 35 DEGREES 31 MINUTES 25 SECONDS EAST 247.56 FEET;

THENCE SOUTH 86 DEGREES 54 MINUTES 20 SECONDS EAST 284.68 FEET;

THENCE SOUTH 09 DEGREES 22 MINUTES 24 SECONDS WEST 313.65 FEET;

THENCE SOUTH 04 DEGREES 39 MINUTES 39 SECONDS WEST 596.89 FEET;

THENCE NORTH 83 DEGREES 58 MINUTES 55 SECONDS WEST 50.23 FEET;

THENCE SOUTH 19 DEGREES 00 MINUTES 07 SECONDS EAST 66.82 FEET TO THE BEGINNING OF A CURVE CONCAVE NORTHEASTERLY AND HAVING A RADIUS OF 80.00 FEET;

THENCE SOUTHEASTERLY ALONG THE ARC OF SAID CURVE THROUGH A CENTRAL ANGLE OF 44 DEGREES 47 MINUTES 38 SECONDS A DISTANCE OF 62.54 FEET TO THE BEGINNING OF A REVERSE CURVE CONCAVE SOUTHWESTERLY AND HAVING A RADIUS OF 220.00 FEET;

THENCE SOUTHEASTERLY ALONG THE ARC OF SAID CURVE THROUGH A CENTRAL ANGLE OF 14 DEGREES 33 MINUTES 32 SECONDS A DISTANCE OF 55.90 FEET TO A POINT OF TANGENCY;

THENCE SOUTH 49 DEGREES 14 MINUTES 12 SECONDS EAST 81.15 FEET TO THE BEGINNING OF A CURVE CONCAVE SOUTHWESTERLY AND HAVING A RADIUS OF 120.00 FEET;

THENCE SOUTHEASTERLY ALONG THE ARC OF SAID CURVE THROUGH A CENTRAL ANGLE OF 42 DEGREES 01 MINUTES 09 SECONDS A DISTANCE OF 88.00 FEET TO THE BEGINNING OF A REVERSE CURVE CONCAVE NORTHEASTERLY AND HAVING A RADIUS OF 280.00 FEET;

THENCE SOUTHEASTERLY ALONG THE ARC OF SAID CURVE THROUGH A CENTRAL ANGLE OF 03 DEGREES 31 MINUTES 02 SECONDS A DISTANCE OF 17.19 FEET;

THENCE NORTH 51 DEGREES 03 MINUTES 21 SECONDS EAST LEAVING SAID CURVE A DISTANCE OF 220.40 FEET;

THENCE SOUTH 34 DEGREES 05 MINUTES 02 SECONDS EAST 90.06 FEET;

THENCE SOUTH 09 DEGREES 22 MINUTES 03 SECONDS WEST 108.55 FEET;

THENCE SOUTH 56 DEGREES 36 MINUTES 18 SECONDS WEST 165.54 FEET;

THENCE SOUTH 39 DEGREES 57 MINUTES 04 SECONDS EAST 30.20 FEET TO A POINT ON THE SOUTHERLY LINE OF SAID B.M.C. NO. 3;

THENCE SOUTH 56 DEGREES 36 MINUTES 18 SECONDS WEST ALONG SAID SOUTHERLY LINE A DISTANCE OF 40.26 FEET;

THENCE NORTH 39 DEGREES 57 MINUTES 04 SECONDS WEST LEAVING SAID SOUTHERLY LINE A DISTANCE OF 34.25 FEET TO THE BEGINNING OF A CURVE CONCAVE NORTHEASTERLY AND HAVING A RADIUS OF 320.00 FEET;

THENCE NORTHWESTERLY ALONG THE ARC OF SAID CURVE THROUGH A CENTRAL ANGLE OF 32 DEGREES 44 MINUTES 01 SECONDS A DISTANCE OF 182.82 FEET TO THE BEGINNING OF A REVERSE

18

20090625632

CURVE CONCAVE SOUTHWESTERLY AND HAVING A RADIUS OF 80.00 FEET;

THENCE NORTHWESTERLY ALONG THE ARC OF SAID CURVE THROUGH CENTRAL ANGLE OF 42 DEGREES 01 MINUTES 09 SECONDS A DISTANCE OF 58.67 FEET TO A POINT OF TANGENCY;

THENCE NORTH 49 DEGREES 14 MINUTES 12 SECONDS WEST 81.15 FEET TO THE BEGINNING OF A CURVE CONCAVE SOUTHWESTERLY AND HAVING A RADIUS OF 180.00;

THENCE NORTHWESTERLY ALONG THE ARC OF SAID CURVE THROUGH A CENTRAL ANGLE OF 145 DEGREES 33 MINUTES 32 SECONDS A DISTANCE OF 45.74 FEET TO THE BEGINNING OF A REVERSE CURVE CONCAVE NORTHEASTERLY AND HAVING A RADIUS OF 120.00 FEET;

THENCE NORTHWESTERLY ALONG THE ARC OF SAID CURVE THROUGH A CENTRAL ANGLE OF 44 DEGREES 47 MINUTES 38 SECONDS A DISTANCE OF 93.82 FEET TO A POINT OF TANGENCY;

THENCE NORTH 19 DEGREES 00 MINUTES 07 SECONDS WEST 85.49 FEET;

THENCE NORTH 83 DEGREES 58 MINUTES 55 SECONDS WEST 575.62 FEET;

THENCE SOUTH 64 DEGREES 37 MINUTES 41 SECONDS WEST 623.23 FEET;

THENCE SOUTH 84 DEGREES 07 MINUTES 52 SECONDS WEST 278.30 FEET;

THENCE NORTH 63 DEGREES 03 MINUTES 01 SECONDS WEST 183.87 FEET TO A POINT HEREON KNOWN AS POINT "A'"

THENCE NORTH 46 DEGREES 03 MINUTES 10 SECONDS EAST 560.30 FEET;

THENCE NORTH 00 DEGREES 30 MINUTES 28 SECONDS WEST 115.06 FEET;

THENCE SOUTH 59 DEGREES 14 MINUTES 38 SECONDS WEST 198.71 FEET;

THENCE NORTH 88 DEGREES 13 MINUTES 28 SECONDS WEST 257.02 FEET;

THENCE SOUTH 45 DEGREES 36 MINUTES 04 SECONDS WEST 365.66 FEET;

THENCE SOUTH 34 DEGREES 56 MINUTES 33 SECONDS WEST 282.52 FEET;

THENCE SOUTH 77 DEGREES 16 MINUTES 14 SECONDS WEST 339.82 FEET;

THENCE SOUTH 66 DEGREES 08 MINUTES 31 SECONDS WEST 538.57 FEET;

THENCE NORTH 33 DEGREES 22 MINUTES 31 SECONDS WEST 106.04 FEET TO A POINT ON SAID NORTHERLY LINE OF B.M.C. NO. 5;

THENCE NORTH 56 DEGREES 37 MINUTES 29 SECONDS EAST ALONG SAID NORTHERLY LINE A DISTANCE OF 431.47 FEET TO THE POINT OF BEGINNING;

TOGETHER WITH:

COMMENCING THE ABOVE DESCRIBED POINT "A";

THENCE SOUTH 40 DEGREES 35 MINUTES 52 SECONDS WEST 100.00 FEET TO THE TRUE POINT OF

19

20090625632

BEGINNING;

THENCE SOUTH 32 DEGREES 31 MINUTES 15 SECONDS EAST 289.31 FEET;

THENCE SOUTH 54 DEGREES 57 MINUTES 15 SECONDS EAST 110.25 FEET;

THENCE NORTH 84 DEGREES 07 MINUTES 52 SECONDS EAST 343.79 FEET;

THENCE NORTH 64 DEGREES 37 MINUTES 41 SECONDS EAST 578.10 FEET;

THENCE SOUTH 89 DEGREES 54 MINUTES 07 SECONDS EAST 451.08 FEET;

THENCE SOUTH 64 DEGREES 12 MINUTES 00 SECONDS WEST 192.21 FEET;

THENCE SOUTH 51 DEGREES 13 MINUTES 33 SECONDS WEST 609.92 FEET;

THENCE SOUTH 56 DEGREES 40 MINUTES 57 SECONDS WEST 497.48 FEET TO A POINT HEREON KNOWN AS POINT "B";

THENCE SOUTH 40 DEGREES 18 MINUTES 14 SECONDS EAST 107.95 FEET TO THE BEGINNING OF A CURVE CONCAVE SOUTHWESTERLY AND HAVING A RADIUS OF 285.00 FEET;

THENCE SOUTHEASTERLY ALONG THE ARC OF SAID CURVE THROUGH A CENTRAL ANGLE OF 49 DEGREES 03 MINUTES 31 SECONDS A DISTANCE OF 244.03 FEET TO THE BEGINNING OF A REVERSE CURVE CONCAVE SOUTHEASTERLY AND HAVING A RADIUS OF 340.00 FEET;

THENCE SOUTHWESTERLY ALONG THE ARC OF SAID CURVE THROUGH A CENTRAL ANGLE OF 06 DEGREES 51 MINUTES 29 SECONDS A DISTANCE OF 40.70 FEET TO A POINT ON THE SOUTHERLY LINE OF SAID B.M.C. NO. 3;

THENCE SOUTH 56 DEGREES 35 MINUTES 00 SECONDS WEST ALONG SAID SOUTHERLY LINE A DISTANCE OF 648.41 FEET TO THE SOUTHWESTERLY CORNER OF SAID B.M.C. NO.3 ;

THENCE SOUTH 56 DEGREES 37 MINUTES 15 SECONDS WEST ALONG THE SOUTHERLY LINE OF SAID P.I.M.C. NO. 25 A DISTANCE OF 167.07 FEET;

THENCE NORTH 30 DEGREES 20 MINUTES 43 SECONDS WEST LEAVING SAID SOUTHERLY LINE A DISTANCE OF 105.99 FEET;

THENCE NORTH 27 DEGREES 43 MINUTES 02 SECONDS EAST 220.96 FEET;

THENCE NORTH 84 DEGREES 47 MINUTES 42 SECONDS WEST 32.47 FEET;

THENCE SOUTH 27 DEGREES 43 MINUTES 02 SECONDS WEST 194.41 FEET;

THENCE NORTH 78 DEGREES 40 MINUTES 07 SECONDS WEST 205.35 FEET;

THENCE SOUTH 54 DEGREES 56 MINUTES 26 SECONDS WEST 21.42 FEET;

THENCE NORTH 33 DEGREES 32 MINUTES 09 SECONDS WEST 433.58 FEET;

THENCE NORTH 29 DEGREES 56 MINUTES 03 SECONDS WEST 185.35 FEET;

20090625632

THENCE NORTH 03 DEGREES 44 MINUTES 16 SECONDS WEST 137.41 FEET;

THENCE NORTH 30 DEGREES 18 MINUTES 01 SECONDS WEST 317.31 FEET;

THENCE NORTH 23 DEGREES 34 MINUTES 54 SECONDS EAST 163.72 FEET;

THENCE SOUTH 64 DEGREES 10 MINUTES 57 SECONDS EAST 85.75 FEET;

THENCE NORTH 86 DEGREES 49 MINUTES 40 SECONDS EAST 55.67 FEET;

THENCE NORTH 77 DEGREES 16 MINUTES 14 SECONDS EAST 422.84 FEET;

THENCE NORTH 40 DEGREES 35 MINUTES 52 SECONDS EAST 362.94 FEET TO THE TRUE POINT OF BEGINNING;

EXCEPT THEREFROM:

COMMENCING AT ABOVE DESCRIBED POINT "B";

THENCE SOUTH 56 DEGREES 40 MINUTES 57 SECONDS WEST 40.30 FEET TO THE TRUE POINT OF BEGINNING;

THENCE SOUTH 40 DEGREES 18 MINUTES 14 SECONDS EAST 112.85 FEET TO THE BEGINNING OF A CURVE CONCAVE SOUTHWESTERLY AND HAVING A RADIUS OF 245.00 FEET;

THENCE SOUTHEASTERLY ALONG THE ARC OF SAID CURVE THROUGH A CENTRAL ANGLE OF 30 DEGREES 58 MINUTES 23 SECONDS A DISTANCE OF 132.44 FEET;

THENCE SOUTH 62 DEGREES 40 MINUTES 46 SECONDS WEST LEAVING SAID CURVE A DISTANCE OF 575.63 FEET TO A POINT ON A CURVE THE RADIUS OF WHICH BEARS SOUTH 31 DEGREES 50 MINUTES 56 SECONDS WEST A DISTANCE OF 127.76 FEET;

THENCE NORTHWESTERLY ALONG THE ARC OF SAID CURVE THROUGH A CENTRAL ANGLE OF 17 DEGREES 31 MINUTES 43 SECONDS A DISTANCE OF 39.08 FEET;

THENCE NORTH 47 DEGREES 44 MINUTES 42 SECONDS EAST LEAVING SAID CURVE A DISTANCE OF 301.47 FEET;

THENCE NORTH 35 DEGREES 33 MINUTES 19 SECONDS EAST 283.02 FEET;

THENCE NORTH 56 DEGREES 40 MINUTES 57 SECONDS EAST 37.83 FEET TO THE TRUE POINT OF BEGINNING.

PARCEL NO. 21:

INTENTIONALLY OMITTED

PARCEL NO. 22:

A PERPETUAL RIGHT-OF-WAY FOR ROAD AS SET FORTH IN INSTRUMENT OF RIGHT-OF-WAY SERIAL NO. AZA-23298 TO QUINTERO GOLF COUNTRY CLUB, LLC, RECORDED AS 2004-1498803 OF OFFICIAL RECORDS.

20090625632

PARCEL NO. 23:

A PERPETUAL RIGHT-OF-WAY FOR ROAD AS SET FORTH IN INSTRUMENT OF RIGHT-OF-WAY SERIAL NO. AZA-29560 RECORDED IN 2004-1498804 OF OFFICIAL RECORDS.

PARCEL NO. 24:

A PERPETUAL RIGHT-OF-WAY FOR ROAD AS SET FORTH IN INSTRUMENT OF RIGHT-OF-WAY SERIAL NO. AZA-30751 RECORDED IN 2004-1498805 OF OFFICIAL RECORDS.

PARCEL NO. 25:

A BUREAU OF LAND MANAGEMENT EASEMENT FOR SEWER LINE AS SET FORTH IN INSTRUMENT OF EASEMENT SERIAL NO. AZA-31460 RECORDED IN 2005-0622416 OF OFFICIAL RECORDS.

PARCEL NO. 26:

EASEMENT FOR WATERLINE RECORDED IN 00-0272121 OF OFFICIAL RECORDS.

PARCEL NO. 27:

EASEMENT FOR PUBLIC WATERLINE RECORDED IN 2003-0391435 OF OFFICIAL RECORDS.

PARCEL NO. 28:

EASEMENTS AND RIGHTS CREATED UNDER DECLARATION OF RESTRICTIONS FOR GOLF COURSE, RECORDED IN 2000-0999988 OF OFFICIAL RECORDS.

PARCEL NO. 29:

EASEMENTS AND RIGHTS CREATED UNDER DECLARATION OF COVENANTS, CONDITIONS AND RESTRICTIONS FOR QUINTERO GOLF AND COUNTRY CLUB, RECORDED IN 2001-0798615, AS AMENDED BY FIRST AMENDMENT RECORDED IN 2003-1652214 OF OFFICIAL RECORDS.

PARCEL NO. 30:

THE VILLAGES PARCEL 1, OF QUINTERO GOLF AND COUNTRY CLUB PHASE I, ACCORDING TO THE PLAT OF RECORD IN THE OFFICE OF THE COUNTY RECORDER OF MARICOPA COUNTY, ARIZONA, RECORDED AS BOOK 592 OF MAPS, PAGE 42;

EXCEPT ANY PORTION LYING WITHIN THE FOLLOWING DESCRIBED PROPERTY:

ENTRADA AT QUINTERO GOLF AND COUNTRY CLUB CONDOMINIUM, A CONDOMINIUM AS CREATED BY THAT CERTAIN AMENDED AND RESTATED DECLARATION RECORDED AS 2006-0895591 OF OFFICIAL RECORDS, AND SHOWN ON THE PLAT OF SAID CONDOMINIUM AS RECORDED IN BOOK 803 OF MAPS, PAGE 30, IN THE OFFICE OF THE COUNTY RECORDER OF MARICOPA COUNTY, ARIZONA.

(ALSO KNOWN AS APNs: 503-88-041A AND 503-88-041B)

20090625632

## EXHIBIT "1"

Villages Parcel 2 of Quintero Golf and Country Club Phase I
39591 N. Rees Jones Blvd
Peoria, AZ 85383

Parcels 1 through 5 of Founders Golf Course, Quintero Golf and Country Club Phase I
No Addresses Available

Recreational Parcels 1 and 2 of Quintero Golf and Country Club Phase I
No Addresses Available

Tracts A through D of Quintero Lane, Quintero Golf and Country Club Phase I
No Addresses Available

Lot 21 of Sunset Vistas, Quintero Golf and Country Club Phase I
39468 N. Haig Pt.
Peoria, AZ 85383

Lot 23 of Founders Estates 2, Quintero Golf and Country Club Phase I
39688 N. Quintero Ln
Peoria, AZ 85383

Lot 25 of Founders Estates 2, Quintero Golf and Country Club Phase I
39751 N. White Peak
Peoria, AZ 85383

Lot 26 of Founders Estates 2, Quintero Golf and Country Club Phase I
39748 N. Quintero Ln
Peoria, AZ 85383

Lot 16 of The Ridge, Quintero Golf and Country Club Phase I
39658 N. Whispering Ridge Way
Peoria, AZ 85383

Lot 7 of Founders Estates 1, Quintero Golf and Country Club Phase I
16491 W. Saguaro Breeze
Peoria, AZ 85383

Lot 11 of Founders Estates 1, Quintero Golf and Country Club Phase I
16562 W. Saguaro Breeze
Peoria, AZ 85383

{00095046.DOC /}

20090625632

Lot 37 of Founders Estates 3, Quintero Golf and Country Club Phase I
16827 W. Peaceful Valley
Peoria, AZ 85383

Lot 1 of The Enclave, Quintero Golf and Country Club Phase I
16408 W. Serenity Ln
Peoria, AZ 85383

Lot 2 of The Enclave, Quintero Golf and Country Club Phase I
16392 W. Serenity Ln
Peoria, AZ 85383

Lot 3 of The Enclave, Quintero Golf and Country Club Phase I
16382 W. Serenity Ln
Peoria, AZ 85383

Lot 4 of The Enclave, Quintero Golf and Country Club Phase I
16378 W. Serenity Ln
Peoria, AZ 85383

Lot 6 of The Enclave, Quintero Golf and Country Club Phase I
16336 W. Serenity Ln
Peoria, AZ 85383

Lot 7 of The Enclave, Quintero Golf and Country Club Phase I
16318 W. Serenity Ln
Peoria, AZ 85383

Lot 8 of The Enclave, Quintero Golf and Country Club Phase I
16298 W. Serenity Ln
Peoria, AZ 85383

Lot 11 of The Enclave, Quintero Golf and Country Club Phase I
39808 N. Serenity Pl
Peoria, AZ 85383

Lot 13 of The Enclave, Quintero Golf and Country Club Phase I
39803 N. Serenity Pl
Peoria, AZ 85383

Lot 15 of The Enclave, Quintero Golf and Country Club Phase I
39778 N. Serenity Pl
Peoria, AZ 85383

2

20090625632

Lot 16 of The Enclave, Quintero Golf and Country Club Phase I
39788 N. Serenity Pl
Peoria, AZ  85383

Lot 18 of The Enclave, Quintero Golf and Country Club Phase I
16379 W. Serenity Ln
Peoria, AZ  85383

Lot 19 of The Enclave, Quintero Golf and Country Club Phase I
16393 W. Serenity Ln
Peoria, AZ  85383

Lot 20 of The Enclave, Quintero Golf and Country Club Phase I
16407 W. Serenity Ln
Peoria, AZ  85383

Lot 46 of Founders Estates 4, Quintero Golf and Country Club Phase I
39983 N. Shadow Canyon Ln
Peoria, AZ  85383

Lot 50 of Founders Estates 4, Quintero Golf and Country Club Phase I
40173 N. Shadow Canyon Ln
Peoria, AZ  85383

Lot 51 of Founders Estates 4, Quintero Golf and Country Club Phase I
40154 N. Quintero Ln
Peoria, AZ  85383

Lot 52 of Founders Estates 4, Quintero Golf and Country Club Phase I
40160 N. Quintero Ln
Peoria, AZ  85383

Lot 55 of Founders Estates 4, Quintero Golf and Country Club Phase I
40177 N. Quintero Ln
Peoria, AZ  85383

Tract A of Founders Estates 4, Quintero Golf and Country Club Phase I
No Address Available

Vacant Land Known as Portions of Phase II of Quintero Golf and Country Club

3

20090625632

## EXHIBIT "2"

| Phase 1 | Phase 2 |
|---|---|
| 503-88-042 | 503-99-535 |
| 503-88-032D | 503-99-001V |
| 503-88-033 | 503-99-001S |
| 503-88-034 | 503-99-001Z |
| 503-88-035 | |
| 503-88-036 | |
| 503-88-039 | |
| 503-88-040 | |
| 503-88-045 | |
| 503-88-046 | |
| 503-88-047 | |
| 503-88-048 | |
| 503-99-547 | |
| 503-99-555 | |
| 503-99-557 | |
| 503-99-558 | |
| 503-99-582 | |
| 503-99-596 | |
| 503-99-600 | |
| 503-99-613 | |
| 503-99-624 | |
| 503-99-625 | |
| 503-99-626 | |
| 503-99-627 | |
| 503-99-629 | |
| 503-99-630 | |
| 503-99-631 | |
| 503-99-634 | |
| 503-99-636 | |
| 503-99-638 | |
| 503-99-639 | |
| 503-99-641 | |
| 503-99-642 | |
| 503-99-643 | |
| 503-99-659 | |
| 503-99-663 | |
| 503-99-664 | |
| 503-99-665 | |
| 503-99-666 | |
| 503-99-667 | |
| 503-88-041A | |
| 503-88-041B | |

{00095047.DOC /}

# NO. "14"

Michael K. Jeanes, Clerk of Court
*** Electronically Filed ***
02/08/2010 8:00 AM

SUPERIOR COURT OF ARIZONA
MARICOPA COUNTY

CV 2010-000896                                           02/05/2010

                                              CLERK OF THE COURT
HONORABLE EILEEN S. WILLETT                        J. Rutledge
                                                     Deputy


PAUL VAN WEELDEN, et al.              J JEFFREY COUGHLIN

v.

HILLCREST BANK                        SCOTT W HULBERT



## RETURN HEARING ON ORDER TO SHOW CAUSE

Courtroom CCB-401

9:13 a.m. This is the time set for Return Hearing on Order to Show Cause re: Temporary Restraining Order. Plaintiffs are represented by Counsel J. Jeffrey Coughlin. Defendant is represented by Counsel Scott W. Hulbert.

Court reporter, Pamela Remus, is present

Court and counsel discuss the status of the case.

Arguments are presented.

For the reasons set forth on the record,

IT IS ORDERED granting the Temporary Restraining Order pending the Court's review and consideration of the parties' respective arguments on the bond amount.

IT IS FURTHER ORDERED directing the parties to submit a proposed joint scheduling order regarding discovery deadlines all in accordance with the format set forth herein.

9:39 a.m. Matter concludes.

Docket Code 005                    Form V000A                         Page 1

SUPERIOR COURT OF ARIZONA
MARICOPA COUNTY

CV 2010-000896                                           02/05/2010

LATER:

The Court having considered the parties' oral argument and the information provided regarding the bond amount,

IT IS ORDERED granting the Temporary Restraining Order and setting bond in the amount of $1,000.00, all in accordance with the formal written Order signed by the Court on February 5, 2010 and filed (entered) by the Clerk on February 5, 2010.

JOINT PRETRIAL MEMORANDUM

IT IS ORDERED that the parties shall submit a Joint Pretrial Memorandum as set forth below.

The Court will review the Joint Pretrial Memorandum and proposed Scheduling Order prescribed herein. The Court may adopt or modify the discovery and disclosure schedule order and set a scheduling conference for purposes of setting a trial date. If counsel still believe that a pretrial conference is still necessary at this stage of the litigation, they should address the reasons for the need for a pretrial conference in the first paragraph of the Joint Pretrial Memorandum.

If parties fail to file a timely memorandum, sanctions may issue pursuant to Rule 16(f).

IT IS FURTHER ORDERED:

All counsel are directed to meet personally to discuss all of the matters set forth in Rule 16(b). Counsel shall prepare and file with the Court by **5:00 p.m. on March 5, 2010**, a Joint Pretrial Memorandum, and prepare a proposed order for Discovery and Disclosure deadlines. The proposed order shall include dates for the following items and conform substantially with the attached sample order.

1.  **An agreed upon schedule and date for completion of non-expert depositions.** As far as can reasonably be anticipated, each party shall set forth the depositions they anticipate taking and the approximate time required for each; any and all medical examinations which may be required of any of the parties; the person or persons to conduct such examinations; all requests for production; and all tangible evidence to be disclosed or exchanged.

2.  **A date for the final disclosure of the identities subject matters and reports of expert witnesses,** and/or to supplement disclosures made to date.

SUPERIOR COURT OF ARIZONA
MARICOPA COUNTY

CV 2010-000896                                         02/05/2010

3.      **A date or dates for the initial and final disclosure of all non-expert witnesses,** and/or to supplement disclosures made to date.

4.      **A date by which all written discovery will be propounded and concluded**. Further, counsel shall set forth any written discovery outstanding and a date when it will be complete.

5.      The position of each counsel on whether the Rule 38.1 time limits should be waived.

6.      **A proposed date for a Mandatory Settlement Conference pursuant to Rule 16.1. Alternatively, the parties may propose a deadline by which they will participate in private mediation.**

7.      **A date for completion of all discovery,** including expert discovery.

8.      **A date by which all dispositive or partially-dispositive motions shall be filed**.

9.      **A proposed trial date** agreed upon by all counsel and anticipated length of trial.

        If the parties agree as to the dates, they need to only prepare and submit the proposed order attached hereto. If counsel are unable to agree on any of the items set forth in the attached form of order, the reasons for their inability to agree shall be set forth in the Pretrial Memorandum and each shall prepare a separate proposed order. **All proposed deadlines shall be set forth as calendar dates, and not in the form "XX days before trial."**

        IT IS FURTHER ORDERED that counsel shall notify the Court of any agreed-upon extension of any time period provided by the Rules of Civil Procedure. The purpose of this order is not to discourage extensions as a matter of professionalism, but to ensure that no party suffers summary disposition of any issue by virtue of an extension of which the Court is not aware.

**HONORABLE EILEEN S. WILLETT**
**MARICOPA COUNTY SUPERIOR COURT**
**CENTRAL COURT BUILDING**
**201 W. JEFFERSON**
**4TH FLOOR, COURTROOM 401**
**PHOENIX, AZ 85003**
**602-506-3343**
This case is eFiling eligible: http://www.clerkofcourt.maricopa.gov/efiling/default.asp

SUPERIOR COURT OF ARIZONA
MARICOPA COUNTY

CV 2010-000896                                02/05/2010

[PROPOSED] SCHEDULING ORDER

The Court having received the parties' Joint Comprehensive Pretrial Conference Memorandum,

IT IS ORDERED entering the following schedule for disclosure as set forth unless the parties obtain written modifications by the Court:

(1)     Initial disclosures shall be exchanged by: **(MM/DD/YYYY).**

(2)     The identities and subject areas of expert testimony shall be disclosed by: **(MM/DD/YYYY).**

(3)     Plaintiff's final expert disclosures shall be served by: **(MM/DD/YYYY).**

        Defendant's final expert disclosures shall be exchanged by: **(MM/DD/YYYY).**

        Rebuttal expert disclosures shall be exchanged by: **(MM/DD/YYYY).**

(4)     Final Non-expert disclosures shall be exchanged by: **(MM/DD/YYYY).**

(5)     Written discovery shall be propounded by: **(MM/DD/YYYY).**

(6)     Dispositive Motions shall be filed by: **(MM/DD/YYYY).**

(7)     Depositions shall be completed by: **(MM/DD/YYYY).**

(8)     Discovery shall be completed by: **(MM/DD/YYYY).**

(9)     Any motions to amend pleadings shall be filed by: **(MM/DD/YYYY).**

(10)    The parties remaining in this action shall participate in comprehensive mediation by **(MM/DD/YYYY).**

IT IS ORDERED setting Status Conference in this matter on [counsel to leave this date blank], (time allotted: 15 minutes), in this Division.

IT IS FURTHER ORDERED that in no less than **five days** prior to the Status Conference set herein, the parties shall submit a Joint Statement pursuant to ARCP 16(d) and report to the

SUPERIOR COURT OF ARIZONA
MARICOPA COUNTY

CV 2010-000896                                    02/05/2010

Court the history and status of the efforts at Alternative Dispute Resolution pursuant to ARCP Rule 16(g).

**DISCOVERY DISPUTES:**  In the event of any dispute concerning discovery, counsel are directed to confer pursuant to ARCP 26(g).  If such conference is unsuccessful, counsel are directed to initiate a conference call with this Division BEFORE filing a motion to compel or motion for protective order.

# NO. "15"

Michael K. Jeanes, Clerk of Court
*** Electronically Filed ***
Lori Cummings
Filing ID 540477
3/5/2010 5:38:36 PM

1  STEVEN N. BERGER, SBA #009613
2  SCOTT W. HULBERT, SBA #021830
   **ENGELMAN BERGER, P.C.**
   3636 NORTH CENTRAL AVENUE, SUITE 700
3  PHOENIX, ARIZONA 85012

4  Ph: (602) 271-9090
   Fax: (602) 222-4999
   Email: swh@engelmanberger.com
5

6  Attorneys for Plaintiff Hillcrest Bank

7                **SUPERIOR COURT OF MARICOPA COUNTY**

8                        **STATE OF ARIZONA**

9  PAUL VAN WEELDEN AND KAREN          Case No. CV2010-000896
   VAN WEELDEN, husband and wife;
10 PAUL VAN WEELDEN, as Trustee fir    **HILLCREST BANK'S NOTICE**
   THE VAN WEELDEN FAMILY              **OF FILING JOINT PRETRIAL**
11 TRUST,                              **MEMORANDUM**

12              Plaintiff,

13 vs.

14 HILLCREST BANK, a Kansas
   corporation,
15
                Defendant.
16

17        Pursuant to the Court's minute entry, Hillcrest filed the Joint Pretrial Memorandum on

18 March 5, 2010. The parties exchanged emails and phone calls throughout the day with respect

19 to changes to the Joint Pretrial Memorandum.  Earlier in the day, Plaintiffs' counsel had

20 provided permission to counsel for Hillcrest to sign on his behalf when electronically filing

21 the Joint Pretrial Memorandum.  However, towards the end of the day, counsel for Hillcrest

22 forwarded a draft with additions to Plaintiffs' counsel for review.  After sending the draft,

23 Counsel for Hillcrest was unable to make contact with Plaintiffs' counsel via the phone or

24 email.  Therefore, counsel for Hillcrest filed the Joint Pretrial Memorandum without signing

25 on behalf of Plaintiffs' counsel.

26

27

{02329.001/00141323.DOC /}

DATED this 5th day of March, 2010.

ENGELMAN BERGER, P.C.

By  /s/ Scott W. Hulbert, SBA #021830
    Steven N. Berger
    Scott W. Hulbert
    3636 North Central Avenue, Suite 700
    Phoenix, Arizona 85012
    Attorneys for Hillcrest Bank

Copy of the foregoing
mailed this 5th day
of March, 2010 to:

J. Jeffrey Coughlin
J. Jeffrey Coughlin PLLC
114 S. Pleasant Street
Prescott, AZ 86303
Attorneys for Plaintiffs

    /s/ Elizabeth Gray

ENGELMAN BERGER, P.C.
3636 North Central Avenue, Suite 700
Phoenix, Arizona 85012

{02329.001/00141323.DOC /}

2

# NO. "16"

MICHAEL K. JEANES, CLERK
BY *Unmartinez* DEP
FILED

10 MAR -8 AM 9: 15

1  J. Jeffrey Coughlin (013801)
   **J. JEFFREY COUGHLIN PLLC**
2  114 S. Pleasant Street
   Prescott, Arizona 86303
3  Telephone: (928) 445-7137
   Facsimile: (866) 890-8989
4  j.coughlin@azbar.org
   *Attorneys for Plaintiffs*
5

6          IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

7             IN AND FOR THE COUNTY OF MARICOPA

8

| | |
|---|---|
| 9  PAUL VAN WEELDEN AND KAREN VAN WEELDEN, husband and wife; Paul Van Weelden, as Trustee for THE VAN WEELDEN FAMILY TRUST. | CASE NO. CV 2010 000896 |
| 11         Plaintiffs, | |
| 12  vs. | **PLAINTIFF'S PROPOSED SCHEDULING ORDER** |
| 13 | |
| 14  HILLCREST BANK, a Kansas banking corporation, | |
| 15         Defendants. | |

16

17          Plaintiffs submit their Separate Proposed Scheduling Order because they exchanged their

18  Proposed Order with the Defendants on Thursday, March 4, 2010 at 10:23 a.m. and as of the

19  filing of this Proposed Order Defendants have not responded with alternative dates.

20  IT IS ORDERED entering the following schedule for disclosure as set forth unless the parties

21  obtain written modifications by the Court:

22          1.      Initial disclosures shall be exchanged by May 14, 2010.

23          2.      The identities and subject areas of expert testimony shall be disclosed by June 14,

24  2010.

25          3.      Plaintiffs' final expert disclosures shall be served by July 9, 2010.

-1-

1        Defendant's final expert disclosures shall be exchanged by July 23, 2010.

2        Rebuttal expert disclosures shall be exchanged by August 6, 2010.

3    4.    Final Non-expert disclosures shall be exchanged by July 9, 2010.

4    5.    Written discovery shall be propounded by May 28, 2010.

5    6.    Dispositive Motions shall be filed by September 23, 2010.

6    7.    Depositions shall be completed by September 3, 2010.

7
8    8.    Discovery shall be completed by September 23, 2010.

9    9.    Any motions to amend pleadings shall be filed by August 6, 2010.

10    10.   The parties remaining in this action shall participate in comprehensive mediation

11   by September 10, 2010.

12    11.   The parties agree that Rule 38.1 time limits should not be waived.

13    12.   The parties propose that trial in this matter be set for October 25, 26, 27 and 28,

14   2010.

15        IT IS ORDERED setting a Status Conference in this matter on _____, 2010

16   at _____, time allotted: _____, in this Division.

17        IT IS FURTHER ORDERED that in no less than **five days** prior to the Status Conference

18   set herein, the parties shall submit a Joint Statement pursuant to ARCP 16(d) and report to the

19   Court the history and status of the efforts of Alternative Dispute Resolution pursuant to ARCP

20   Rule 16(g).

21        **DISCOVERY DISPUTES:**  In the event of any dispute concerning discovery, counsel

22   are directed to confer pursuant to ARCP 26(g).  If such conference is unsuccessful, counsel are

23   directed to initiate a conference call with this Division BEFORE filing a motion to compel or

24   motion for protective order.

25

-2-

DONE IN OPEN COURT this _____ day of _____, 2010.

_____
HON. EILEEN S. WILLETT

# NO. "17"

Michael K. Jeanes, Clerk of Court
*** Electronically Filed ***
Lori Cummings
Filing ID 540651
3/8/2010 8:56:14 AM

1  KEVIN M. JUDISCAK, SBA #012764
   SCOTT W. HULBERT, SBA #021830
2  **ENGELMAN BERGER, P.C.**
   3636 NORTH CENTRAL AVENUE, SUITE 700
3  PHOENIX, ARIZONA 85012

4  Ph: (602) 271-9090
   Fax: (602) 222-4999
   Email: kmj@engelmanberger.com
5  Email: swh@engelmanberger.com

6

7  Attorneys for Plaintiff Hillcrest Bank

8  **SUPERIOR COURT OF MARICOPA COUNTY**

9  **STATE OF ARIZONA**

10 PAUL VAN WEELDEN AND KAREN        Case No. CV2010-000896
   VAN WEELDEN, husband and wife;
11 PAUL VAN WEELDEN, as Trustee fir   **JOINT PRETRIAL**
   THE VAN WEELDEN FAMILY            **MEMORANDUM**
12 TRUST,

13          Plaintiff,              (Honorable Eileen S. Willett)

14 vs.

15 HILLCREST BANK, a Kansas
   corporation,
16
            Defendant.
17

18        Plaintiffs Paul and Karen Van Weelden and the Van Weelden Family Trust

19 ("Plaintiffs") and Defendant Hillcrest Bank ("Hillcrest") submit their Joint Pretrial

20 Memorandum pursuant to *Ariz. R. Civ. P.* 16(b) and this Court's February 5, 2010, Minute

21 Entry.[1]

22        **HILLCREST'S STATEMENT IN SUPPORT OF ITS**
          **PROPOSED SCHEDULING ORDER**
23
24        By definition, a Temporary Restraining Order shall not exceed ten days.  Therefore,

25 the Arizona Rules of Civil Procedure ("Rules") contemplate a hearing on Plaintiffs' Motion

26 for Preliminary Injunction will occur within that ten-day period, or immediately thereafter.

27

---

[1]  It is Plaintiffs' intent to stand by the dates proposed in its scheduling order.

{02329.003/00150094.DOC /}

1   Thus, discovery, if at all, is truncated and to be conducted in an expedited manner. Here, the

2   Plaintiffs' lawsuit has been pending for nearly two months. Nevertheless, the Plaintiffs have

3   not made *any* effort to pursue *any* discovery that they believe is necessary for the preliminary

4   injunction hearing.

5           Plaintiffs suggest a hearing on their Application for Preliminary Injunction at the end

6   of October, which is over seven months from now. Defendants have no objection to such a

7   delayed hearing, as long as Plaintiffs appreciate that the TRO entered by this Court on

8   February 5, 2010, expired after ten days, as recognized by the Arizona Court of Appeals (see

9   Exhibit A, hereto) and as explained more fully below. However, if Plaintiffs intend to seek

10  interim injunctive relief prior to the hearing on their Motion for Preliminary Injunction, the

11  hearing on the preliminary injunction must be conducted in the immediate future.

12          The Court will recall that the Complaint was filed on January 8, 2010. The OSC was

13  granted on January 14, 2010. However, the Complaint and OSC were not served upon

14  Defendants until 2 weeks later and just five days before the OSC. Court conducted OSC on

15  February 5, 2010. As a consequence of Plaintiffs' delay in serving the Complaint and OSC,

16  Defendants were not able to file opposition until February 4, 2010. In fact, the Court even

17  commented that it had not had an opportunity to read the opposition prior to the OSC.

18          After the entering of the TRO, Hillcrest filed a Petition for Special Action. The Court

19  of Appeals instructed that TROs expire after 10 days unless extended. Here, Plaintiff did not

20  request and the Court did not extend the TRO. Therefore, Court of Appeals apparently

21  concluded that the TRO had expired on its own terms.

22          At the OSC hearing, the Court asked the parties how long they needed for discovery

23  before a preliminary injunction hearing could be set. Plaintiffs suggested 2 – 3 months,

24  Hillcrest suggested that no discovery was necessary because Plaintiffs' claims are legally

25  defective. The Court directed that because the parties have divergent views regarding the

26  necessity of discovery, the Court would send a minute entry asking the parties to confer and

27  convey their positions to the Court regarding the necessity or lack of necessity regarding

ENGELMAN BERGER, P.C.
3636 North Central Avenue, Suite 700
Phoenix, Arizona 85012

{02329.003/00150094.DOC /}

2

discovery for the preliminary injunction.

The parties conferred and Hillcrest was unable to agree to the extended discovery schedule suggested by the Plaintiffs. Instead, Hillcrest recommends a truncated discovery schedule that tracks the intent of the injunctive relief rules and will provide for a much speedier resolution of this matter.

**1.    INITIAL DISCLOSURES.**

Plaintiffs filed their Complaint almost two months ago, on January 8, 2010, and sought expedited and extraordinary injunctive relief against Hillcrest. Therefore, Plaintiffs should be prepared to exchange Rule 26.1 Disclosure Statements by March 19, 2010.

**2.    DISCLOSURE OF IDENTITIES AND SUBJECT AREAS OF EXPERT TESTIMONY FOR PRELIMINARY INJUNCTION HEARING.**

Again, Plaintiffs commenced this lawsuit almost two months ago, on January 8, 2010. Therefore, Plaintiffs should be prepared to disclose the identities and subject areas of expert testimony for the preliminary injunction hearing by March 15, 2010.

**3.    FINAL EXPERT DISCLOSURES FOR PRELIMINARY INJUNCTION HEARING.**

> A.    Plaintiffs' final expert disclosures for the preliminary injunction hearing shall be served by March 24, 2010.
>
> B.    Defendant's final expert disclosures for the preliminary injunction hearing shall be served by April 7, 2010.
>
> C.    Hillcrest Bank asserts that rebuttal experts' reports are not needed for the preliminary injunction hearing, but that if permitted, rebuttal expert disclosures for the preliminary injunction hearing shall be exchanged by April 14, 2010.

**4.    FINAL NON-EXPERT DISCLOSURES FOR PRELIMINARY INJUNCTION HEARING.**

Final non-expert disclosures for the preliminary injunction hearing shall be exchanged by March 31, 2010.

**5.    WRITTEN DISCOVERY FOR PRELIMINARY INJUNCTION HEARING.**

ENGELMAN BERGER, P.C.
3636 North Central Avenue, Suite 700
Phoenix, Arizona 85012

{02329.003/00150094.DOC /}

3

1       The Rules do not contemplate written discovery for a preliminary injunction hearing.

2 If written discovery is permitted, such discovery shall be propounded by March 17, 2010.

3 **6.**    **DISPOSITIVE MOTIONS FOR PRELIMINARY INJUNCTION HEARING.**

4       Dispositive motions shall be filed by March 31, 2010.

5 **7.**    **DEPOSITIONS FOR PRELIMINARY INJUNCTION HEARING.**

6       The Rules do not contemplate depositions for a preliminary injunction hearing.  If

7 depositions are permitted, such depositions shall be completed by April 16, 2010.

8 **8.**    **DISCOVERY FOR PRELIMINARY INJUNCTION HEARING.**

9       The Rules do not contemplate discovery for a preliminary injunction hearing.  If

10 discovery is permitted, such discovery shall be completed by April 16, 2010.

11 **9.**    **MOTION TO AMEND PLEADINGS FOR PRELIMINARY INJUNCTION HEARING.**

12       The Rules do not contemplate motions to amend the pleadings for a preliminary

13 injunction hearing.  If such a motion is permitted, such motion shall be filed by March 15,

14 2010.

15 **10.**   **MEDIATION FOR PRELIMINARY INJUNCTION HEARING.**

16       The Rules do not require a mediation prior to a preliminary injunction hearing.

17 **11.**   **JOINT PRE-HEARING STATEMENT FOR PRELIMINARY INJUNCTION HEARING.**

18

19       The parties shall file a Joint Pre-Hearing Statement for the preliminary injunction not

20 less than three judicial days prior to the preliminary injunction hearing.

21 **12.**   **PRELIMINARY INJUNCTION HEARING.**

      As the Rules contemplate that a hearing on an application for preliminary injunction

22 will be conducted within ten days of the entry of a temporary restraining order, or

23 immediately thereafter for good cause shown, the preliminary injunction hearing shall be

24 conducted no later than the final week of April, 2010, which is approximately 120 days after

25 Plaintiffs commenced this lawsuit.  Hillcrest estimates that the Preliminary Injunction Hearing

26 will take one day.

27

ENGELMAN BERGER, P.C.
3636 North Central Avenue, Suite 700
Phoenix, Arizona 85012

{02329.003/00150094.DOC /}

1

2

3        **DATED** this 5th day of March, 2010.

4

5    **J. JEFFERY COUGHLIN PLLC**                **ENGELMAN BERGER, P.C.**

6

7    By_____              By    */s/ Scott W. Hulbert*
            J. Jeffery Coughlin                        Kevin M. Judiscak
8           114 South Pleasant Street                 Scott W. Hulbert
            Prescott, Arizona  86303                  3636 North Central Avenue
9           Attorney for Plaintiff                    Suite 700
                                                      Phoenix, AZ 85012
10                                                    Attorneys for Defendant

11

12   Copy of the foregoing
     mailed this 5th day
13   of March, 2010 to:

14   J. Jeffrey Coughlin
     J. Jeffrey Coughlin PLLC
15   114 S. Pleasant Street
     Prescott, AZ  86303
16   Attorneys for Plaintiffs

17
         */s/ Elizabeth Gray*
18        Elizabeth Gray

19

20

21

22

23

24

25

26

27

ENGELMAN BERGER, P.C.
3636 North Central Avenue, Suite 700
Phoenix, Arizona 85012

5

# EXHIBIT "A"
## (Court of Appeals Order)

RECEIVED

FEB 24 2010

**IN THE COURT OF APPEALS
STATE OF ARIZONA
DIVISION ONE**

DIVISION ONE
COURT OF APPEALS
STATE OF ARIZONA

FILED   FEB 22 2010

PHILIP G. URRY, CLERK
BY _____

| | | |
|---|---|---|
| HILLCREST BANK, a Kansas banking corporation, | ) ) | Court of Appeals Division One |
| Petitioner, | ) ) | No. 1 CA-SA 10-0030 |
| | ) | |
| v. | ) ) | Maricopa County Superior Court |
| THE HONORABLE EILEEN WILLETT, Judge of the SUPERIOR COURT OF THE STATE OF ARIZONA, in and for the County of MARICOPA, | ) ) ) ) | No. CV2010-000896 Department B |
| | ) | |
| Respondent Judge, | ) ) | **O R D E R** |
| | ) | |
| PAUL VAN WEELDEN and KAREN VAN WEELDEN, husband and wife; PAUL VAN WEELDEN, as Trustee for THE VAN WEELDEN FAMILY TRUST, | ) ) ) ) | |
| | ) | |
| Real Parties in Interest. | ) ) | |

The court, Presiding Judge Patricia K. Norris, and Judges Daniel A. Barker and Peter B. Swann, participating, has considered the petition for special action filed by the petitioner.

**IT IS ORDERED** that the Court of Appeals, in the exercise of its discretion, declines to accept jurisdiction in this special action without prejudice. The court notes a TRO may not exceed ten days unless extended.

**IT IS FURTHER ORDERED** vacating this court's previous order requiring the filing and service of a response on or before March 1, 2010.

_Patty K Norris_
PATRICIA K. NORRIS, Presiding Judge

Page 2

1 CA-SA 10-0030

Maricopa County Superior Court
CV2010-000896

A true copy of the foregoing
was faxed February 22, 2010, to:

A true copy of the foregoing
was mailed February 23, 2010 to:

Kevin M Judiscak
Engelman Berger PC
One Columbus Plaza
Suite 700
3636 North Central Avenue
Phoenix AZ 85012-1936
Attorneys for:  Petitioner

J Jeffrey Coughlin
J Jeffrey Coughlin PLLC
114 South Pleasant Street
Prescott AZ 86303
Attorney for: Real Party in Interest

Hon Eileen S Willett, Judge
Maricopa County Superior Court
Central Court Building
201 W Jefferson St
Phoenix AZ 85003-2243


Philip G Urry, Clerk
By

Deputy Clerk

# NO. "18"

Michael K. Jeanes, Clerk of Court
*** Electronically Filed ***
03/17/2010 8:00 AM

SUPERIOR COURT OF ARIZONA
MARICOPA COUNTY

CV 2010-000896                                          03/12/2010

                                              CLERK OF THE COURT
HONORABLE EILEEN S. WILLETT                        J. Rutledge
                                                     Deputy


PAUL VAN WEELDEN, et al.                  J JEFFREY COUGHLIN

v.

HILLCREST BANK                            STEVEN N BERGER



SCHEDULING ORDER

The Court having received the parties' *Joint Pretrial Memorandum,* filed March 8, 2010,

IT IS ORDERED entering the following schedule for disclosure as set forth unless the parties obtain written modifications by the Court:

(1)    Initial disclosures shall be exchanged by: **April 12, 2010**

(2)    The identities and subject areas of expert testimony shall be disclosed by: **May 12, 2010**

(3)    Plaintiff's final expert disclosures shall be served by: **June 1, 2010**

       Defendant's final expert disclosures shall be exchanged by: **July 1, 2010**

       Rebuttal expert disclosures shall be exchanged by: **July 15, 2010**

(4)    Final Non-expert disclosures shall be exchanged by: **May 10, 2010**

(5)    Written discovery shall be propounded by: **May 17, 2010**

(6)    Dispositive Motions shall be filed by: **September 1, 2010**

SUPERIOR COURT OF ARIZONA
MARICOPA COUNTY

CV 2010-000896                                          03/12/2010


(7)     Depositions shall be completed by: **August 16, 2010**

(8)     Discovery shall be completed by: **August 16, 2010**

(9)     Any motions to amend pleadings shall be filed by: **May 17, 2010**

(10)    The parties remaining in this action shall participate in comprehensive mediation
        or settlement conference by **November 30, 2010.** If the parties wish to use the
        services of the court's ADR Office, a notice regarding referral to ADR must be
        filed with the court. Please be advised the ADR Office requires a **minimum 90
        days** to schedule a settlement conference.

        IT IS FURTHER ORDERED setting Status Conference re: Trial Setting on **December 7,
2010 at 9:00 a.m. (time allotted: 15 minutes),** in this Division.

**HONORABLE EILEEN S. WILLETT**
**MARICOPA COUNTY SUPERIOR COURT**
**CENTRAL COURT BUILDING**
**201 W. JEFFERSON**
**4TH FLOOR, COURTROOM 401**
**PHOENIX, AZ 85003**
**602-506-3343**
This case is eFiling eligible: http://www.clerkofcourt.maricopa.gov/efiling/default.asp

        **NOTE: Any party may request the presence of a court reporter by contacting the
division three (3) court business days before the scheduled hearing. To ensure a record of
your proceeding, you must request the presence of my court reporter by contacting the
division or placing your request in writing on a pleading filed with the Court.**

        IT IS FURTHER ORDERED that in no less than **five days** prior to the Status Conference
set herein, the parties shall submit a Joint Statement pursuant to ARCP 16(b) and report to the
Court the history and status of the efforts at Alternative Dispute Resolution pursuant to ARCP
Rule 16(g).

        DISCOVERY DISPUTES: In the event of any dispute concerning discovery, counsel are
directed to confer pursuant to ARCP 26(g). If such conference is unsuccessful, counsel are
directed to initiate a conference call with this Division BEFORE filing a motion to compel or
motion for protective order.

# NO. "19"

DIVISION ONE
COURT OF APPEALS
STATE OF ARIZONA

IN THE COURT OF APPEALS
STATE OF ARIZONA
DIVISION ONE

FILED   FEB 22 2010

PHILIP G. URRY, CLERK
BY _____

| | |
|---|---|
| HILLCREST BANK, a Kansas banking corporation, | Court of Appeals Division One |
| Petitioner, | No. 1 CA-SA 10-0030 |
| v. | Maricopa County Superior Court |
| THE HONORABLE EILEEN WILLETT, Judge of the SUPERIOR COURT OF THE STATE OF ARIZONA, in and for the County of MARICOPA, | No. CV2010-000896 |
| | Department B |
| Respondent Judge, | O R D E R |
| PAUL VAN WEELDEN and KAREN VAN WEELDEN, husband and wife; PAUL VAN WEELDEN, as Trustee for THE VAN WEELDEN FAMILY TRUST, | |
| Real Parties in Interest. | |

The court, Presiding Judge Patricia K. Norris, and Judges Daniel A. Barker and Peter B. Swann, participating, has considered the petition for special action filed by the petitioner.

IT IS ORDERED that the Court of Appeals, in the exercise of its discretion, declines to accept jurisdiction in this special action without prejudice. The court notes a TRO may not exceed ten days unless extended.

IT IS FURTHER ORDERED vacating this court's previous order requiring the filing and service of a response on or before March 1, 2010.

PATRICIA K. NORRIS, Presiding Judge

Page 2

1 CA-SA 10-0030

Maricopa County Superior Court
CV2010-000896

A true copy of the foregoing
was faxed February 22, 2010, to:

A true copy of the foregoing
was mailed February 23, 2010 to:

Kevin M Judiscak
Engelman Berger PC
One Columbus Plaza
Suite 700
3636 North Central Avenue
Phoenix AZ 85012-1936
Attorneys for:  Petitioner

J Jeffrey Coughlin
J Jeffrey Coughlin PLLC
114 South Pleasant Street
Prescott AZ 86303
Attorney for: Real Party in Interest

Hon Eileen S Willett, Judge
Maricopa County Superior Court
Central Court Building
201 W Jefferson St
Phoenix AZ 85003-2243


Philip G Urry, Clerk
By


Deputy Clerk

The foregoing instrument is a full, true and correct copy of
the original on file in this office.

ATTEST _____ 3/30/10

PHILIP G. URRY, Clerk of Division One
Court of Appeals, State of Arizona

By _____

# NO. "20"



PHILIP G. URRY
CLERK OF THE COURT

**Court of Appeals**

STATE OF ARIZONA
DIVISION ONE
STATE COURTS BUILDING
1501 WEST WASHINGTON STREET
PHOENIX, ARIZONA 85007

Phone (602) 542-4821
Fax    (602) 542-4833

March 30, 2010

Michael K Jeanes, Clerk
Maricopa County Superior Court
201 West Jefferson Street
Phoenix, Arizona  85003

Dear Mr. Jeanes:

                    RE:  1 CA-SA 10-0030

                    HILLCREST v HON WILLETT/WEELDEN

                    Maricopa County Superior Court
                    CV2010-000896

The following are enclosed in the above entitled and numbered cause:

    Certified Copy of ORDER declining to accept jurisdiction of this
    special action without prejudice.

    There are no records to be returned.

                              PHILIP G. URRY, CLERK

                              By _____
                                    Deputy Clerk

Enclosures (as noted)
c:
William H Anger
Kevin M Judiscak
Scott W Hulbert
J Jeffrey Coughlin
Hon Eileen S Willett, Judge

Date ____3/30/10____
Checked By ____C. Keller____
Not Returned _____

# NO. "21"

| Office Distribution | **SUPERIOR COURT OF ARIZONA**<br>**MARICOPA COUNTY** | **\*\*FILED\*\***<br>4/14/2010<br>Clerk of the Court |
| --- | --- | --- |

4/10/2010

COURT ADMINISTRATION

Ct. Admin
Deputy

**Case Number:** CV2010-000896

**Paul Van Weelden**

**V.**

**Hillcrest Bank**

---

The Judge assigned to this action is the Honorable Eileen Willett

NOTICE OF INTENT TO DISMISS FOR LACK OF SERVICE

You are hereby notified that the complaint filed on 1/8/2010 is subject to dismissal pursuant to Rule 4 (i), Arizona Rules of Civil Procedure. The deadline for completing service is 5/10/2010. If no judge has extended time for completing service and no defendants have been served by this date, this case will be dismissed.

Superior Court of Maricopa County - integrated Court Information System
**Endorsee Party Listing**
Case Number: CV2010-000896

| Party Name | Attorney Name | |
|---|---|---|
| Karen Van Weelden | J Jeffrey Coughlin | Bar ID: 013801 |
| Paul Van Weelden | J Jeffrey Coughlin | Bar ID: 013801 |

# NO. "22"

MICHAEL K. JEANES, CLERK
BY *Martinez* DEP
FILED

10 APR 15 AM 9: 03

Affidavit of Service of Process

SUPERIOR COURT
MARICOPA COUNTY, ARIZONA
Case Number: CV 2010 000896

PAUL VAN WEELDEN AND KAREN VAN WEELDEN, etc.; et. al.
vs.
HILLCREST BANK, a Kansas banking corporation
Subscribed and Sworn, State of:
                    County of:
Having been duly sworn I make the following statements upon my oath:
That I am fully qualified pursuant to RCP 4(d), 4.2(b), and 45(b), to
serve process in this case; that I received the documents listed
below from Palmer Investigative Services:
02/05/2010

Notice of Hearing on Order to Show Cause
Order to Show Cause
Application for Order to Show Cause
Affidavit in Support of Application for Order to Show Cause
Notice of Pendency of Action w/Exhibits
Application for Temporary Restraining Order
Affidavit in Support of Application for Temporary Restraining
Order Without Notice
Motion for Preliminary Injunction
Certificate on Compulsory Arbitration
Verified Complaint w/ Exhibit A

I personally served a copy of each document listed above on those
named below in the manner and at the time and place shown, hereafter,
set forth, to wit:
Entity Served:
Hillcrest Bank, a Kansas banking corporation
Address where served: 11111 U 95ᵗʰ St. Overland Park ks 66214

Date and Time: 1/29/2010 @ 10:28 Am

Manner of Service( )personal; ( )substitute; (✓)authorized to accept
By serving: Jessica Myers Branch MGR
Military Status:          Physical: white Female 40/45 y.o. 5'5" 160#
                                    Brown hair
                    John Losen
( )Sheriff, (✓)Process Server, ( )Constable, ( )Other_____

Sworn to before me, a notary public, this 29 day of Jan , 2010 ,

my commission expires 8/22/2011 .

Notary Public - State of Kansas
JAMES HANNAH
My Appointment Expires_____

```
Palmer Investigative Services      $    80 .00 Cost of Service
P.O. Box 10760                     $_____._  Cost of Mileage
Prescott, AZ 86304-0760            $_____._  Other_____
928.778.2951                       $_____._  Affidavit Prep/Notary
                                   $  112 .00  Palmer's Shipping
                                   $  192 .00  Total Cost
```

NO. "23"

Michael K. Jeanes, Clerk of Court
*** Electronically Filed ***
Angelica Mejia
Filing ID 619748
6/17/2010 5:52:47 PM

1  KEVIN M. JUDISCAK, SBA #012764
2  SCOTT W. HULBERT, SBA #021830
   **ENGELMAN BERGER, P.C.**
   3636 NORTH CENTRAL AVENUE, SUITE 700
3  PHOENIX, ARIZONA 85012

   ─────────────
4  Ph: (602) 271-9090
   Fax: (602) 222-4999
   Email: kmj@engelmanberger.com
5  swh@engelmanberger.com
   ─────────────

6  Attorneys for Plaintiff Hillcrest Bank

7           **SUPERIOR COURT OF MARICOPA COUNTY**

8                  **STATE OF ARIZONA**

9  PAUL VAN WEELDEN AND KAREN            Case No. CV2010-000896
   VAN WEELDEN, husband and wife;
10 PAUL VAN WEELDEN, as Trustee for      **MOTION TO DISMISS**
   THE VAN WEELDEN FAMILY               **PURSUANT TO RULE 12(b)(6),**
11 TRUST,                               ***ARIZ. R. CIV. P.***

12              Plaintiff,
                                        (Honorable Eileen S. Willett)
13 vs.

14 HILLCREST BANK, a Kansas             ***Request for oral argument***
   corporation,
15
                Defendant.
16

17      Plaintiffs' Complaint for Injunctive Relief fails to state a claim upon which the Court

18 can grant relief because it asserts only a request for injunctive relief without pleading any

19 underlying cause of action against Hillcrest Bank.  **"Injunctive relief is a *remedy* and not, in**

20 **itself, a *cause of action*, and a cause of action must exist before injunctive relief may be**

21 **granted."**  *Camp v. Board of Supervisors*, 123 Cal.App.3d 334, 355-356 (1981) (emphasis

22 added); *see Klay v. United Health Group, Inc.*, 376 F.3d 1092, 1097 (11th Cir. 2004) ("**There**

23 **is no such thing as a suit for a traditional injunction in the abstract**.  For a traditional

24 injunction to be even theoretically available, a plaintiff must be able to articulate a basis for

25 relief that would withstand scrutiny under Fed.R.Civ.P. 12(b)(6) (failure to state a claim).").

26      Thus, because Plaintiffs have failed to plead any cause of action in their Complaint, the

27 Complaint must be dismissed pursuant to Rule 12(b)(6), *Ariz. R. Civ. P.  See Klay*, 376 F.3d

{02329.003/00151045.DOC}

1   at 1098 ("The district court did not err in denying the plaintiff's motion for a preliminary

2   injunction and dismissing the injunctive count of the plaintiff's complaint because the

3   plaintiff has failed to state a claim for relief . . .").

4        This Motion is supported by the following Memorandum of Points and Authorities,

5   which is incorporated by reference.

6   **MEMORANDUM OF POINTS AND AUTHORITIES**

7   **I.   INTRODUCTION.**

8        Plaintiff's Complaint for Injunctive Relief is legally deficient because it fails to plead

9   any causes of action against Hillcrest Bank upon which relief can be granted.  Rather, the

10   Complaint includes only a request for injunctive relief.  However, a request for injunctive

11   relief is not a *cause of action*.  Injunctive relief is only a *remedy*.

12        Furthermore, this Court already allowed Plaintiffs four months to seek leave to file an

13   amended Complaint, pursuant to the parties' *Joint Pretrial Memorandum*.  Nonetheless,

14   Plaintiffs chose to stand on their present Complaint and not to seek leave to amend.

15        Finally, although not legally pertinent to this Motion to Dismiss, the Bank points out

16   that the "fears" previously expressed by Plaintiffs have not materialized.  For example, the

17   Bank's Trustee's Sale does *not* (and never did) include the Lot 40 previously purchased by

18   Van Welden Family Trust.  Further, the Bank's Trustee's Sale does *not* (and never did)

19   include any common areas in the Lot 40 subdivision.  And, in any event, Plaintiffs' Complaint

20   for only injunctive relief without any causes of action is legally deficient under Rule 12(b)(6),

21   and must be dismissed for failure to state a claim upon which relief can be granted.

22   **II.   PLAINTIFFS' COMPLAINT FOR INJUNCTIVE RELIEF FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED.**

23        Plaintiffs' Complaint for Injunctive Relief fails to state any claim upon which relief

24   can be granted because it includes only a request for injunctive relief and does not plead any

25   cause of action against Hillcrest Bank.  Specifically, the Complaint does not include any

26   "Counts," "Claims," or "Causes of Action."  It does not include any claims of tort or for

27   breach of contract.  Rather, it includes only a request for injunctive relief.

ENGELMAN BERGER, P.C.
3636 North Central Avenue, Suite 700
Phoenix, Arizona 85012

{02329.003/00151045.DOC}

2

ENGELMAN BERGER, P.C.
3636 North Central Avenue, Suite 700
Phoenix, Arizona 85012

1      The first sentence of the Complaint states that Plaintiffs "hereby request the Court,

2    pursuant to the provisions of Rule 65, Arizona Rules of Civil Procedure or a preliminary

3    injunction" enjoining Hillcrest Bank from conducting its trustee's sale. *Complaint*, p. 1, ll.

4    17-19.   To this end, the Complaint includes only (1) a statement of "Jurisdiction," (2)

5    "General Allegations," (3) a section entitled "Injunctive Relief," and (4) a prayer for

6    injunctive relief.  Likewise, Plaintiffs' Notice of Pendency of Action confirms,

7           The object of this action is:  Injunctive Relief.

8           The relief demanded in this action is:  Restrain the conduct of the trustee's sale
             (Temporary Restraining Order/Preliminary Injunction).

9

10   *Notice*, p. 1, ll. 22-24.  However, injunctive relief is only a remedy; it is not, in itself, a cause

11   of action.   An underlying cause of action must exist which can withstand Rule 12(b)(6)

12   scrutiny. *Camp*, 123 Cal.App.3d at 355-356; *Klay*, 376 F.3d 1097.

13      **The courts have consistently acknowledged and instructed that (1) injunctive**

14   **relief is only a remedy, not a cause of action; and (2) an underlying cause of action must**

15   **exist:**

-  "Injunctive relief is a remedy and not, in itself, a cause of action, and a
cause of action must exist before injunctive relief may be granted." *Camp*,
123 Cal.App.3d at 355-356 quoting *Shell Oil Co. v. Richter*, 52 Cal.App. 2d
164, 168, 125 P.2d 930 (1942).

-  "An injunction is an equitable remedy, not a cause of action. [Citations] To
obtain an injunction, a party must prove a probable right of recovery
through a claim or cause of action. [Citations]. *If a claim or cause of action
is not alleged*, the trial court lacks authority to issue an injunction.
[Citation]; *Nowak v. Los Patios Investors, Ltd.*, 898 S.W.2d 9, 10-11 (Tex.
App.-San Antonio 1995, no writ) (illustrating that injunctions must be
related to causes of action)." *Brittingham v. Ayala*, 995 S.W.2d 199, 201
(Tex. App. 1999) (emphasis added).

-  "A permanent injunction is merely a remedy for a proven cause of action.
It may not be issued if the underlying cause of action is not established."
*Art Movers, Inc. v. Ni West, Inc.*, 3 Cal. App. 4th 640, 646-648 (1992).

-  "A preliminary injunction is an interim remedy designed to maintain the
status quo pending a decision on the merits. [Citation.] It is not, in itself, a
cause of action.  Thus, a cause of action must exist before injunctive relief
may be granted.  [Citation.]  *Accordingly, where the complaint fails to state*

*a cause of action an order granting a preliminary injunction must be reversed* [Citation.]." *Korean American Legal Advocacy Foundation v. City of Los Angeles,* 23 Cal.App.4[th] 376, 398-99 (1994) (emphasis in original) quoting *Major v. Miraverde Homeowners Assn.,* 7 Cal.App 4th 618, 9 Cal.Rptr.2d 237.

- "To qualify for a permanent injunction, the plaintiff must prove (1) the elements of a cause of action involving the wrongful act sought to be enjoined (here, declaratory relief); and (2) the grounds for equitable relief." *San Diego Unified Port Dist. v. Gallagher,* 62 Cal.App. 4th 501, 503 (1998) quoting *City of Pasadena v. Dept. of Trans.,* 29 Cal. App. 4th 1280, 1293, 35 Cal. Rptr. 2d 113 (1994).

- "A cause of action must exist before injunctive relief can be granted." *Watson v. Santa Carmelita, Co.,* 58 Cal.App. 2d 709, 719 (1943).

Indeed, the traditional factors that must be established to obtain injunctive relief likewise presuppose the existence of an underlying cause of action upon which the equitable remedy will be based. Specifically, one of the four factors a plaintiff must establish is "[a] strong likelihood that he will succeed at trial on the merits." *Shoen v. Shoen,* 167 Ariz. 58, 63, 804 P.2d 787, 792 (Ariz. App. 1990). Without a cause of action, there are no "merits" to be determined at trial. Furthermore, the 11th Circuit Court of Appeals has explained:

As the first factor makes clear, any motion or suit for a traditional injunction *must be predicated upon a cause of action*, such as nuisance, trespass, the First Amendment, etc., regarding which a plaintiff must show a likelihood or actuality of success on the merits. *There is no such thing as a suit for a traditional injunction in the abstract*. For a traditional injunction to be even theoretically available, a plaintiff must be able to articulate a basis for relief *that would withstand scrutiny under Fed. R. Civ. P. 12(b)(6)*.

*Klay,* 376 F.3d at 1097 (emphasis added).

Here, as explained above, Plaintiffs have not pleaded any cause of action against Hillcrest Bank. Rather, Plaintiffs' Complaint includes only a request for injunctive relief. However, injunctive relief is only a remedy, not an independent cause of action. Thus, Plaintiffs' Complaint fails to allege any causes of action upon which relief can be granted, and must be dismissed pursuant to Rule 12(b)(6). *Jahnke v. Palomar Financial Corp.,* 22 Ariz.App. 369, 372-373, 527 P.2d 771, 774 – 775 (Ariz. App. 1974).

ENGELMAN BERGER, P.C.
3636 North Central Avenue, Suite 700
Phoenix, Arizona 85012

{02329.003/00151045.DOC}

4

ENGELMAN BERGER, P.C.
3636 North Central Avenue, Suite 700
Phoenix, Arizona 85012

## III.    PLAINTIFFS INTENTIONALLY CHOSE NOT TO AMEND THEIR COMPLAINT.

Plaintiffs filed their initial Complaint over six months ago, on January 8, 2010. By Minute Entry dated February 5, 2010, this Court ordered the parties to submit a Joint Pretrial Memorandum, including a date by which any motions to amend pleadings would be filed. By Scheduling Order dated March 12, 2010, this Court ordered that any motions to amend pleadings shall be filed by May 17, 2010. That Scheduling Order provided Plaintiffs over four months to seek leave to amend their Complaint. However, Plaintiffs did not seek any such leave to amend their Complaint by the agreed May 17, 2010 deadline. Consequently, an untimely motion for leave to amend would violate the joint Scheduling Order, and further delay would not be warranted.

## IV.    PLAINTIFFS' "FEARS" HAVE NOT MATERIALIZED.

As a matter of law, because Plaintiffs have not plead any causes of action upon which relief can be granted, Plaintiffs' Complaint must be dismissed pursuant to Rule 12(b)(6). No further analysis is necessary or appropriate. Nonetheless, Hillcrest Bank also points out that the fears previously expressed by the Plaintiffs (and stated in the Court's expired TRO) have not materialized. Specifically, (1) Hillcrest Bank's Trustee's Sale does _not_ include (and has never included) either the Van Weelden Family Trust's Lot 40 or any common areas in the Lot 40 subdivision; and (2) the satellite administrative proceedings identified by Plaintiffs have concluded without any effect on the Bank's right to proceed with the Trustee's Sale:

- Hillcrest Bank's noticed Trustee's Sale does not (and never did) include the Family Trust's Lot 40. _See_ Notice of Trustee's Sale.

- Hillcrest Bank's noticed Trustee's Sale does not (and never did) include any common areas within the Lot 40 subdivision. _See_ Notice of Trustee's Sale.[1]

- As a matter of law, Arizona's subdivision public report laws do not apply to Hillcrest Bank's noticed Trustee's Sale. The statutes apply only to the sale of "individual" lots by "subdividers." _See_ A.R.S. § 32-2183(I) ("A subdivider shall not sell or lease or offer for sale or lease in this state any

---

[1] Plaintiffs likely are confusing Hillcrest Bank's Trustee's Sale with the trustee sale noticed by Blucor of certain common area property within the Lot 40 subdivision.

lots, parcels or fractional interests in a subdivision without first obtaining a public report . . ."). Furthermore, the statutes also expressly exempt a bulk sale of lots to one buyer. *See* A.R.S. § 32-2181.02 ("<u>The following are exempt under this article: 1. The sale or lease in bulk of six or more lots, parcels or fractional interests to one buyer in one transaction</u>.").

• Hillcrest Bank is not now and never has been a party to the Maricopa County Superior Court Case CV2007-022139, between Plaintiffs and the defunct developer and its bankrupt owner, in which judgment has been entered.

• The FDIC has not taken any action against Hillcrest Bank with regard to the Bank's entitlement to foreclose on its superior, perfected security interest in the Quintero property pursuant to its Notice of Trustee's Sale.

• Plaintiffs expressly acknowledged in their Complaint, ¶ 25, that the Kansas State Bank Commission "does not have jurisdiction over trustee's sales in Arizona and cannot prevent the Trustee's Sale scheduled for January 13, 2010 from going forward." Furthermore, the Kansas State Bank Commission has since issued a "No Further Action" letter to the Plaintiffs confirming that it lacked jurisdiction.

Thus, the fears identified by Plaintiffs at the outset of this lawsuit, and for which Plaintiffs sought injunctive relief, have not materialized. Furthermore, even if such fears had materialized – which they did not – as a matter of law injunctive relief could not have been granted because Plaintiffs failed to plead any underlying cause of action against Hillcrest Bank.

## V.   CONCLUSION AND RELIEF REQUESTED.

Plaintiffs' Complaint for Injunctive Relief fails to state a claim upon which relief can be granted because it asserts only a request for injunctive relief without pleading any underlying cause of action against Hillcrest Bank. As a matter of law, injunctive relief is only a remedy, and is not a cause of action. *See Camp,* 123 Cal.App.3d at 355-356. There is no such thing as a suit for injunction in the abstract. *See Klay,* 376 F.3d at 1097. If a claim or cause of action is not alleged, the trial court lacks authority to issue an injunction. *See Brittingham,* 995 S.W.2d at 201. A plaintiff must plead a cause of action that withstands scrutiny under Rule 12(b)(6). *See Klay,* 376 F.3d at 1097-98.

ENGELMAN BERGER, P.C.
3636 North Central Avenue, Suite 700
Phoenix, Arizona 85012

1    Thus, because Plaintiffs have failed to plead any cause of action in their Complaint, the

2    Complaint fails to state a claim upon which relief can be granted and must be dismissed

3    pursuant to Rule 12(b)(6), *Ariz. R. Civ. P. Jahnke*, 22 Ariz.App. at 372-373, 527 P.2d at 774–

4    75.

     DATED this 17th day of June, 2010.

6

7                                    **ENGELMAN BERGER, P.C.**

8

     By   */s/ Kevin M. Judiscak, SBA #012764*
9           Kevin M. Judiscak
            Scott W. Hulbert
10          3636 North Central Avenue, Suite 700
            Phoenix, Arizona 85012
11          Attorneys for Hillcrest Bank

12   Copy of the foregoing
     mailed this 17th day
13   of June, 2010 to:

14   J. Jeffrey Coughlin
     J. Jeffrey Coughlin PLLC
15   114 S. Pleasant Street
     Prescott, AZ  86303
16   Attorneys for Plaintiffs

17
        */s/ Linda Saperstein*
18

19

20

21

22

23

24

25

26

27

ENGELMAN BERGER, P.C.
3636 North Central Avenue, Suite 700
Phoenix, Arizona 85012

{02329.003/00151045.DOC}

# NO. "24"

Michael K. Jeanes, Clerk of Court
*** Electronically Filed ***
Constance White
Filing ID 629042
6/30/2010 2:49:20 PM

J. Jeffrey Coughlin (013801)
**J. JEFFREY COUGHLIN PLLC**
114 S. Pleasant Street
Prescott, Arizona 86303
Telephone: (928) 445-7137
Facsimile: (866) 890-8989
j.coughlin@azbar.org
Attorneys for Plaintiffs

## IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

## IN AND FOR THE COUNTY OF MARICOPA

| | |
|---|---|
| PAUL VAN WEELDEN AND KAREN VAN WEELDEN, husband and wife; Paul Van Weelden, as Trustee for THE VAN WEELDEN FAMILY TRUST. | CASE NO. CV 2010 000896 |
| Plaintiffs, | **MOTION TO AMEND VERIFIED COMPLAINT** |
| vs. | **(Oral Argument Requested)** |
| HILLCREST BANK, a Kansas banking corporation, | |
| Defendants. | |

Plaintiffs, by and through undersigned counsel, hereby move for leave to amend their

First Amended Complaint pursuant to Rule 15(a), Arizona Rules of Civil Procedure

("A.R.C.P.") for the purpose submitting additional counts against the Defendant.  The

proposed First Amended Complaint is attached hereto as <u>Exhibit A</u> and incorporated herein by

this reference.

### I.   FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs initially brought this complaint to stop Defendant from selling property

against which Plaintiffs had secured a judgment lien.  Plaintiffs requested that the court enter a

temporary restraining order and a preliminary injunction enjoining Defendant, its officers,

agents, servants, employees and attorneys and all persons in active concert or participation with

1  them from proceeding with any trustee's sales concerning the property identified in

2  Defendant's Notice of Trustee's Sale.

3      This court enjoined Defendant from conducting the sale as requested in the Complaint,

4  directed counsel to confer and submit a proposed scheduling order and then issued a scheduling

5  order to govern the activity in the case until trial of the matter in December 2010.  Although

6  Plaintiffs have requested the opportunity to take various depositions of individuals employed

7  by Defendant and who made key decisions concerning Defendant's relationship with the owner

8
9  and developer of the properties which were the subject of the trustee's sale, Defendant refuses

10  to cooperate.

11      Plaintiffs have been gathering as much information as is possible about the relationship

12  between Defendant and the owner/developer and are now alleging additional counts which

13  include Intentional Interference with Contract, Aiding and Abetting Negligence, Aiding and

14  Abetting Fraudulent Misrepresentation and Civil Conspiracy.  Plaintiffs have alleged the

15  necessary elements of the above causes of action and are prepared to proceed.

16  **II.   ARGUMENT**

17      Plaintiffs seek to amend their Complaint to revise the pending allegations and add new

18
19  allegations. Rule 15(a), A.R.C.P., provides that "[l]eave to amend shall be freely given when

    justice requires."  Additionally, "the courts generally have been quite liberal about granting
20
21  leave to replead when the amendment was not interposed for reasons of delay or would not

22  result in prejudice." *Romo v. Reyes*, 26 Ariz. App. 374, 375, 548 P.2d 1186, 1187 (1976)

23  (quoting 5 Wright & Miller, Federal Practice and Procedure § 1394 at 871).

24      Plaintiffs are not attempting to delay the proceedings in any respect. Defendant has

25  attempted to thwart Plaintiffs' requested discovery. Defendant did not cooperate with the

submission of a proposed joint scheduling order as directed by this Court, forcing Plaintiffs to submit one unilaterally.  Plaintiffs are asserting allegations in the proposed First Amended Complaint which link Defendant with some very serious malfeasance of the owner and developer of the properties which were the subject of the Notice of Trustee's Sale scheduled to occur on January 13, 2010.

This Court enjoined Defendant from conducting that sale pending a hearing on the merits.  However, additional facts have arisen that require the revision of pending allegations and addition of new allegations. Justice requires that Plaintiffs have the opportunity to allege and prove the claims set forth in the proposed First Amended Complaint.

III.    **CONCLUSION**

Motions to amend pleadings are liberally granted in Arizona.  Plaintiffs are not interposing the amendment for reasons of delay.  The First Amended Complaint will not prejudice Defendants.  Plaintiffs respectfully request the Court grant leave to amend their Complaint as set forth in Exhibit A.


RESPECTFULLY SUBMITTED this 30th day of June, 2010.


**J. JEFFREY COUGHLIN PLLC**


By:    /s/ J. Jeffrey Coughlin
            J. Jeffrey Coughlin


///

///


-3-

1   ORIGINAL e-filed
    this 30th day of June, 2010 with:
2

3   Clerk of Court
    Maricopa County Superior Court
    201 West Jefferson – 7D
4   Phoenix, Arizona 85003

5   COPY of the foregoing
    mailed same date to:
6

7   Kevin M. Judiscak
    Scott Hulbert
8   Engelman Berger, P.C.
    3636 North Central Avenue, Ste. 700
9   Phoenix, AZ 85012
    Attorneys for Defendant Hillcrest Bank
10

11  By:    Christi Padilla

12

13

14

15

16

17

18

19

20

21

22

23

24

25

-4-

J. Jeffrey Coughlin (013801)
**J. JEFFREY COUGHLIN PLLC**
114 S. Pleasant Street
Prescott, Arizona 86303
Telephone: (928) 445-7137
Facsimile: (866) 890-8989
j.coughlin@azbar.org
Attorneys for Plaintiffs

## IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

## IN AND FOR THE COUNTY OF MARICOPA

| | |
|---|---|
| PAUL VAN WEELDEN AND KAREN VAN WEELDEN, husband and wife; Paul Van Weelden, as Trustee for THE VAN WEELDEN FAMILY TRUST.<br><br>　　　　　Plaintiffs,<br><br>vs.<br><br>HILLCREST BANK, a Kansas banking corporation,<br>　　　　　Defendant. | CASE NO. CV2010-000896<br><br>**FIRST AMENDED COMPLAINT**<br>(Injunctive Relief, <u>Intentional Interference with Contract, Aiding and Abetting Negligence, Aiding and Abetting Fraudulent Misrepresentation, Civil Conspiracy</u> |

　　　　Plaintiffs Paul Van Weelden and Karen Van Weelden, husband and wife, Paul Van Weelden, as Trustee of the Van Weelden Family Trust (the "Van Weeldens"), hereby request the Court, pursuant to the provisions of Rule 65, Arizona Rules of Civil Procedure for a preliminary injunction enjoining Defendant, Hillcrest Bank, its officers, agents, servants, employees, and attorneys, the trustee Wade M. Bergeson, and any and all persons in active concert or participation with them from proceeding with any trustee's sales concerning the property identified in Defendant's Notice of Trustee's Sale.  That sale i̶s̶ was originally scheduled to occur on January 13, 2010 at 10:00 a.m. at the offices of Engelman Berger, P.C., 3636 N. Central Avenue, Suite 700, Phoenix, Arizona  85012.

The grounds in support of this Amended Complaint are that Plaintiffs will suffer immediate and irreparable injury, loss, and damages unless the action of Defendant is enjoined and restrained by this Court; Plaintiffs have no adequate remedy at law.  In the alternative, Plaintiffs assert counts of Defendant's Intentional Interference with contract, Aiding and Abetting Negligence, Aiding and Abetting Fraudulent Misrepresentation and Civil Conspiracy. This Amended Complaint is based upon the following:

## JURISDICTION

1.      Van Weeldens, own property within Maricopa County, Arizona.

2.      Hillcrest Bank is a Kansas banking corporation conducting business within Maricopa County, Arizona.

3.      The real property at issue in this Complaint is located in Maricopa County, Arizona and is owned by Quintero Golf and Country Club (Quintero).

4.      The Court has subject matter jurisdiction over the dispute and personal jurisdiction over Defendant.  Venue is proper pursuant to Arizona Revised Statutes ("A.R.S.") § 12-401(12).

## GENERAL ALLEGATIONS

5.      Plaintiffs re-allege paragraphs 1-4 as if fully set forth herein.

6.      Prior to December 31, 2003, the Trust Plaintiff loaned Defendant Quintero Two Hundred Thousand Dollars ($200,000.00).

7.      Based upon this loan, Quintero issued the Trust Plaintiff two Revenue Producing Membership Collateral Certificates and Agreements (the "RPMs"), each representing One Hundred Thousand Dollars ($100,000.00), numbered 00052 and 00053 respectively, dated December 31, 2003, with repayment pledged by McClung.

7.    ~~In conjunction with the development of the Quintero Property, Quintero entered into a loan agreement with Hillcrest in the amount of Thirty-One Million One Hundred Thirty-Four Thousand and no/100 Dollars ($31,134,000.00) (the "Loan").~~

8. ~~6.~~    On May 24, 2004, the State of Arizona Department of Real Estate issued a Subdivision Public Report for Founders Estates Three, Quintero Golf & Country Club, Phase I, registration number DM04-048130.  The subdivider identified in the Public Report is Quintero Golf and Country Club, LLC, an Arizona limited liability company.

9.    On June 30, 2004, the Van Weelden Plaintiffs issued a check for One Hundred Fifty Thousand Dollars ($150,000.00) to Quintero to become Master Charter members (the "Membership").  The Van Weelden Plaintiffs understood that these funds would be used to finance Phase II of the Quintero development.

10.    McClung told the Van Weelden Plaintiffs that if they retained the Membership for three years, it would yield a return of 16%-18%.

11.    In June 2004, McClung personally, and as a representative of Quintero Golf & Country Club, began negotiating with Hillcrest Bank of Kansas City (Hillcrest) to procure a loan to complete the in-progress and contemplated improvements of the Quintero Community in Arizona.

12.    Hillcrest indicated that it needed to add other banks or lenders to share the financing burden in order to achieve the development goals of the Quintero Community, including construction of a clubhouse.

13.    Hillcrest assured McClung that it was able to obtain other participant banks. Based upon this assurance, McClung began the loan documentation process of Hillcrest. Hillcrest did not obtain any such participant banks to share in the financing burden.

14.    Hillcrest requested a budget proposal from McClung for the purpose of establishing whether it would be prudent to fund the Quintero development.

15.     McClung submitted a proposal on September 21, 2004 totaling Twenty-Nine Million Eight Hundred Seventy-One Thousand Sixty-Three Dollars ($29,871,063.00), which included Twenty-One Million One Hundred Sixty Thousand Sixty Dollars ($21,160,060.00) in hard costs and Four Million Eight Hundred Fourteen Thousand Seven Hundred Seventy-Eight Dollars ($4,814,778.00) in soft costs.

16.     Hillcrest rejected the proposal and demanded that all the soft costs be eliminated from the proposal.  The soft costs included engineering consultants, survey consultants, construction administration, construction management, planning and construction documents, Phase 2 planning and engineering and marketing for the entire project.

17.     Hillcrest demanded and McClung agreed that all amounts which were not funded according to a final budget proposal in the form of a line of credit, would be privately funded by McClung.

18.     McClung submitted a second proposal in January 2005, which itemized hard costs totaling Twenty Million Five Hundred Eighty Thousand Five Hundred One Dollars ($20,580,501.00) and, despite Hillcrest's directive to the contrary, soft costs of One Million Seven Hundred Ninety- Nine Thousand Seven Hundred Fifty-One Dollars ($1,799,751.00).

19.     Hillcrest rejected the second proposal and again demanded the elimination of the soft costs from the budget.

20.     McClung submitted a third budget proposal which itemized hard costs totaling Nineteen Million Sixty- One Thousand Three Hundred Thirty-One Dollars ($19,061,331.00) and no soft costs.  At Hillcrest's request, McClung reduced the 15% contingency to 10%.  The grand total of the third budget proposal was Twenty Million Nine Hundred Sixty-Seven Thousand Four Hundred Sixty-Four Dollars ($20,967,464.00).

21.     Hillcrest again rejected the proposal and McClung submitted a fourth one in February 2005.  This one itemized Seventeen Million Six Hundred Fifty- Two Thousand Six Dollars ($17,652,006.00) in hard costs with a 10% contingency of One Million Seven Hundred Sixty-Five Thousand Two Hundred One Dollars ($1,765,201.00) for a total of Nineteen Million Four Hundred Seventeen Thousand Two Hundred Six Dollars ($19,417,206,00).  This did not end the process.

22.     McClung originally approached Hillcrest for the Quintero funding because the institutions he had previously secured funding from were in financial distress.  McClung first went to Kennedy Financial and refinanced the Kennedy loan with Old Standard Life Insurance Company (Old Standard).

23.     When Old Standard publicly announced that it was unable to service its debt, McClung, even though he had a long standing relationship with Hillcrest,  approached Washington United Life Assurance Company (WULA) and secured more than Fifteen Million Dollars ($15,000,000.00) for the continuation of the Quintero development.

24.     McClung began soliciting investors and when he received funds from them, would pay off previous investors.

25.     On March 2, 2004, courts in Arizona, Washington and Idaho issued rehabilitation orders for three banks:  Old West Annuity and Life Insurance Company (domicile state – Arizona), Old Standard (domicile state – Idaho) and WULA (domicile state – Washington).  These three companies were affiliates of the so-called Metropolitan Mortgage Group of companies which were in bankruptcy proceeding in Washington.

26.     Hillcrest knew about WULA's financial instability and the dealings McClung had with the predecessor companies.  Hillcrest knew and was concerned about the Washington State Insurance Commission investigation of the various companies.

27.     On December 2, 2004 a WULA representative met with McClung and his son Steve McClung at Quintero. The representative took pictures of the water treatment plant under construction and told Steve McClung that WULA was very interested in financing Phase 2 of Quintero, but was concerned that lots were not being sold.

28.     Hillcrest did not conduct its due diligence to determine if the proposed development and sale of lots could support the anticipated debt service.

29.     Hillcrest did not request any documentation from McClung which accompanied his application to Old Standard or WULA.

30.     Hillcrest did not request any information from McClung to explain WULA's continued lateness in meeting loan draw payment dates.

31.     Hillcrest did not request information from McClung, for example, that would have shown that McClung had been soliciting and receiving investors' money, repaying previous investors, failing to make loan payments and as a result, experiencing delayed loan draw payments from WULA.

32.     When Hillcrest became aware of WULA and its financial difficulties, rather than obtaining participant banks to share in the financing as it had represented to McClung, it decided to increase the previously slashed budget proposals submitted by McClung so that the line of credit was sufficient to cover the financial assurances necessary to satisfy the Arizona Department of Real Estate (ADRE) and pay off the WULA loan.

33.     On March 8, 2005, Hillcrest finalized a line of credit to Quintero for Thirty-One Million One Hundred Thirty-Four Thousand Dollars ($31,134,000.00). This amount was calculated to pay off the WULA outstanding balance of Ten Million Six Hundred Eighty-Four Thousand Eight Hundred Twenty-Eight and 02/100 Dollars ($10,684,828.02), fees to First American Title Company (FATCO) of Sixty-One Thousand Five Hundred Twenty-Three and 59/100 Dollars ($61,523.59), fees to Hillcrest for approximately Three Hundred Sixty Thousand

Dollars ($360,000.00), legal fees of approximately Fifty Thousand Dollars ($50,000.00) and the pay off of other Quintero, McClung and Hillcrest loans.

34.    The Line of Credit included paying off McClung's personal loan obligations, ADRE financial assurances of Sixteen Million One Hundred Eight Thousand Six Hundred Forty Dollars ($16,108,640.00) and an advance made on the loan to McClung for One Hundred Three Thousand One Hundred Sixty-Eight Dollars ($103,168.00).

35.    Pursuant to the requirements of ADRE, the real estate development of the Quintero properties required guaranteed funding through an irrevocable Letter of Credit in favor of Quintero. Several Letters of Credit were issued and later amended or modified.

36.    When the public reports were finalized, the lot and property closings with their sales proceeds were executed and finalized.

37.    Pursuant to the transaction requirements, a portion of all Quintero lot sales would be paid to Hillcrest to service the loan. A smaller portion was to be used by Quintero pursuant to the guaranteed Line of Credit established by the loan with Hillcrest.

38.    A budget was established that allocated Twenty One Million Six Hundred Fifty-One Thousand One Hundred Eighteen Dollars ($21,651,118.00) to infrastructure improvements.

39.    Only Sixteen Million Dollars ($16,000,000.00) was guaranteed by Hillcrest.

40.    Later, the guaranteed amount was reduced to Fourteen Million Two Hundred Fifty-Five Thousand One Hundred Eighty-Four Dollars ($14,255,184.00).

41.    A worksheet was maintained by Quintero that tracked the accounting of the balance of the loan. This worksheet was provided to Hillcrest indicating that Twenty-Nine Million Dollars ($29,000,000.00) was needed to complete the development of the Quintero properties. This amount did not include the costs associated with building the Quintero Clubhouse.

42.    The Sixteen Million One Hundred Eight Thousand Six Hundred Forty Dollars ($16,108,640.00) designated for the ADRE assurances was in the form of a guaranteed irrevocable Letter of Credit in which the Quintero Community Association Inc. (QCA) was named as the beneficiary. The designation of QCA was a requirement of ADRE governing the sale and development of property. FATCO was to be the escrow agent and issuer of endorsement pursuant to an amended escrow agreement.

43. 8.    To secure Quintero's obligation under the Loan, Quintero and Hillcrest executed a Construction Deed of Trust, Security Agreement, Assignment of Rents and Leases and Fixture Filing dated March 8, 2005 and recorded it on April 25, 2005 at Recording No. 20050533163, official records of Maricopa County (the "Construction Deed of Trust") which was recorded against the Quintero Property.

44.    In the Spring of 2005 through the Summer of 2006, construction on capital improvements to Quintero properties began. Draws on the Letters of Credit were made and once draws on the line of credit depleted the amount available, any further draws were conditioned by Hillcrest to lot sales of Quintero properties.

45.    All draws from the Letters of Credit were required to be submitted to a company in Las Vegas, Nevada named Project Disbursement Group (PDG) by Quintero.

46.    PDG was a third-party retained by Hillcrest for the purpose of conducting independent construction inspections to verify to Hillcrest that each phase of construction be completed satisfactorily before funds would be disbursed by Hillcrest for payment to the appropriate contractors.

47.    An inspector was then required to verify what percentage of the improvements had been completed, verify construction invoices and waivers from the draw. Once completed the inspector would report to Hillcrest as to whether there were any issues to resolve.

48.    Hillcrest reviewed the documentation and subsequently released monies according to the Letters of Credit.

49.    When those monies were released, a portion of the money was wired to FATCO as part of the process required by ADRE.

50.    FATCO would subsequently wire these monies to PDG. The other monies released on the construction draw were wired directly to PDG.  Upon receipt of all the monies being released pursuant to the Letters of Credit, PDG would prepare checks which were then sent to Quintero for payment to the vendors and contractors.

51.    FATCO would then send a Title Endorsement to Hillcrest who then amended the Letters of Credit balance reflecting the draw down and remaining amount of guaranteed funds.

52.    Because of the process involved or lack of funding, construction companies were not being paid timely.

53. 9.  On August 5, 2005 Paul L. Van Weelden and Karen S. Van Weelden, trustees of the Van Weelden Family Trust, U/D/T, dated March 13, 2001 purchased Lot 40 of Founders Estates Three, Quintero Golf & Country Club, Phase I.

54. 10. On page 12 of the Subdivision Public Report, under the category of Streets, Roads and Drainage, it states that:

"**Access to the subdivision:** Subdivider will complete the asphalt paved public streets with concrete curbs to the minimum standards of the City of Peoria by December 26, 2005 which will then be accepted by Quintero Community Association, Inc., for maintenance.  Costs to purchasers for maintenance are included in the community association assessments.

**Access within the subdivision:** Subdivider will complete the asphalt paved private streets by February 15, 2006, which will then be accepted by Quintero

Community Association, Inc., for maintenance. Costs to purchasers for

maintenance are included in the community association assessments.

**Flood and drainage:**  Subdivider will complete the extensive grading

improvements within the subdivision, including but not limited to, catch basins

and pipes ("common facilities") by February 15, 2006 . . ."

55. ~~11. Currently, at the entrance to Founders Estates Three, there is a wash crossing.~~

No infrastructure work has been commenced at ~~this location~~ the entrance to Founders Estates

Three.

56. ~~12.~~ The land approaching the Van Weelden parcel does not allow for any reasonable

access because it does not contain any curbing or paving.

57. ~~13.~~ To date, the area leading to the Van Weelden parcel contains no utility

infrastructure.

58. ~~14.~~ On March 8, 2005 Hillcrest ~~Bank, a Kansas banking corporation, whose address~~

~~is 11111 W. 95ᵗʰ Street, Overland Park, Kansas, 66214~~, through its agent Robert Sperry, issued

various irrevocable stand by letters of credit, all of which contain the following special

instructions:

> Beneficiary must certify, under oath, that Quintero Golf & Country Club has
> either abandoned construction and/or installation of the required improvements
> for (for example, Founders Estates Three), as contemplated by the Arizona
> Department of Real Estate Public Subdivision Report, dated May 24, 2004 (the
> "improvements"), or fail to complete construction and/or installation of the
> improvements on or before 15, February, 2006 or such later date as approved by
> the Arizona Department of Real Estate, and as evidenced by an amended public
> subdivision report for Founders Estates Three. Beneficiary must certify, under
> oath, that no exceptions of time for completion of the improvements have been
> granted by the Arizona Department of Real Estate other than those set forth in an
> amended public subdivision report.  (See Irrevocable stand-by Letters of Credit,
> attached hereto as Exhibit 7.)

59. ~~15.~~ As construction proceeded within the Quintero Property, contractors submitted

draw requests which were processed through Quintero's construction manager, FATCO ~~First~~

1   ~~American Title Company~~, Hillcrest and ~~Bank and Project Disbursement Group~~(PDG). ~~a third-~~

2   ~~party retained by Hillcrest Bank for the purpose of conducting independent construction~~

3   ~~inspections to verify to Hillcrest Bank that each phase of construction be completed satisfactorily~~

4   ~~before funds would be disbursed by Hillcrest Bank to the appropriate contractors.~~

5   60. ~~16.~~ Gradually, Hillcrest Bank reduced the funding when applications and

6   certifications for payment were submitted, knowing that the balance necessary to finish the

7   project was Four Million Five Hundred Thirteen Thousand Five Hundred Thirteen Dollars and

8   Fifty Two Cents ($4,513,513.52).

9   61.   Despite knowing that there were millions of Dollars of work to be completed to

10   conclude the project and that some of the work to be completed was infrastructure, Hillcrest

11   loaned additional funds to McClung under the guise that it would be used for the construction of

12   the Quintero Clubhouse.  In fact, the millions of Dollars Hillcrest loaned to McClung, he used to

13   service the Quintero debt to Hillcrest.

14   62.   Hillcrest did this to avoid the Quintero loan appearing in Hillcrest's books (and

15   scrutinized by the FDIC) as a non-performing loan.

16   63.   Hillcrest's conduct as described above constitutes the following unsafe or

17   unsound banking practices:

18   a.   Operating with a board of directors that has failed to provide adequate

19   supervision over and direction to the management of the Bank.

20   b.   Operating with management whose policies and practices are detrimental

21   to the Bank.

22   c.   Operating with an inadequate level of capital protection for the kind and

23   quality of assets held and/or appropriate to the risk inherent in the activities

24   engaged in by the Bank.

25   d.   Engaging in imprudent lending and lax collection practices.

-11-

e. Operating with an excessive level of adversely classifies loans or assets, and/or delinquent loans and/or non-accrual loans.

f. Failing to properly identify risk and assess the level of risk in problem loans.

g. Operating with an inadequate allowance for loans and lease losses for the volume, kind, and quality of loans and leases held, and/or failing to make provision for an adequate allowance for possible loan and lease losses.

h. Operating with inadequate liquidity and an excessive reliance on wholesale funding in light of the bank's assets and liability mix.

i. Operating with inadequate earnings.

64. ~~17.~~ The letter of credit issued regarding Founders Estates Three (the portion of the subdivision containing the Van Weelden property) expired by its terms on May16, 2006.  As of that date and to the present, the improvements have not been completed.  Nevertheless, ~~the developer~~ Quintero sold the property to the Van Weeldens.

65. On December 18 and December 19, 2004, McClung executed two promissory notes on behalf of Quintero and in favor of the Plaintiffs.

66. Each promissory note identified a principal balance of Two Hundred Thousand Dollars ($200,000.00) bearing interest at the rate of two percent (2%) per month.

67. The promissory notes stated that the principal and interest "shall be due and payable on January 31, 2006".

68. Quintero did not remit payment when due on January 31, 2006.

69. On April 13, 2006, Quintero repaid One Hundred Thousand Dollars ($100,000.00) towards one of the promissory notes.

70. On July 18, 2006, McClung, on behalf of himself and Quintero, reaffirmed the obligations due and stated "I have you listed for two loans at $200,000.00 each, having repaid you $100,000.00 on one of those. There will be accumulated interest on those." McClung also affirmed the obligations under the RPMs and stated that each was worth approximately One Hundred Forty Thousand Dollars ($140,000.00) at that time.

71. On January 5, 2007 Paul Van Weelden, and McClung spoke on the telephone concerning the outstanding balance and on January 7, 2007, Paul Van Weelden e-mailed the interest calculations consistent with that discussion.

72. In the January 7, 2007 e-mail, Paul Van Weelden applied an interest rate of twenty percent (20%) to the RPMs and asked McClung to state if this calculation was in error. McClung did not object.

73. On March 13, 2007, McClung e-mailed Paul Van Weelden informing him that they were forwarding his current wiring address to their employee, Trace, "for when the time comes".

74. Quintero and McClung, both personally and on behalf of Quintero, repeatedly promised to re-pay the obligations.

75. The promissory notes both contained a clause which stated "if the indebtedness evidenced by this note is collected by or through an attorney, or if any suit is brought to enforce payment of this note, or if legal counsel is necessary for purposes of interpretation, enforcement prior to suit, or completion of any actions required in connection herewith, the holder shall be entitled to recover reasonable attorneys' fees and costs to the extent permitted by applicable law.

76. McClung has made multiple payments from Quintero to himself amounting to at least four Hundred six Thousand five Hundred ninety one Dollars ($406,591.00).

-13-

77.     The notations regarding these payments in Quintero's transaction report state "repay interest on loan taken from personal account," "pay back short term loan" and "reimbursement for short term loan."

78.     These payments appear to have been made to Quintero from Quintero's Owners Equity account and to McClung from the Quintero checking account.

79.     On information and belief, McClung has utilized Quintero as his alter ego and, as a result, is individually liable for the acts complained of herein.

80.     All representations referenced as made by Quintero were made by McClung and all actions/inactions and omissions alleged to have been taken or not taken by Quintero were done or not done at the direction of McClung.

81.     Sometime in the middle of August 2006, Quintero communicated to Hillcrest that it wanted Wespac Construction to perform an analysis of the amounts remaining in the Letters of Credit. Hillcrest agreed.

82.     The analysis performed indicated the balance was One Million Seven Hundred Sixty- Three Thousand Dollars ($1,763,000.00) for the Rees Jones Blvd. improvement, the improvements related to a water facility, and several other projects.

83.     Quintero had a contractual right to and therefore requested that Hillcrest agree to a completion date. The Founder's Estates Three (FE3) project did have its completion date extended by Hillcrest to September 2007. Because of this extension, the Public Reports submitted to ADRE were required to be submitted again to ADRE.

84.     The attorney for Quintero, Fred Davidson, communicated to McClung his concerns regarding falsehoods being represented to ADRE as to actual completion of improvements.

85.     Davidson stated that the completion dates being communicated to ADRE were being shown as being completed sooner rather than later.

-14-

86.   In September 2006, the project related to the Water/Wastewater Treatment Facility was completed.  Pursuant to an agreement with the City of Peoria, Arizona, the Facility was deeded to the City.  This event allowed the Quintero Community Association to begin establishing its dues and property assessments. There were numerous members of the QCA, including Plaintiffs, who owned properties. QCA employed a management agent and the assessments began in October of 2006.

87.   On October 27, 2006, a draw from the Letter of Credit designated "Draw #HCHD-14" was submitted to Hillcrest for work that was performed by construction companies through the period of July, August, and September of 2006.

88.   By this date, the majority of contractors had discontinued work on the Quintero projects due to being paid untimely or not being paid at all.

89.   At this time there was a One Million One Hundred Seventy-Seven Thousand Four Hundred Forty-Four dollar ($1,177,444) balance remaining in the Letter of Credit.

90.   Quintero represented to Hillcrest that it would perform its obligation of improvements amounting to Three Million Three Hundred Thirty-Six Thousand and Sixty-Nine Dollars ($3,336,069.00).

91.   The Application for Certification and Payment was signed by McClung on November 9, 2006 and submitted to Hillcrest.

92.   Hillcrest only paid five Hundred Thirty-Four Thousand Seven Hundred Twenty-Two and 04/100 Dollars ($534,722.04) to FATCO in November 2006.

93.   Hillcrest refused to release any more funds on this draw. This draw remained outstanding in PDG's books and in Quintero's books.

94.   Presently, there are unpaid construction vendors totaling approximately Five Million Five Hundred Thousand Dollars ($5,500,000.00) and multiple judgments or liens against the Quintero owned properties.

95.    On December 13, 2006, amendments to the Letters of Credit reflecting the payments were issued by Hillcrest to QCA as beneficiary. Amendments to extend the LOCs were received on January 30, 2007. Hillcrest was fully aware of an unpaid draw as well as the nature of the improvements necessary to complete the project.

96.    In March 2007, McClung, acting on behalf of and as Beneficiary, asked for the original Letters of Credit to be sent back to Hillcrest for the projects already completed.

97.    Bob Sperry at Hillcrest said that Hillcrest would "free up" some funds in order to service the loan interest payment.

98.    This transaction did not include the Founder's Estates 2 (FE2), FE3, Founder's Estates 4 (FE4) or the Rees Jones Blvd projects because they were not completed improvements.

99.    Communications between Hillcrest and McClung addressed the issue of a final draw and inspection for FATCO/ADRE but nothing was requested.

100.    No endorsements from FATCO were received.

101.    No amendments or other correspondence was received from Hillcrest.

102.    There was no final inspection requested or completion as was required.

103. ~~18.~~ On March 27, 2007, McClung, on behalf ~~Gary McClung (McClung)~~ of QCA ~~the Quintero Community Association, Inc.~~ and as managing member of Quintero sent a letter to Robert Sperry at Hillcrest Bank requesting that he cancel certain letters of credit. He stated that the improvements had been completed and the letters of credit were no longer required for the Arizona Department of Real Estate. When McClung made this statement, the infrastructure involving the Van Weeldens' property had not been completed.

104. ~~19.~~ On October 12, 2007, assistant vice president Jon P. Forgey of Hillcrest ~~Bank~~ instructed  PDG to terminate the Quintero Property projects, knowing that the infrastructure had not been completed and that multiple properties, including that of the Plaintiffs, would be incapable of being developed or resold.

105.   In November 2007, Teri Benoit (construction administrator for Quintero) described the financial instability of Quintero to McClung.

106.   McClung insisted there were investors interested and that Hillcrest Bank was working with Quintero to keep operating until additional investment funds could be obtained. Once again, McClung implemented his Ponzi scheme techniques – this time with the knowledge and consent of Hillcrest.

107.   In September and October of 2008, Hillcrest sent an independent consultant, Charlie Martin, to Quintero to assess the completion and conditions. Martin determined a "ballpark" figure for completion and then submitted an analysis to Hillcrest. Hillcrest informed Quintero that the updated appraisal being evaluated by the Bank was reduced by the outstanding improvements to be completed. Hillcrest was aware that the projects had not been completed.

108. 20. A.R.S. § 32-2183.E states the Commissioner of the Department of Real Estate may suspend, revoke or deny issuance of a public report on any of the following grounds:

1. Failure to comply with this article or the rules of the commissioner pertaining to this article.
2. The sale or lease would constitute a misrepresentation to or deceit or fraud of the purchasers or lessee.

* * *

4. Inability to demonstrate that adequate financial or other arrangements acceptable to the commissioner have been made for completion of all streets, sewers, electric, gas and water utilities, drainage and flood control facilities, community and recreational facilities and other improvements included in the offering.
5. Failure to make a showing that the lots, parcels or fractional interests can be used for the purpose for which they are offered.
6. The owner, agent, subdivider, officer, director or partner, subdivider trust beneficiary holding ten percent or more direct or indirect beneficial interest or, if a corporation, any stockholder owning ten percent or more of the stock in the corporation has: (e) disregarded or violated this chapter or the rules of the commissioner pertaining to this chapter.

* * *

-17-

10. Failure to demonstrate permanent access to the subdivision lots or parcels.

109.   In June 2009, Hillcrest sent a Notice of Default to Quintero on the loan. Quintero's management and control was subsequently taken from McClung by Ken Nichols & Larry Hilcher, two priority equity investors who obtained a judgment against McClung's interest in Quintero. Quintero's golf course operation was surrendered to Hillcrest in order to protect the property investment.

110. 21.   In July 2009Defendant recorded a Notice of Trustee's sale with a sale date of October 7, 2009.  Defendant has postponed the sale several times since.

111. 22.   On August 24, 2009, Plaintiffs filed a complaint with the Arizona Department of Real Estate alleging violations of A.R.S. §32-2183 and requesting that the public report be suspended.  That complaint is currently under investigation, but will not be completed before the scheduled Trustee's Sale on January 13, 2010.  On March 31, 2010 ADRE issued an order summarily suspending Quintero's Public Report.  ADRE found that Quintero failed to complete roads by the date stated in the Public Reports as required by A.R.S.§32-2181(A)(18) and A.A.C. R4-28-B1203.

112.   ADRE found that the failure of the roads to be completed constituted an immediate threat to the public health, safety, and welfare warranting immediate suspension of the Public Reports.

113.   Hillcrest was aware that the roadways had not been completed and nevertheless decided to halt all funding for all construction.

114.   Hillcrest was aware that the roadways had not been completed and nevertheless loaned additional monies to McClung in order that its own debt service would continue.

-18-

1    115.   The Quintero properties subject to the Hillcrest loan cannot be sold while the

2    Public Report is suspended.

3        116. 23.        On August 26, 2009 Plaintiffs filed a complaint against Defendant with

4    the Office of the Kansas State Bank Commissioner requesting that it investigate Defendant's

5    involvement with Quintero Golf and Country Club's violation of A.R.S. §32-2183.E and F.

6        117. 24.        On October 21, 2009 the Federal Deposit Insurance Corporation and the

7    Office of the Kansas State Bank Commissioner issued a Cease and Desist Order ordering

8    Hillcrest Bank to cease and desist from the following unsafe or unsound banking practices:

9

10       a.     Operating with a board of directors that has failed to provide adequate

11              supervision over and direction to the management of the Bank.

12       b.     Operating with management whose policies and practices are detrimental

13              to the Bank.

14       c.     Operating with an inadequate level of capital protection for the kind and

15              quality of assets held and/or appropriate to the risk inherent in the activities

16              engaged in by the Bank.

17       d.     Engaging in imprudent lending and lax collection practices.

18       e.     Operating with an excessive level of adversely classifies loans or assets,

19              and/or delinquent loans and/or non-accrual loans.

20       f.     Failing to properly identify risk and assess the level of risk in problem

21              loans.

22

23       g.     Operating with an inadequate allowance for loans and lease losses for the

24              volume, kind, and quality of loans and leases held, and/or failing to make

25              provision for an adequate allowance for possible loan and lease losses.

-19-

h.    Operating with inadequate liquidity and an excessive reliance on wholesale funding in light of the bank's assets and liability mix.

i.    Operating with inadequate earnings.

118. 25.    The Kansas State Bank Commissioner does not have jurisdiction over trustee's sales in Arizona and cannot prevent any contemplated Trustee's sales of the Quintero properties. the Trustee's Sale scheduled for January 13, 2010 from going forward.

119. 26.    If the a Trustee's Sale proceeds while the public report is under suspension, on January 13, 2010, the Quintero Property will be sold in violation of the public report.

120. 27.    If the sale proceeds, common area property will be sold and thereby strip the Van Weeldens of property interests they have in the commonly owned property.

## COUNT I

## INJUNCTIVE RELIEF

121. 28.    Plaintiffs re-allege paragraph 1 through 27 120 as if fully set forth herein.

122. 29.    Plaintiffs have requested relief in Maricopa County Cause No. CV2007-022139 against Quintero, the Complaint against Defendant in the Kansas State Bank Commission and the Complaint against Quintero and Hillcrest Bank in the Arizona Department of Real Estate.

30.    None of the above complaints have concluded and therefore, the relief requested cannot be granted before the scheduled January 13, 2010 Trustee's Sale.

123. 31.    At the any Trustee's Sale, the Quintero Property will be conveyed to unknown purchasers.

124. 32.    Plaintiffs will be irreparably harmed if the any trustee's sale or other transfer of the properties is permitted to proceed prior to the resolution of this lawsuit and the Maricopa County Lawsuit, the Kansas Bank Commission Complaint and the Arizona Department of Real Estate Compliant, as these particular pieces of real property will be lost prior to the determination of the parties' rights thereto.

125. 33.    The amount of debt owned to Plaintiffs will be ascertained through the Maricopa County Lawsuit.  Prior to these determinations, it is unknown if Defendant is entitled to foreclosure on the real property at issue.

126. 34.    This request is support by verifications of this Complaint and the Affidavit of undersigned counsel attached hereto as Exhibit A and incorporated herein by this reference.

WHEREFORE, Plaintiffs request that the Court:

A.    Immediately issue a temporary restraining order without notice pursuant to Rule 65(d), Arizona Rules of Civil Procedure, immediately restraining Defendant, Defendant's officers, agents, servants, employees and attorneys, the trustee, Wade M. Bergeson, and any and all persons in active concert or participation with them from conducting the trustee's sale regarding the Quintero Property prior to the conclusion of the litigation of this matter in Maricopa County, the Kansas State Bank Commission and the Arizona Department of Real Estate.

B.    That a hearing be set for the issuance of a preliminary injunction to further enjoin Defendant from the above-described acts.

C.    That, at the conclusion of such hearing, Defendant be restrained from the above-described acts until there can be a trial on the merits of the three above described matters.

D.    For such other and further relief to which Plaintiffs may be entitled and which the Court deems just and appropriate.

## COUNT II

-21-

**Intentional Interference with Contract**

127.   Plaintiffs re-allege paragraph 1 through 126 as if fully set forth herein.

128.   There was a contractual relationship between the Quintero entities and Plaintiffs when Plaintiffs purchased land in Quintero.

129.   Hillcrest was aware of the contractual relationship between the Quintero entities and Plaintiffs when the purchase proceeds from the sale were applied to the Hillcrest loan balance.

130.   Hillcrest knew that McClung had requested the letters of credit be cancelled and knew that there was infrastructure that had not been completed.

131.   With this knowledge, Hillcrest directed PDG to halt the project, thus severing Plaintiff's ability to develop or resell their land.

132.   Plaintiffs have been damaged as a result of Hillcrest's improper actions.


WHEREFORE , Plaintiffs request that this Court:

A.  Order Hillcrest to reimburse Plaintiffs their RPM investments of Two Hundred Thousand Dollars ($200,000.00);

B.  Order Hillcrest to reimburse Plaintiffs their Master Charter Membership investment in the amount of One Hundred Fifty Thousand Dollars ($150,000.00);

C.  Order Hillcrest to reimburse Plaintiffs the amounts of their loans to Quintero in the amount of Four Hundred Thousand Dollars ($400,000.00), (less the One Hundred Thousand Dollars ($100,000.00) repaid to Plaintiffs on April 13, 2006) bearing interest at the contracted amount of 24% per annum from the date of their execution until paid;

D.  For such other and further relief to which Plaintiffs may be entitled and which the Court deems just and appropriate.

**COUNT III**

**Aiding and Abetting McClung's Negligence**

133.   Plaintiffs re-allege paragraph 1 through 132 as if fully set forth herein.

134.   As a promoter and the Manager of Quintero, a limited liability company, McClung, in his individual capacity, owed a fiduciary duty to Plaintiffs as investors in the company.

135.   McClung made multiple misrepresentations to Plaintiffs regarding his and Quintero's ability to repay the Plaintiffs.

136.   By failing to disclose pertinent information to Plaintiffs regarding their investments, McClung breached his fiduciary duty to Plaintiffs.

137.   As a Manager of Quintero, McClung has a duty to manage the corporate affairs of Quintero with the ordinary care a reasonably prudent person would.

138.   On information and belief, McClung, in his management and supervision of Quintero, fell below the standard of care of a reasonably prudent person and, as a result, breached his duty to Plaintiffs.

139.   McClung's breaches resulted in Plaintiffs losing all of their investments in an amount to be determined at trial.

140.   McClung's breaches were an actual and proximate cause of Plaintiffs' damages.

141.   McClung actually made the misrepresentations alleged herein, failed to disclose pertinent information to Plaintiffs and failed to manage Quintero with the ordinary care a reasonable person would, he acted/failed to act for his personal gain and is responsible for the damages suffered by Plaintiffs and, because he has used Quintero as his alter ego, McClung is individually liable for his actions.

-23-

142.    Hillcrest was aware of McClung's tortuous conduct and that it would constitute a breach of his obligations to Plaintiffs.

143.    Hillcrest substantially assisted or encouraged McClung in the achievement of the breach of his obligations by only agreeing to fund the development at a level substantially below the threshold necessary to complete the project.

144.    Hillcrest substantially assisted or encouraged McClung in the achievement of the breach of his obligations because Hillcrest was aware of the financial instability of Old Standard and WULA, failed to conduct appropriate due diligence, insisted on worthless personal guarantees by McClung and his wife without requesting any financial verification of McClung's net worth and knew that McClung was in financial dire straits.

145.    Hillcrest substantially assisted or encouraged McClung in the achievement of the breach of his obligations by insisting on a significant reduction in the funding of the lines of credit and requiring McClung to be responsible for privately funding substantial portions of the development when it knew he was financially incapable of doing so.

146.    Hillcrest substantially assisted or encouraged McClung in the achievement of the breach of his obligations by halting the funding of the Quintero development, knowing that the infrastructure was incomplete in violation of the Public Report and then loaning McClung Millions more for the sole purpose of servicing the debt on an otherwise non-performing loan.

WHEREFORE , Plaintiffs request that this Court:

A.  Order Hillcrest to reimburse Plaintiffs their RPM investments of Two Hundred Thousand Dollars ($200,000.00);

B.  Order Hillcrest to reimburse Plaintiffs their Master Charter Membership investment in the amount of One Hundred fifty Thousand Dollars ($150,000.00);

-24-

C.  Order Hillcrest to reimburse Plaintiffs the amounts of their loans to Quintero in the amount of Four Hundred Thousand Dollars ($400,000.00), (less the One Hundred Thousand Dollars ($100,000.00) repaid to Plaintiffs on April 13, 2006) bearing interest at the contracted amount of 24% per annum from the date of their execution until paid;

D.  For such other and further relief to which Plaintiffs may be entitled and which the Court deems just and appropriate.

## COUNT IV

### Aiding and Abetting McClung's Fraudulent Misrepresentation

147.  Plaintiffs re-allege paragraphs 1 through 146 as if fully set forth herein.

148.  McClung made material false representations to Plaintiffs regarding the repayment of monetary obligations.

149.  McClung knew these representations were false or was ignorant of their truth.

150.  McClung intended for Plaintiffs to act upon these representations in the manner reasonably contemplated by lending or investing money with him and allowing him additional time for repayment.

151.  Plaintiffs were unaware of the falsity of McClung's representations and relied on their truth.

152.  Plaintiffs had a right to rely on McClung's representations as McClung was intimately aware of and controlled both his and Quintero's finances.

153.  McClung's misrepresentations consequently and proximately caused Plaintiffs damages in an amount to be determined at trial.

154.  McClung has employed Quintero for fraudulent purposes by making promises regarding repayment with the present intention not to perform the same.

155.   McClung made the material false representations alleged herein, did so for his personal gain and would be responsible for the damages suffered by Plaintiffs and, because he has used Quintero as his alter ego, McClung would be individually liable for his actions.

156.   Hillcrest knew of McClung's tortious and fraudulent conduct and knew that it constituted a breach of his obligations to Plaintiffs.

157.   Hillcrest substantially assisted or encouraged McClung in the achievement of his fraudulent misrepresentation by only agreeing to fund the development at a level substantially below the threshold necessary to complete the project.

158.   Hillcrest substantially assisted or encouraged McClung in the achievement of his fraudulent misrepresentation because Hillcrest was aware of the financial instability of Old Standard and WULA, failed to conduct appropriate due diligence, insisted on worthless personal guarantees by McClung and his wife without requesting any financial verification of McClung's net worth and knew that McClung was in financial dire straits.

159.   Hillcrest substantially assisted or encouraged McClung in the achievement of his fraudulent misrepresentation by insisting on a significant reduction in the funding of the lines of credit and requiring McClung to be responsible for privately funding substantial portions of the development when it knew he was financially incapable of doing so.

160.   Hillcrest substantially assisted or encouraged McClung in the achievement of the breach of his obligations by halting the funding of the Quintero development, knowing that the infrastructure was incomplete in violation of the Public Report and then loaning McClung millions more for the sole purpose of servicing the debt on an otherwise non-performing loan.

WHEREFORE , Plaintiffs request that this Court:

-26-

A.  Order Hillcrest to reimburse Plaintiffs their RPM investments of Two Hundred Thousand Dollars ($200,000.00);

B.  Order Hillcrest to reimburse Plaintiffs their Master Charter Membership investment in the amount of One Hundred Fifty Thousand Dollars ($150,000.00);

C.  Order Hillcrest to reimburse Plaintiffs  the amounts of their loans to Quintero in the amount of Four Hundred Thousand Dollars ($400,000.00), (less the One Hundred Thousand Dollars ($100,000.00) repaid to Plaintiffs on April 13, 2006) bearing interest at the contracted amount of 24% per annum from the date of their execution until paid;

D.  For such other and further relief to which Plaintiffs may be entitled and which the Court deems just and appropriate.

## COUNT V

### Civil Conspiracy

161.   Plaintiffs re-allege paragraphs 1 through 160 as if fully set forth herein.

162.   Robert Sperry, Jeffrey Wheeler and Jon Forgey were all corporate officers of Hillcrest.  Each and all of these individuals agreed with McClung to accomplish an unlawful purpose, as described above or to accomplish a lawful object by unlawful means, as described above.

WHEREFORE , Plaintiffs request that this Court:

A.  Order Hillcrest to reimburse Plaintiffs their RPM investments of Two Hundred Thousand Dollars ($200,000.00);

B.  Order Hillcrest to reimburse Plaintiffs their Master Charter Membership investment in the amount of One Hundred Fifty Thousand Dollars ($150,000.00);

C.  Order Hillcrest to reimburse Plaintiffs  the amounts of their loans to Quintero in the amount of Four Hundred Thousand Dollars ($400,000.00), (less the One Hundred Thousand

1   Dollars ($100,000.00) repaid to Plaintiffs on April 13, 2006) bearing interest at the contracted

2   amount of 24% per annum from the date of their execution until paid;

3       D.  For such other and further relief to which Plaintiffs may be entitled and which the

4   Court deems just and appropriate.

5       DATED this ____ day of _____, 2010.

6

7                               **J. JEFFREY COUGHLIN PLLC**

8

9                     By: _____

10                            J. Jeffrey Coughlin
                          Attorneys for Plaintiffs

11  ORIGINAL AND ONE COPY

12  mailed for filing this ____ day of
_____, 2010 to:

13
Clerk of Court

14  MARICOPA COUNTY SUPERIOR COURT
201 West Jefferson – 7D

15  Phoenix, Arizona  85003

16  COPY mailed this same date to:

17  Scott L. Hulbert

18  Engelman Berger, P.C.
3636 N. Central Avenue, Ste. 700

19  Phoenix, AZ 85012
Attorneys for Defendant

20

21  By: _____

22

23

24

25

-28-

# NO. "25"

Michael K. Jeanes, Clerk of Court
*** Electronically Filed ***
Angelica Mejia
Filing ID 631896
7/6/2010 11:08:55 AM

1   J. Jeffrey Coughlin (013801)
**J. JEFFREY COUGHLIN PLLC**
2   114 S. Pleasant Street
Prescott, Arizona 86303
3   Telephone: (928) 445-7137
Facsimile: (866) 890-8989
4   j.coughlin@azbar.org
Attorneys for Plaintiffs
5

6          **IN THE SUPERIOR COURT OF THE STATE OF ARIZONA**

7             **IN AND FOR THE COUNTY OF MARICOPA**

8   PAUL VAN WEELDEN AND KAREN VAN
WEELDEN, husband and wife; Paul Van
9   Weelden, as Trustee for THE VAN          CASE NO. CV 2010 000896
WEELDEN FAMILY TRUST.
10

11              Plaintiffs,              **OBJECTION TO MOTION TO DISMISS**
**(Oral Argument Requested)**
12   vs.

13
HILLCREST BANK, a Kansas banking
14   corporation,
Defendant.
15

16          Plaintiffs object to Defendant's Motion to Dismiss primarily because Plaintiffs have

17   requested permission to amend their complaint and the proposed amended complaint addresses

18   the issues which Defendant asserts are absent in the Verified Complaint.  Plaintiffs detail the

19   basis for their objection in the accompanying Memorandum of Points and Authorities.

20

21          **MEMORANDUM OF POINTS AND AUTHORITIES**
22
**I.      FACTUAL BACKGROUND**
23
24          At the time Plaintiffs were preparing the Verified Complaint in this case, there were

25   multiple judgment liens against the property which is the subject of the underlying trustee's

sale. The Arizona Department of Real Estate (ADRE) was investigating the owner and

-1-

developer of the property, Quintero Golf and Country Club LLC (Quintero). The Federal

Deposit Insurance Corporation (FDIC) had investigated the Defendant in this case and obtained

a consent order from the Defendant to cease and desist the following unsafe or unsound

banking practices:

    a.    Operating with a board of directors that has failed to provide adequate

supervision over and direction to the management of the Bank.

    b.    Operating with management whose policies and practices are detrimental

to the Bank.

    c.    Operating with an inadequate level of capital protection for the kind and

quality of assets held and/or appropriate to the risk inherent in the activities

engaged in by the Bank.

    d.    Engaging in imprudent lending and lax collection practices.

    e.    Operating with an excessive level of adversely classifies loans or assets,

and/or delinquent loans and/or non-accrual loans.

    f.    Failing to properly identify risk and assess the level of risk in problem

loans.

    g.    Operating with an inadequate allowance for loans and lease losses for the

volume, kind, and quality of loans and leases held, and/or failing to make

provision for an adequate allowance for possible loan and lease losses.

    h.    Operating with inadequate liquidity and an excessive reliance on

wholesale funding in light of the bank's assets and liability mix.

    i.    Operating with inadequate earnings.

At the time Plaintiffs were preparing the Verified Complaint in this case, the primary member and alter ego of Quintero, Gary McClung (McClung) was attempting to shed himself of all responsibility for soliciting tens of millions of dollars from unwary investors by seeking bankruptcy protection.  McClung developed and maintained a very close relationship with Defendant over the past two decades and, as alleged in the proposed amended complaint, was allowed significant leeway in the supervision of loan funds which Defendant provided to Quintero and McClung personally.

Based on some of the investigation Plaintiffs and others have conducted since filing the Verified Complaint in this case, Plaintiffs discovered just how close Defendant, Quintero and McClung were while investors began depositing their millions into a fraud mill.  As a result of that investigation, Plaintiffs allege in their proposed amended complaint the following additional counts:   Intentional Interference with Contract, Aiding and Abetting Negligence, Aiding and Abetting Fraudulent Misrepresentation, Civil Conspiracy.  The investigation is far from over.

Since the Verified Complaint was filed in this case, the Quintero Community Association (QCA) and several investors have sued Defendant and Quintero in Missouri for similar violations concerning Quintero's development in Arizona.  Since the filing of the Verified Complaint in this case the ADRE concluded its investigation.  On March 31, 2010 the ADRE issued an order summarily suspending Quintero's Public Report.  ADRE found that Quintero failed to complete roads by the date stated in the Public Reports as required by A.R.S.§32-2181(A)(18) and A.A.C. R4-28-B1203.  The ADRE found that the failure of the roads to be completed constituted an immediate threat to the public health, safety, and welfare warranting immediate suspension of the Public Reports.  Defendant was aware that the roadways had not

been completed and nevertheless, in collusion with McClung, decided to halt all funding for all construction. Defendant was aware that the roadways had not been completed and nevertheless, in collusion with McClung, loaned millions to McClung in order that its own debt service would continue. McClung and Quintero requested and Defendant agreed that various Irrevocable Letters of Credit could be cancelled even though the infrastructure was incomplete for Plaintiffs' and others' properties.

Since the filing of the Verified Complaint in this case, the United States Department of Justice (DOJ) has commenced an investigation of McClung because the bankruptcy trustee's counsel began discovering disturbing information concerning McClung's activities in the solicitation of funds for and development of Quintero.

Since the filing of the Verified Complaint in this case, Plaintiffs have tried to schedule the depositions of individuals at Defendant's institution who were close to McClung and made the key decisions relative to the funding for Quintero. On May 3, 2010 Plaintiffs sent Defendant a letter requesting the opportunity to take the depositions of Jeffrey F. Wheeler, Jon Forgey, Bob Sperry, R.J. Campbell, all of whom were affiliated with Hillcrest Bank. Plaintiffs also wanted to depose Commercial Project Consultant, Thomas C. Martin and Quintero Golf and Country Club consultant, Teri Benoit.

Defendant refused to make the individuals available for the stated reason that the individuals were non-parties in the present case. Plaintiffs responded to the refusal with an explanation for their request. (See letter from J. Jeffrey Coughlin to Scott Hulbert dated May 26, 2010 attached hereto as Exhibit 1). In that letter Plaintiffs explained:

> This rule was amended to address the problem of overuse of expensive and unnecessary depositions. The amendment did not eliminate non-party witness depositions. In fact, the last sentence of the comment states "[R]efusing to agree to the taking of a

reasonable and necessary deposition should subject counsel to sanctions under Rule 26(f)".

Jeffrey Wheeler was the president and C.E.O. of Hillcrest Bank and worked with Gary McClung on a regular basis during the development of Quintero. He was the individual who personally approved loans. He personally knew the members of the banking committees at Hillcrest who reviewed loan requests and had personal and frequent interaction with Gary McClung during the development and cessation of development of Quintero. He was personally aware of Gary McClung's misrepresentations. His deposition is not only reasonable and necessary, it is indispensable.

Bob Sperry was the individual at Hillcrest with whom the construction accountant and development manager at Quintero (Teri Benoit) had regular and primary contact for construction draws. Gary McClung and Trace Graves of Quintero dealt with M. Sperry whenever there were issues about canceling, modifying and extending letters of credit for the development of Quintero. Mr. Sperry personally came to Arizona to oversee the construction draw process and was personally familiar thereafter with the third party agent Project Disbursement Group (PDG) in Las Vegas which reported directly to him at Hillcrest. His deposition is also indispensable.

Jon Forgey was an assistant vice president in the Commercial Lending Department at Hillcrest Bank and was the individual whom anyone at Quintero had to contact regarding lines of credit and the authorization of payment upon request from PDG. He had frequent and personal contact with Gary McClung and personally instructed PDG to stop the Quintero development. He did this at a time when Hillcrest knew that lots were being sold while the infrastructure was incomplete in violation of the Public Report issued by the Arizona Department of Real Estate. Years after he halted the Quintero development, Mr. Forgey requested that Thomas C. "Charlie" Martin prepare an estimate to complete the roads and associated work for the project. Mr. Forgey's deposition is indispensable.

Thomas C. "Charlie" Martin contacted Quintero representative Teri Benoit for the purpose of conducting a site inspection at Quintero.    Mr. Martin was hired by Hillcrest Bank as a Commercial Project Consultant to prepare a Construction Estimate to Complete Phase I in Quintero.    He personally met with

-5-

individuals at Quintero and was personally aware of the purpose for which and the instructions he received from Hillcrest to effectuate that purpose. He personally observed the conditions at Quintero. In his letter to Jon Forgey on June 1, 2009, he stated, "[I] have made a site visit and met with Ms. Teri Benoit, Development and Construction Corporate Administration Agent. Teri and I toured the project and Teri verbally outlined the construction work to be completed". Based upon his personal contact with the project, his preparation of the construction estimate at Jon Forgey's request and his personal interaction with Teri Benoit, Mr. Martin's deposition is indispensable.

Teri Benoit was responsible for the construction accounting at Quintero. She became the development manager when Gary McClung and Hillcrest Bank abdicated their responsibilities. She performed a multitude of tasks at Gary McClung's request, including the creation of Quintero brochures for the purpose of obtaining more financing for the development. She was responsible for keeping track of all administrative functions of all Quintero's offices, including the office in Scottsdale and the construction and marketing offices at Quintero. Ms. Benoit is the most knowledgeable person regarding Hillcrest Bank's involvement in the Quintero development. She interacted with multiple representatives at Hillcrest, PDG, Gary McClung and construction representatives both on and off site. Teri Benoit's testimony is indispensable.

Defendant continued to obstruct Plaintiffs' attempts to take the depositions of the above identified individuals even with the detailed explanation for why Plaintiffs thought the depositions were reasonable and necessary. Plaintiffs now know why. Defendant was preparing to move to dismiss the Verified Complaint and wanted to stall Plaintiffs until it filed the present motion to dismiss.

## II.   ARGUMENTS OF LAW

### A.   Plaintiffs state claims for which relief can be granted in their proposed Amended Complaint

Defendant argues that Plaintiffs have not stated a claim upon which relief can be granted. The proposed Amended Complaint cures that perceived deficiency. Any information contained in

1   the Verified Complaint becomes moot if the case proceeds on the basis of the proposed Amended

2   Complaint.  Plaintiffs have asserted additional counts of:  [I]ntentional Interference with

3   Contract, Aiding and Abetting Negligence, Aiding and Abetting Fraudulent Misrepresentation,

4   Civil Conspiracy. Plaintiffs' Verified Complaint requested and this Court granted injunctive

5   relief. This Court set a date in December for a status conference to discuss a trial on the merits of

6   the action detailed in the Verified Complaint.  Plaintiffs have now sought to amend their

7   complaint to assert additional causes of action.

8        **B.**     **Rule 16 does not prevent a trial judge from amending or modifying a pretrial**

9   **order at or before trial**

10       Defendant's rigid approach to defending this case is not consistent with the interests of

11  justice.  In their proposed Amended Complaint, Plaintiffs have asserted significant and

12  substantial causes of action which have resulted from multiple investigations and lawsuits in

13  Texas, Missouri and Arizona. "Rule 16, Rules of Civil Procedure, and nearly all courts agree that

14  a pre-trial order may be amended or modified in the interest of justice at or before the trial:  'The

15  trial judge clearly has the authority to amend or modify a pre-trial order if this becomes necessary

16  in the interest of justice. (Citations omitted.) To hold otherwise would make a straight-jacket out

17  of a procedural reform which was intended to provide a useful device in the court's search for

18  truth.'" *Harbel Oil Company,* 1 Ariz. App 315, 402 P.2d 436, 439(1965) (quoting *Scott v.*

19  *Spanjer Bros., Inc.,* 298 F.2d 928 at 931 (1962)).

20       There have been many developments surrounding the relationship among Defendant,

21  Plaintiffs, Quintero, McClung, QCA and the scores of investors who have lost millions of dollars

22  and their properties.  By relying on this Court's pretrial order as a basis for moving to dismiss

23  this case is Defendant's attempt to cram justice into the straight-jacket described in the *Harbel*

-7-

case, above.  This case is only six months old.  It is in the pretrial stage.  In the *Harbel* case, the court allowed an amended answer to assert a counterclaim after the pretrial order deadline had expired and after the matter had been appealed and remanded for a new trial.  The *Harbel* court did this because the ends of justice so required.  *Id.*  Leave to amend pleadings shall be freely given when justice so requires.  Rule 15(a) Arizona Rules of Civil Procedure.

Plaintiffs urge this Court to exercise its discretion to modify its pretrial scheduling order based on the newly asserted counts in the proposed Amended Complaint and because the interests of justice so require.

## III.   CONCLUSION

Pending before this Court is Plaintiffs' Motion to Amend their Verified Complaint.  The proposed Amended Complaint asserts one hundred and twenty allegations of fact (thirty four were asserted in the Verified Complaint) and several additional counts.  Defendant unreasonably refused to make vital witnesses employed by Defendant available for deposition while its counsel prepared a motion to dismiss the case for failure to state a claim for which relief can be granted.  In the interest of justice and based on the facts and arguments stated above, Plaintiffs request that the Court deny Defendant's motion to dismiss, grant Plaintiff's motion to amend and modify its scheduling order to reflect the metamorphosis of the present case.

RESPECTFULLY SUBMITTED this 6th day of July, 2010.


### J. JEFFREY COUGHLIN PLLC


By:    /s/ J. Jeffrey Coughlin
          J. Jeffrey Coughlin

///
///

1

2    ORIGINAL e-filed
     this 6th day of July, 2010 with:
3

4    Clerk of Court
     Maricopa County Superior Court
5    201 West Jefferson – 7D
     Phoenix, Arizona 85003
6
     COPY of the foregoing
7    mailed same date to:

8    Kevin M. Judiscak
     Scott Hulbert
9    Engelman Berger, P.C.
     3636 North Central Avenue, Ste. 700
10   Phoenix, AZ 85012
     Attorneys for Defendant Hillcrest Bank
11

12   By:    Anna Nelson

13

14

15

16

17

18

19

20

21

22

23

24

25

# EXHIBIT 1

LAW OFFICES OF

# J. JEFFREY COUGHLIN PLLC

114 SOUTH PLEASANT STREET
PRESCOTT, ARIZONA 86303

May 26, 2010

**VIA FACSIMILIE AND US MAIL**
**(602) 222-4999**

Scott L. Hulbert
Engelman Berger, P.C.
3636 N. Central Avenue, Ste. 700
Phoenix, AZ 85012

Re:     Van Weelden v. Hillcrest Bank
        CV 2010-000896

Dear Mr. Hulbert:

In response to your letter of May 17, 2010 refusing to agree to my requests to take the depositions of the individuals whom I identified in my letter to you of May 3, 2010, I direct your attention to the Committee Comment to 1991 Amendment to Rule 30(a).

This rule was amended to address the problem of overuse of expensive and unnecessary depositions. The amendment did not eliminate non-party witness depositions. In fact, the last sentence of the comment states "[R]efusing to agree to the taking of a reasonable and necessary deposition should subject counsel to sanctions under Rule 26(f)".

Jeffrey Wheeler was the president and C.E.O. of Hillcrest Bank and worked with Gary McClung on a regular basis during the development of Quintero. He was the individual who personally approved loans. He personally knew the members of the banking committees at Hillcrest who reviewed loan requests and had personal and frequent interaction with Gary McClung during the development and cessation of development of Quintero. He was personally aware of Gary McClung's misrepresentations. His deposition is not only reasonable and necessary, it is indispensable.

Bob Sperry was the individual at Hillcrest with whom the construction accountant and development manager at Quintero (Teri Benoit) had regular and primary contact for construction draws. Gary McClung and Trace Graves of Quintero dealt with M. Sperry whenever there were issues about canceling, modifying and extending letters of credit for the development of Quintero.

Mr. Sperry personally came to Arizona to oversee the construction draw process and was personally familiar thereafter with the third party agent Project Disbursement Group (PDG) in Las Vegas which reported directly to him at Hillcrest. His deposition is also indispensable.

Jon Forgey was an assistant vice president in the Commercial Lending Department at Hillcrest Bank and was the individual whom anyone at Quintero had to contact regarding lines of credit and the authorization of payment upon request from PDG. He had frequent and personal contact with Gary McClung and personally instructed PDG to stop the Quintero development. He did this at a time when Hillcrest knew that lots were being sold while the infrastructure was incomplete in violation of the Public Report issued by the Arizona Department of Real Estate. Years after he halted the Quintero development, Mr. Forgey requested that Thomas C. "Charlie" Martin prepare an estimate to complete the roads and associated work for the project. Mr. Forgey's deposition is indispensable.

Thomas C. "Charlie" Martin contacted Quintero representative Teri Benoit for the purpose of conducting a site inspection at Quintero. Mr. Martin was hired by Hillcrest Bank as a Commercial Project Consultant to prepare a Construction Estimate to Complete Phase I in Quintero. He personally met with individuals at Quintero and was personally aware of the purpose for which and the instructions he received from Hillcrest to effectuate that purpose. He personally observed the conditions at Quintero. In his letter to Jon Forgey on June 1, 2009, he stated, "[I] have made a site visit and met with Ms. Teri Benoit, Development and Construction Corporate Administration Agent. Teri and I toured the project and Teri verbally outlined the construction work to be completed". Based upon his personal contact with the project, his preparation of the construction estimate at Jon Forgey's request and his personal interaction with Teri Benoit, Mr. Martin's deposition is indispensable.

Teri Benoit was responsible for the construction accounting at Quintero. She became the development manager when Gary McClung and Hillcrest Bank abdicated their responsibilities. She performed a multitude of tasks at Gary McClung's request, including the creation of Quintero brochures for the purpose of obtaining more financing for the development. She was responsible for keeping track of all administrative functions of all Quintero's offices, including the office in Scottsdale and the construction and marketing offices at Quintero. Ms. Benoit is the most knowledgeable person regarding Hillcrest Bank's involvement in the Quintero development. She interacted with multiple representatives at Hillcrest, PDG, Gary McClung and construction representatives both on and off site. Teri Benoit's testimony is indispensable.

I have reconsidered my request to take the deposition of R. J. Campbell at this time and will contact you in the future if I am interested in deposing him. I would appreciate it if you would reconsider your refusal to agree to these depositions. I would prefer not to pursue sanctions against you personally, but if you obstruct this process further, I will have no choice. If I have not received

your consent in writing within the next 48 hours, I will file an appropriate motion with the court. This letter will evidence my attempt to resolve the matter before resorting to the court.

Sincerely,

**J. JEFFREY COUGHLIN PLLC**

J. Jeffrey Coughlin

JJC:cp
Cc: Paul and Karen Van Weelden

# NO. "26"

Michael K. Jeanes, Clerk of Court
*** Electronically Filed ***
Michelle Paigen
Filing ID 642449
7/19/2010 6:00:51 PM

1  KEVIN M. JUDISCAK, SBA #012764
   SCOTT W. HULBERT, SBA #021830
2  **ENGELMAN BERGER, P.C.**
   3636 NORTH CENTRAL AVENUE, SUITE 700
3  PHOENIX, ARIZONA 85012

4        Ph: (602) 271-9090
         Fax: (602) 222-4999
         Email: kmj@engelmanberger.com
5              swh@engelmanberger.com

6  Attorneys for Plaintiff Hillcrest Bank

7              **SUPERIOR COURT OF MARICOPA COUNTY**

8                      **STATE OF ARIZONA**

9  PAUL VAN WEELDEN AND KAREN          Case No. CV2010-000896
   VAN WEELDEN, husband and wife;
10 PAUL VAN WEELDEN, as Trustee for    **HILLCREST BANK'S REPLY IN**
   THE VAN WEELDEN FAMILY             **SUPPORT OF ITS MOTION TO**
11 TRUST,                             **DISMISS PURSUANT TO RULE**
                                      **12(b)(6),** *ARIZ. R. CIV. P.*
12              Plaintiff,
   vs.
13                                     (Honorable Eileen S. Willett)
   HILLCREST BANK, a Kansas
14 corporation,

15              Defendant.

16

17        Plaintiffs concede Hillcrest Bank's Motion to Dismiss Plaintiffs' Complaint pursuant

18 to Rule 12(b)(6), Ariz.R.Civ.P. Therefore, Hillcrest Bank's Motion should be granted.

19        Specifically, Hillcrest Bank filed a Motion to Dismiss Plaintiffs' Complaint because it

20 asserted only a request for injunctive relief without pleading any underlying cause of action

21 against Hillcrest Bank. **"Injunctive relief is a remedy and not, in itself, a cause of action,**

22 **and a cause of action must exist before injunctive relief may be granted."** *Camp v. Board*

23 *of Supervisors*, 123 Cal.App.3d 334, 355-356 (1981); *see also Klay v. United Health Group,*

24 *Inc.*, 376 F.3d 1092, 1098 (11th Cir. 2004) ("The district court did not err in denying the

25 plaintiff's motion for a preliminary injunction and dismissing the injunctive count of the

26 plaintiff's complaint because the plaintiff has failed to state a claim for relief . . .").

27        Plaintiffs do not dispute the dispositive authority identified by Hillcrest Bank. Nor do

{02329.003/00178127.DOC /}

1    Plaintiffs dispute that their initial Complaint, for only injunctive relief, is legally defective and

2    subject to dismissal pursuant to Rule 12(b)(6).

3           Plaintiffs stated only that they now have separately sought leave to file an amended

4    complaint (in violation of this Court's March 12, 2010 Scheduling Order), and that the

5    proposed amendment would address the deficiencies of Plaintiffs' initial Complaint.

6    However, a motion to amend does not constitute a defense to Hillcrest Bank's pending

7    Motion to Dismiss.  Moreover, a motion to amend would not be well-taken because Plaintiffs

8    have not made any effort to diligently prosecute this action: (1) written discovery has closed,

9    (2) the TRO has lapsed, (3) Plaintiffs did not comply with Rule 26.1, (4) Plaintiffs did not

10   disclose any expert witnesses, (5) Plaintiffs did not conduct any written discovery, (6)

11   Plaintiffs did not respond to Hillcrest Bank's Requests for Production and Non-Uniform

12   Interrogatories, (7) Plaintiffs did not seek to conduct any depositions prior to the Court-

13   ordered deadline to seek to amend pleadings, and (8) Plaintiffs did not seek leave to amend

14   their Complaint prior to the Court-ordered deadline – nor at any time thereafter until after

15   Hillcrest Bank filed its Motion to Dismiss.  As such, Plaintiffs have not demonstrated the

16   good cause necessary to amend the Scheduling Order.  *See Cano v. Schriro*, 236 F.R.D. 437,

17   439 (D. Ariz. 2006) *aff'd*, 269 F. App'x. 755 (9th Cir. 2008).  Further, the right to amend is

18   not automatic, and leave to amend will be denied where, as here, there is (1) undue delay, (2)

19   the undue prejudice, or (3) futility of the proposed amendments, any one of which is sufficient

20   to require denial of a motion.  *Moore v. Toshiba Int'l Corp.*, 160 Ariz. 205, 209, 772 P.2d 28,

21   32 (Ariz. App. 1989); *Bishop v. State, Dept. of Corr.*, 172 Ariz. 472, 474-475, 837 P.2d 1207,

22   1209-1210 (Ariz. App. 1992).

23          Because Plaintiffs filed a separate motion to amend, Hillcrest Bank will file a separate

24   opposition identifying the impropriety of Plaintiffs' belated motion to amend.  However

25   because Plaintiffs have not disputed the deficiency of their pending Complaint or otherwise

26   contraverted Hillcrest Bank's Motion to Dismiss, the Bank's Motion to Dismiss should be

27   granted without further delay.

ENGELMAN BERGER, P.C.
3636 North Central Avenue, Suite 700
Phoenix, Arizona 85012

{02329.003/00178127.DOC /}

2

I.   **PLAINTIFFS' COMPLAINT IS LEGALLY DEFICIENT AND MUST BE DISMISSED.**

As established in Hillcrest Bank's Motion to Dismiss, Plaintiff's Complaint for Injunctive Relief is legally deficient because it fails to plead any causes of action against Hillcrest Bank for which relief can be granted, and must be dismissed pursuant to Rule 12(b)(6), Ariz.R.Civ.P. *See Camp*, 123 Cal.App.3d at 355-356; *Klay*, 376 F.3d at 1098; *Jahnke v. Palomar Financial Corp.*, 22 Ariz.App. 369, 372-373, 527 P.2d 771, 774–775 (Ariz. App. 1974), and numerous additional citations at pages 3-4 of Hillcrest Bank's Motion to Dismiss.

While Plaintiffs attempted to give bulk to their Objection with rhetoric and unsubstantiated innuendo, Plaintiffs did not dispute the dispositive legal authority cited by Hillcrest Bank. Nor, did Plaintiffs dispute that their initial Complaint For Injunctive Relief, which does not include any underlying causes of action, is legally deficient and subject to dismissal pursuant to Rule 12(b)(6). As such, Hillcrest Bank's Motion to Dismiss should be promptly granted.

II.   **PLAINTIFFS' INNUENDO IS BASELESS AND LEGALLY IRRELEVANT.**

In 2005, Hillcrest Bank entered into a Construction Loan Agreement with non-party Quintero Golf and Country Club, LLC ("Quintero LLC") in the amount of Thirty One Million Dollars. The Loan was guaranteed by Quintero LLC's owner, Gary McClung, and partially secured by a first position Deed of Trust on the development property. In 2007, the Loan matured without repayment. Gary McClung filed bankruptcy, and Quintero LLC is defunct. Accordingly, Hillcrest Bank filed a lawsuit in the Maricopa County Superior Court for the appointment of a receiver of the property, and the Honorable Edward Burke appointed a receiver in the earlier-filed case, CV2009-030918.

One of the Plaintiffs, a Trust, owns one investment lot in the development property. Hillcrest Bank did not provide the financing for the purchase of that lot, and Plaintiff's lot is not subject to the Bank's Deed of Trust. Hillcrest Bank never had any contractual relationship with Plaintiffs, and Plaintiffs were not parties to the Loan Agreement or the

ENGELMAN BERGER, P.C.
3636 North Central Avenue, Suite 700
Phoenix, Arizona 85012

{02329.003/00178127.DOC /}

3

1   Bank's Deed of Trust.

2       Tellingly, Plaintiffs never have been able to articulate a cause of action against

3   Hillcrest Bank, because none exists. Instead, Plaintiffs rely on rhetoric and innuendo (and

4   this Court's patience). **But, it is clear that Plaintiffs were doing deals with Quintero and**

5   **McClung regarding the development property at least two (2) years _before_ Hillcrest**

6   **Bank ever made the Construction Loan, including Plaintiffs' purchase of 36 acres of**

7   **property in Phase II from Quintero, Plaintiff's "investment loans" to Quintero, and**

8   **Plaintiffs' contracting to purchase their investment lot before authorized by A.D.R.E.**

9   Thus, Plaintiffs are not the innocent, arm's length purchasers that they would have this Court

10  believe. Rather, Plaintiffs had pre-existing investment deals with Quintero and McClung, and

11  believe there may be some nuisance value to attempting to blame the Bank since McClung is

12  in bankruptcy and Quintero is defunct.

13  **III.   PLAINTIFFS HAVE DONE NOTHING TO PROSECUTE THEIR LAWSUIT.**

14      Consistently with the foregoing, Plaintiffs have done nothing to diligently prosecute

15  this lawsuit. Plaintiffs allowed the TRO to lapse. Plaintiffs did not provide any Rule 26.1

16  disclosure statement or identify any expert witnesses. Plaintiffs did not respond to Hillcrest

17  Bank's Requests for Production or Non-Uniform Interrogatories, which were propounded

18  back in May. Plaintiffs did not conduct any written discovery of their own. Plaintiffs did not

19  seek leave to amend their Complaint or an extension of the deadline to do so. And, Plaintiffs

20  did not seek to conduct any depositions until the last week of May or first part of June – well

21  after the deadline for seeking leave to amend their Complaint. Thus, Plaintiffs' assertion that

22  Hillcrest Bank obstructed their discovery efforts is false.[1]

23

24  [1] Moreover, in response to Plaintiffs' request to conduct depositions of the Bank's officers and
25  directors, the Bank offered to produce one or more Rule 30(b)(6) designees. Plaintiffs never
    responded to the Bank's offer. Further, after noticing the depositions in an improper county other
26  than where the witnesses reside (the Bank officers reside outside Arizona), Plaintiffs abruptly
    cancelled the depositions. Thus, the Court-ordered deadline for seeking leave to amend had already
27  passed, and the depositions could not (and did not) prevent Plaintiffs from complying with the
    Court's Order.

{02329.003/00178127.DOC /}

4

ENGELMAN BERGER, P.C.
3636 North Central Avenue, Suite 700
Phoenix, Arizona 85012

ENGELMAN BERGER, P.C.
3636 North Central Avenue, Suite 700
Phoenix, Arizona 85012

## IV.   PLAINTIFFS MISCHARACTERIZE HILLCREST BANK'S MOTION.

As a last resort, Plaintiffs attempt to mischaracterize the legal basis for Hillcrest Bank's Motion to Dismiss.  As clearly stated on the first page of Hillcrest Bank's Motion, Hillcrest Bank moved to dismiss Plaintiffs' Complaint for Injunctive Relief because it failed to state a cause of action for which relief can be granted:

> **Plaintiffs' Complaint for Injunctive Relief fails to state a claim upon which the Court can grant relief because it asserts only a request for injunctive relief without pleading any underlying cause of action against Hillcrest Bank.**  "Injunctive relief is a *remedy* and not, in itself, a *cause of action*, and a cause of action must exist before injunctive relief may be granted." *Camp v. Board of Supervisors*, 123 Cal.App.3d 334, 355-356 (1981) (emphasis added); *see Klay v. United Health Group, Inc.*, 376 F.3d 1092, 1097 (11th Cir. 2004) ("There is no such thing as a suit for a traditional injunction in the abstract.  For a traditional injunction to be even theoretically available, a plaintiff must be able to articulate a basis for relief that would withstand scrutiny under Fed.R.Civ.P. 12(b)(6) (failure to state a claim).").
>
> **Thus, because Plaintiffs have failed to plead any cause of action in their Complaint, the Complaint must be dismissed pursuant to Rule 12(b)(6), *Ariz. R. Civ. P.  See Klay*,** 376 F.3d at 1098 ("The district court did not err in denying the plaintiff's motion for a preliminary injunction and dismissing the injunctive count of the plaintiff's complaint because the plaintiff has failed to state a claim for relief . . .").

Motion, page 1 (emphasis added).

Notwithstanding the unequivocal language of the Bank's Motion, Plaintiffs inaccurately assert that the Bank is "relying on this Court's pretrial order as the basis for moving to dismiss this case."  Response, p. 7, ll. 24-25.  This is false.  The Court's pretrial Order is not the basis for Hillcrest Bank's Motion to Dismiss -- rather, Plaintiff's legally deficient Complaint for only injunctive relief without pleading any underlying cause of action is the basis for Hillcrest Bank's Motion to Dismiss.  *See Camp*, 123 Cal.App.3d at 355-356; *Klay*, 376 F.3d at 1098.

In contrast, Plaintiffs' violation of this Court's March 12, 2010 Scheduling Order is one of the many reasons why Plaintiffs' separate motion to amend should be denied.  *See Cano*, 236 F.R.D. at 439; *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 608 (9th Cir.

{02329.003/00178127.DOC /}

5

1   1992) (applying the federal Rule).   Although Rule 15 generally governs attempts to amend

2   complaints *before* a Rule 16 Scheduling Order is entered, once a Scheduling Order has been

3   entered, Rule 16 requires that good cause be shown to modify the Order.  *Id.*   The good cause

4   standard considers primarily the diligence of the party seeking the amendment.  *Id.*   "If the

5   party seeking to amend were unable to comply with the deadline despite that party's

6   diligence, the Court may modify the schedule."  *Id.*   "<u>The inquiry ends</u>, however, if the party

7   seeking the amendment has not shown diligence."  *Id.*  (emphasis added).  (Even if diligence

8   is shown, the existence of prejudice to the opposing party might supply additional reasons to

9   deny a motion."  *Id.*)    Here, Plaintiffs have not demonstrated that they have diligently

10  prosecuted this lawsuit, and have not established that compliance with the Order was not

11  possible despite their diligence.   Nor did Plaintiffs diligently request an extension of the

12  deadline within which to seek leave to amend.  Thus, as instructed by the Ninth Circuit Court

13  of Appeals, "the inquiry ends."

14  **V.    CONCLUSION AND RELIEF REQUESTED.**

15      Plaintiffs' Complaint for Injunctive Relief fails to state a claim upon which relief can

16  be granted because it asserts only a request for injunctive relief without pleading any

17  underlying cause of action against Hillcrest Bank. Plaintiffs have not disputed the dispositive

18  authorities cited by Hillcrest Bank in its Motion to Dismiss, nor disputed that their initial

19  Complaint is legally deficient and subject to dismissal pursuant to Rule 12(b)(6).

20      Plaintiffs' reference to their independent motion for leave to amend does not constitute

21  a defense to Hillcrest Bank's Motion to Dismiss, and will be responded to separately by

22  Hillcrest Bank.   Hillcrest Bank's Motion to Dismiss, however, must be granted without

23  further delay.

24

25  / / /

26

27

ENGELMAN BERGER, P.C.
3636 North Central Avenue, Suite 700
Phoenix, Arizona 85012

{02329.003/00178127.DOC /}

6

DATED this 19th day of July, 2010.

**ENGELMAN BERGER, P.C.**

By____/s/ Kevin M. Judiscak_____
           Kevin M. Judiscak
           Scott W. Hulbert
           3636 North Central Avenue, Suite 700
           Phoenix, Arizona 85012
           Attorneys for Hillcrest Bank

Copy of the foregoing
mailed this 19th day
of July, 2010 to:

J. Jeffrey Coughlin
J. Jeffrey Coughlin PLLC
114 S. Pleasant Street
Prescott, AZ  86303
Attorneys for Plaintiffs

_____/s/ Linda Saperstein_____

ENGELMAN BERGER, P.C.
3636 North Central Avenue, Suite 700
Phoenix, Arizona 85012

{02329.003/00178127.DOC /}

7

# NO. "27"

Michael K. Jeanes, Clerk of Court
*** Electronically Filed ***
Constance White
Filing ID 643506
7/20/2010 8:06:05 PM

1   KEVIN M. JUDISCAK, SBA #012764
    SCOTT W. HULBERT, SBA #021830
2   **ENGELMAN BERGER, P.C.**
    3636 NORTH CENTRAL AVENUE, SUITE 700
3   PHOENIX, ARIZONA 85012

4        Ph: (602) 271-9090
         Fax: (602) 222-4999
      Email: kmj@engelmanberger.com
5          swh@engelmanberger.com

6   Attorneys for Plaintiff Hillcrest Bank

7            **SUPERIOR COURT OF MARICOPA COUNTY**

8                   **STATE OF ARIZONA**

9   PAUL VAN WEELDEN AND KAREN        Case No. CV2010-000896
    VAN WEELDEN, husband and wife;
10  PAUL VAN WEELDEN, as Trustee for   **HILLCREST BANK'S**
    THE VAN WEELDEN FAMILY             **RESPONSE TO PLAINTIFFS'**
11  TRUST,                             **UNTIMELY MOTION TO**
                                       **AMEND**
12          Plaintiff,

13  vs.                                (Honorable Eileen S. Willett)

14  HILLCREST BANK, a Kansas
    corporation,                       ***Request for Oral Argument***
15
            Defendant.
16

17       In response to Hillcrest Bank's Motion to Dismiss Plaintiffs' deficient Complaint

18  (which failed to plead any causes of action), and following the close of written discovery and

19  expert witness disclosures, and seven weeks after the Court-ordered deadline to amend

20  pleadings, Plaintiffs have now sought leave to file an amended complaint to assert 128 new

21  paragraphs and four brand new claims.  (It is further clear that Plaintiffs simply block-copied

22  allegations from a complaint lodged in a Missouri state court lawsuit.)

23       The Arizona appellate courts have clearly directed that Plaintiffs' belated Motion must

24  be denied because of (1) Plaintiffs' undue delay, (2) the undue prejudice to Hillcrest Bank,

25  and (3) the futility of the proposed amendments, any one of which is sufficient to require

26  denial of the Motion.  *Bishop v. State, Dept. of Corr.*, 172 Ariz. 472, 474-475, 837 P.2d 1207,

27  1209-1210 (Ariz. App. 1992).  Furthermore, Plaintiffs' untimely Motion must be denied

{02329.003/00179074.DOC /}

1   because Plaintiffs have not demonstrated that it was not possible to comply with this Court's

2   Scheduling Order despite diligent efforts to do so. *Cano v. Schriro*, 236 F.R.D. 437, 439 (D.

3   Ariz. 2006) *aff'd*, 269 F. App'x. 755 (9th Cir. 2008) ("*The inquiry ends*, however, if the party

4   seeking the amendment has not shown diligence.") (emphasis added).

5       While Plaintiffs cite the general proposition that leave to amend a pleading should be

6   freely granted, the **right to amend is not automatic**. *Moore v. Toshiba Int'l Corp.*, 160 Ariz.

7   205, 209, 772 P.2d 28, 32 (Ariz. App. 1989) *citing Owen v. Superior Court*, 133 Ariz. 75, 79,

8   649 P.2d 278, 282 (1982) (Emphasis added). Rather, where there has been undue delay,

9   undue prejudice to the defendant, or the proposed amendments would be futile, the Court

10  must deny a motion to amend. *Bishop*, 172 Ariz. at 474-475. Here, there has been undue

11  delay, and Plaintiffs made no effort to diligently prosecute their lawsuit. Specifically,

12  Plaintiffs did not comply with any of the Court-ordered deadlines. Plaintiffs did not plead any

13  causes of action in their Complaint. Plaintiffs allowed the TRO to expire. Written discovery

14  has closed. Plaintiffs did not comply with Rule 26.1. Plaintiffs did not disclose any expert

15  witnesses. Plaintiffs did not conduct any written discovery. Plaintiffs did not respond to

16  Hillcrest Bank's Requests for Production or Non-Uniform Interrogatories. Plaintiffs did not

17  seek to conduct any depositions prior to the deadline to amend pleadings. Plaintiffs did not to

18  seek leave to amend their Complaint prior to the Court-ordered deadline to amend pleadings –

19  nor at any time thereafter until after Hillcrest Bank filed its Motion to Dismiss. Further,

20  Plaintiffs never requested an extension of any of the deadlines in the Court's Scheduling

21  Order, either prior to the deadlines or at any time following the expiration of the deadlines.

22  **Indeed, Plaintiffs entirely ignored this case until Hillcrest Bank filed its Motion to**

23  **Dismiss.** As such, it is clear that Plaintiffs have not diligently prosecuted their lawsuit, and

24  have not made any effort to demonstrate the good cause necessary to amend their Complaint

25  seven weeks after the Court-ordered deadline. *Cano*, 236 F.R.D. at 439.

26      In addition, Plaintiffs' undue delay coupled with Plaintiffs' proposed assertion of 128

27  new paragraphs and four brand new causes of action constitutes undue prejudice to Hillcrest

ENGELMAN BERGER, P.C.
3636 North Central Avenue, Suite 700
Phoenix, Arizona 85012

{02329.003/00179074.DOC /}

2

ENGELMAN BERGER, P.C.
3636 North Central Avenue, Suite 700
Phoenix, Arizona 85012

1    Bank.  Prejudice is the "inconvenience and delay suffered when the amendment raises new

2    issues" during the course of litigation.  *Spitz v. Bache & Co., Inc.*, 122 Ariz. 530, 531, 596

3    P.2d 365, 366 (1979).  Plaintiffs already delayed Hillcrest Bank's trustee's sale for over six

4    months.  Plaintiffs are not seeking to add only a single claim or to comport with the evidence

5    established through discovery (indeed, Plaintiffs have not engaged in any discovery).  Instead,

6    Plaintiffs **have essentially rewritten the Complaint** attempting to create a brand new lawsuit

7    by raising never-before-disclosed facts and entirely unrelated claims. This constitutes extreme

8    and undue prejudice to Hillcrest Bank. *Spitz.*, 122 Ariz. at 531, 596 P.2d at 366.

9         Third, the Plaintiffs' proposed amendments would be futile.  The proposed new causes

10   of action are legally insufficient to state a claim against Hillcrest Bank and would

11   immediately be subject to dismissal.  *Logan v. Forever Living Products Int'l, Inc.*, 203 Ariz.

12   191, 192, 52 P.3d 760, 761 (2002).  For example, Plaintiffs' vague "Aiding and Abetting" and

13   "Civil Conspiracy" claims are barred by the applicable statutes of limitation and the

14   Economic Loss Doctrine.  *See* A.R.S. §§12-542, 543; *Flagstaff Affordable Housing Ltd.*

15   *Partnership v. Design Alliance, Inc.*, 223 Ariz. 320, 323, 223 P.3d 664, 667

16   (2010).   Moreover, without an underlying cause of action (which Plaintiffs concede),

17   injunctive relief is not available.  *Camp v. Board of Supervisors*, 123 Cal.App.3d 334, 355-

18   356 (1981); *Klay v. United Health Group, Inc.*, 376 F.3d 1092, 1097 (11th Cir. 2004).

19        Thus, Plaintiffs have failed to demonstrate good cause, and their untimely Motion –

20   filed in violation of this Court's Scheduling Order – must be denied because of (1) Plaintiffs'

21   undue delay, (2) the undue prejudice to Hillcrest Bank, (3) the futility of the proposed

22   amendments, and (4) Plaintiffs' failure to diligently prosecute this case. *Bishop*, 172 Ariz. at

23   474-475, 837 P.2d at 1209-1210; *Cano*, 236 F.R.D. at 439.

24                         **MEMORANDUM OF POINTS AND AUTHORITIES**

25   **I.    INTRODUCTION.**

26        In 2005, Hillcrest Bank entered into a Construction Loan Agreement with non-party

27   Quintero Golf and Country Club, LLC ("Quintero LLC") in the amount of Thirty One Million

{02329.003/00179074.DOC /}

3

Dollars. The Loan was guarantied by Quintero LLC's owner, Gary McClung, and partially secured by a first position Deed of Trust on the development property. In 2007, the Loan matured without repayment. Gary McClung filed bankruptcy, and Quintero LLC is defunct. Accordingly, Hillcrest Bank filed a lawsuit in the Maricopa County Superior Court for the appointment of a receiver of the property, and the Honorable Edward Burke appointed a receiver in the earlier-filed case, CV2009-030918.

One of the Plaintiffs, a Trust, owns one investment lot in the development property. Hillcrest Bank did not provide the financing for the purchase of that lot, and Plaintiff's lot is not subject to the Bank's Deed of Trust. Hillcrest Bank never had any contractual relationship with Plaintiffs, and Plaintiffs were not parties to the Loan Agreement or the Bank's Deed of Trust. Tellingly, Plaintiffs never have been able to articulate a cause of action against Hillcrest Bank because none exists.

Plaintiffs commenced this lawsuit on January 8, 2010. Upon Plaintiffs' Application, the Court issued a temporary restraining order prohibiting Hillcrest Bank from foreclosing on its first-position Deed of Trust, to preserve Plaintiff's subordinate judgment lien on the property. The TRO lapsed ten days later pursuant to Arizona law. Since that time, Plaintiffs did not conduct any written discovery, did not disclose any expert witnesses, did not provide any Rule 26.1 Disclosure Statement, and did not otherwise diligently prosecute their case,

## A.   The Court Entered A Rule 16(b) Scheduling Order On March 12, 2010.

By Minute Entry dated February 5, 2010, the Court ordered the parties to submit a Joint Pretrial Memorandum and a proposed Scheduling Order(s), including a date by which any motions to amend pleadings would be filed. During the parties' telephone conversation on March 5, 2010, the parties agreed to file a Joint Pretrial Memorandum and separate proposed Scheduling Orders. Even though it typically is a plaintiff's responsibility to prepare the joint pretrial memorandum, Hillcrest Bank's counsel agreed to prepare the Memorandum, and also agreed to file Plaintiffs' proposed form of Order. However, when Hillcrest Bank's counsel forwarded a final draft of the Joint Pretrial Memorandum to Plaintiffs' counsel for

ENGELMAN BERGER, P. C.
3636 North Central Avenue, Suite 700
Phoenix, Arizona 85012

1  review, Plaintiffs' counsel neglected to respond.  Despite Hillcrest Bank's repeated attempts

2  to contact Plaintiffs' counsel via his office phone, cell phone, and email, Plaintiffs never

3  responded.  Plaintiffs' failure to comply with this Court's February 5 Minute Entry was

4  consistent with Plaintiffs' overall lack of prosecution of this case.  Consequently, Hillcrest

5  Bank's counsel filed the Joint Pretrial Memorandum with the Notice of Filing explaining the

6  events of the afternoon and lodged the separate Scheduling Orders for both parties.  (Thus,

7  contrary to Plaintiffs' inaccurate assertion that "Defendant did not cooperate with the

8  submission of a proposed joint scheduling order…forcing Plaintiffs to submit one

9  unilaterally" it was actually Hillcrest Bank that complied with the Court's Order by filing all

10  the ordered pleadings.)

11          On March 12, 2010, the Court issued its Scheduling Order.  The Scheduling Order set

12  the pertinent pretrial deadlines, including deadlines for written discovery and disclosure of

13  expert witnesses.  The Scheduling Order also set a May 17, 2010, deadline for filing motions

14  to amend the pleadings.  (This date was over five months following Plaintiffs' initial

15  Complaint.)

16          **B.     Plaintiffs' Did Not Make Any Effort To Prosecute This Case.**

17          After frustrating Hillcrest Bank's Trustee's Sale, Plaintiffs did not make any effort to

18  prosecute this case.  The TRO lapsed.  Plaintiffs did not provide their initial Rule 26.1

19  disclosure statement by the April 12, 2010 deadline, or at all.  Plaintiffs did not disclose the

20  identity or subject matter of any expert witness by the May 12, 2010 deadline, or at all.

21  Plaintiffs did not serve their final expert disclosure by the June 1, 2010 deadline, or at all.

22  Plaintiffs did not propound any written discovery by the May 17, 2010 cutoff, or at all.

23  Plaintiffs did not timely respond to Hillcrest Bank's Requests for Production and Non-

24  Uniform Interrogatories, or at all.  Nor did Plaintiffs ask the Court to extend any of the

25  deadlines of the Scheduling Order.

26          **Furthermore, Plaintiffs did not seek leave to amend their Complaint by the May**

27  **17, 2010 deadline, or at any time thereafter until Hillcrest Bank filed its Motion to**

{02329.003/00179074.DOC /}

5

**Dismiss.**   Indeed, while Plaintiffs wrongfully imply that they wanted to take certain depositions before seeking leave to amend their Complaint, this is false.  Plaintiffs sent a letter indicating their interest to take the depositions "**during the last week of May or the early part of June.**"  Thus, such depositions – *at Plaintiffs' request* – would have occurred well *after* the May 17, 2010, deadline to seek leave to amend pleadings.[1]

> **C.     Hillcrest Bank Timely Moved To Dismiss Plaintiffs' Defective Complaint.**

Finally, on June 17, 2010, a full month after the deadline for Plaintiffs to seek leave to amend their Complaint, Hillcrest Bank filed its Motion to Dismiss Plaintiffs' facially deficient Complaint.  The Motion to Dismiss cites case law that establishes that "[i]njunctive relief is a remedy and not, in itself, a cause of action, and a cause of action must exist before injunctive relief may be granted."  *Camp,* 123 Cal.App.3d at 355-356.  In fact, Plaintiffs concede the defectiveness of their Complaint and have not made any effort to rebut the extensive case law cited by Hillcrest Bank.  Thus, Hillcrest Bank's Motion to Dismiss must be granted.  *After* Hillcrest Bank filed its Motion to Dismiss, and over six months *after* commencing this lawsuit, and approximately seven weeks *after* the Court-ordered deadline to seek leave to amend, Plaintiffs filed their cursory Motion to Amend in violation of the Court's Order.  As established herein, Plaintiffs' untimely Motion to Amend must be denied.

**II.     PLAINTIFFS' UNTIMELY MOTION MUST BE DENIED BECAUSE OF PLAINTIFFS' UNDUE DELAY, UNDUE PREJUDICE, AND THE FUTILITY OF THE PROPOSED AMENDMENTS.**

The right to amend is not automatic; a motion to amend must be denied when there is, among other things, undue delay, undue prejudice, or futility in the proposed amendments. *Bishop,* 172 Ariz. at 474 *citing In re Estate of Torstenson v. Valley Nat'l Bank,* 125 Ariz. 373,

---

[1] In fact, in response to Plaintiffs' request to depose the Bank's officers and directors, Hillcrest Bank offered to produce one or more Rule 30(b)(6) designees for deposition.  Plaintiffs never responded to Hillcrest Bank's offer.  Further, after noticing the depositions in an improper county other than where the witnesses reside (the Bank officers reside outside Arizona), Plaintiffs abruptly cancelled the depositions and did not communicate further regarding the depositions.  Thus, the Court-ordered deadline for seeking leave to amend already had passed, and the depositions could not (and did not) prevent Plaintiffs from complying with the Court's Order.

{02329.003/00179074.DOC /}

6

1   376-377, 609 P.2d 1073, 1073-1077 (Ariz. App. 1980); *see also Owen*, 133 Ariz. at 79. Here,

2   because of (1) Plaintiffs' undue delay and failure to diligently prosecute their case, (2) the

3   undue prejudice to Hillcrest Bank, and (3) the futility of Plaintiffs' proposed amendments,

4   Plaintiffs' untimely Motion to Amend must be denied.

   **A.   Plaintiffs Failed To Diligently Prosecute Their Case.**

5

6        As detailed above, Plaintiffs failed to make any effort to diligently prosecute this case.

7   The TRO lapsed. Plaintiffs failed to comply with any of the Court-ordered deadlines in the

8   Scheduling Order. Plaintiffs did not provide disclosures or conduct any written discovery.

9   Plaintiffs did not disclose expert witnesses, and did not respond to Hillcrest Bank's Request

10  for Production and Non-Uniform Interrogatories. Plaintiffs did not timely seek leave to

11  amend their Complaint. In fact, it was not until Hillcrest Bank filed its Motion to Dismiss – a

12  full month after the deadline for Plaintiffs to seek leave to amend – that Plaintiff filed its

13  Motion to Amend. **Tellingly, Plaintiffs have not offered *any* explanation for their undue**

14  **delay or for not timely filing a motion to amend in compliance with the Court's**

15  **Scheduling Order. That is because no legitimate reason exists.** Indeed, there is no telling

16  whether or when Plaintiffs might have sought leave to amend had Hillcrest Bank not timely

17  filed its Motion to Dismiss.

18        The Arizona Supreme Court has instructed,

19            Denial is deemed a proper exercise of the court's discretion when the
             amendment comes late and raises new issues requiring preparation for
20           factual discovery which would not otherwise have been necessitated nor
             expected, thus requiring delay in the decision of the case.
21

22  *Owen*, 133 Ariz. at 81, 649 P.2d at 284. Ironically, here, Plaintiffs brag about the 128 new

23  paragraphs of allegations that they seek to add to their 27 original allegations. Thus, as

24  recognized by the *Owens* Court, Plaintiffs' proposed amendment both (1) comes late and (2)

25  raises new issues for discovery which would not otherwise have been necessitated or

26  expected. Plaintiffs' Motion must be denied.

27        The foregoing facts are specific and not refutable. Consequently, Plaintiffs instead

ENGELMAN BERGER, P.C.
3636 North Central Avenue, Suite 700
Phoenix, Arizona 85012

offer only the vague statement that they have been "gathering as much information as possible about the relationship between [Hillcrest] and the owner/developer [of the golf course]" – **however, none of this "information" has been disclosed by Plaintiffs either pursuant to Rule 26.1 or pursuant to Hillcrest Bank's Non-Uniform Interrogatories or Requests for Production of Documents**. *See* Motion to Amend, p. 2, ll. 11-15. Thus, Plaintiffs' vague statement does not demonstrate diligent prosecution of their case; rather it demonstrates Plaintiffs' violation of their disclosure and discovery obligations.

Injunctive relief is an extraordinary and drastic remedy, *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997), which requires diligent prosecution. Plaintiffs, however, have not diligently prosecuted this case. Furthermore, Plaintiffs unduly delayed, beyond the Court-ordered deadline, in belatedly seeking leave to amend their Complaint. As such, their untimely Motion to Amend must be denied. *See Owen*, 133 Ariz. at 79, 649 P.2d at 282; *Bishop*, 172 Ariz. at 474-475.

**B.     The Untimely Amendment Would Cause Undue Prejudice to Hillcrest Bank.**

Plaintiffs' undue delay coupled with their proposed addition of 128 new paragraphs and four new causes of action constitutes undue prejudice. Prejudice is the "inconvenience and delay suffered when the amendment raises new issues" during the course of litigation. *Spitz*, 122 Ariz. at 531. Prejudice also occurs when the amendment "raises new issues requiring preparation for factual discovery which would not otherwise have been necessitated nor expected, thus requiring delay in the decision of the case." *Owen*, 133 Ariz. at 81, 649 P.2d at 284. Where the amendment seeks no more than to add a single new legal issue, Arizona courts are reluctant to deny a motion to amend. *Id.* 133 Ariz. at 80. However, when the motion to amend seeks to introduce multiple new legal issues requiring additional factual discovery, denial of a motion to amend is appropriate. *Id.* at 81.

Here, Plaintiffs' dilatory and extensive proposed amendments threaten serious, undue prejudice to Hillcrest Bank. Written discovery has already closed. Disclosure of expert

ENGELMAN BERGER, P.C.
3636 North Central Avenue, Suite 700
Phoenix, Arizona 85012

ENGELMAN BERGER, P.C.
3636 North Central Avenue, Suite 700
Phoenix, Arizona 85012

1   witnesses has passed, and the deadline to amend pleadings lapsed over two months ago.

2   Furthermore, the Complaint Plaintiffs filed over six months ago sought only the remedy of

3   injunctive relief.  It contained only 34 numbered paragraphs, and totaled only nine pages in

4   length.   In stark contrast, Plaintiffs' belated Motion to Amend proposes an Amended

5   Complaint that contains four new causes of action, 162 numbered paragraphs, and totals

6   approximately 28 pages in length.  In essence, the proposed Amended Complaint is a totally

7   new complaint and would create a totally new lawsuit.  As instructed by the courts in *Spitz*

8   and *Owen*, the proposed amended complaint would impose undue prejudice on Hillcrest Bank

9   by (1) raising numerous (128) new allegations, (2) asserting four brand new causes of action,

10  (3) requiring factual preparation which would not otherwise have been required, and (4)

11  requiring delay in the decision of the case.  *See Spitz*, 122 Ariz. at 531; *Owen*, 133 Ariz. at 81,

12  649 P.2d at 284.

13         Furthermore, Plaintiffs' lawsuit already has wrongfully delayed Hillcrest Bank's

14  statutory right to foreclose on its first position Deed of Trust for over six months.  Hillcrest

15  Bank's Deed of Trust partially secures the delinquent Thirty-One Million Dollar debt.  The

16  purpose of the Arizona Deed of Trust Act ("ADOTA") is to provide for expeditious

17  foreclosure proceedings so that lenders may have adequate security for loans made in

18  Arizona.  *LeDesma v. Pioneer Nat. Title Ins. Co.*, 129 Ariz. 171, 173, 629 P.2d 1007, 1009

19  (Ariz. App. 1981).

20         Finally, any additional delay also would impose a severe financial burden upon

21  Hillcrest Bank.  Specifically, as Hillcrest Bank previously advised this Court, Hillcrest Bank

22  funds the Receiver's operating deficiency each month to maintain the golf course at the

23  property.  The monthly deficiency paid by Hillcrest Bank averages in excess of $100,000 per

24  month, and the Receivership Report previously presented to this Court reflected an

25  approximately $130,000 monthly deficiency.  Thus, the delay caused by permitting Plaintiffs

26  to start the lawsuit all over again with 128 brand new paragraphs and four never-before-

27  asserted claims, would constitute severe financial prejudice to Hillcrest Bank.

{02329.003/00179074.DOC /}

9

ENGELMAN BERGER, P.C.
3636 North Central Avenue, Suite 700
Phoenix, Arizona 85012

Thus, the expansiveness of the 128 new paragraphs of allegations and four new causes of action, the resultant delay in the disposition of the lawsuit, and the resultant financial burden to Hillcrest Bank each, and all, dictate denial of Plaintiffs' untimely Motion to Amend because of the undue prejudice to Hillcrest Bank. *See Spitz*, 122 Ariz. at 531; *Owen*, 133 Ariz. at 81, 649 P.2d at 284.

## C.    Plaintiffs' Proposed Amendments Are Futile.

Leave to amend is properly denied for futility if the additional claims would not survive a dispositive motion. *Walls v. Ariz. Dep't of Pub. Safety,* 170 Ariz. 591, 597, 826 P.2d 1217, 1223 (Ariz. App .1991). Furthermore, the Arizona Supreme Court has instructed:

> Because Arizona courts evaluate a complaint's well-pled facts, **mere conclusory statements are insufficient to state a claim upon which relief can be granted. . . . a complaint that states only legal conclusions, without any supporting factual allegations, does not satisfy Arizona's notice pleading standard under Rule 8**.

*Cullen v. Auto-Owners Ins. Co.*, 218 Ariz. 417, 419, 189 P.3d 344, 346 (2008) (emphasis added). In other words, the proposed allegations must "set forth sufficient facts to establish a real dispute." *Yes on Prop 200 v. Napolitano*, 215 Ariz. 458, 471, 160 P.3d 1216, 1229 (Ariz. App. 2007). Here, however, the proposed Amended Complaint merely recites conclusory statements of the legal elements of the purported new causes of action. Plaintiffs fail to state any specific facts to substantiate the recited legal elements. Furthermore, the proposed claims are legally deficient under Arizona law. Consequently, Plaintiffs' proposed amendments would be futile and would not survive a motion to dismiss.

### 1.    Plaintiffs' Intentional Interference with Contract Claim Fails as a Matter of Law.

Plaintiffs' proposed Amended Complaint does not adequately plead a claim for intentional interference with contract.   The Arizona Supreme Court has identified the elements of an intentional interference claim as:

> (1) existence of a valid contractual relationship, (2) knowledge of the relationship on the part of the interferor, (3) intentional interference inducing or causing a breach, (4) resultant damage to the party whose relationship has been

{02329.003/00179074.DOC /}

ENGELMAN BERGER, P.C.
3636 North Central Avenue, Suite 700
Phoenix, Arizona 85012

1    disrupted, and (5) that the defendant acted improperly.

2    *Wells Fargo Bank v. Arizona Laborers, Teamsters & Cement Masons Local No. 395 Pension*

3    *Trust Fund*, 201 Ariz. 474, 493, 38 P.3d 12, 31 (2002).

4        Here, Plaintiffs' proposed Amended Complaint does not identify any contractual

5    relationship that forms the basis of their claim. Rather, Plaintiffs offer only the conclusory

6    statement that "[t]here was a contractual relationship." Second, Plaintiffs do not allege that

7    any third party breached the unidentified "contractual relationship," or any facts establishing

8    such a breach. Third, Plaintiffs do not allege that Hillcrest Bank induced or caused any third

9    party to breach the unidentified contractual relationship, or any facts establishing such

10    inducement or causation. Fourth, Plaintiffs do not allege that Hillcrest Bank intended to cause

11    a third party to breach the contractual relationship, or any facts establishing such intent.

12    Finally, Plaintiffs do not allege that Hillcrest Bank acted "wrongfully" or any facts

13    establishing such impropriety. Thus, Plaintiffs have failed to validly plead a claim for

14    intentional interference with contract against Hillcrest Bank, and Plaintiffs' proposed

15    amendment would be futile.

16        Furthermore, it appears that one of the Plaintiffs entered into a purchase contract with

17    the developer, Quintero, to buy a lot. Plaintiffs had been doing deals with Quintero years

18    before Hillcrest Bank entered into its loan agreement with Quintero. Obviously, that purchase

19    contract between Plaintiff and Quintero closed many years ago. Plaintiffs' present gripe that

20    they cannot develop or resell that lot does not state a claim against Quintero for breach of the

21    purchase contract, and in no way states a cause of action against Hillcrest Bank for

22    interference with that purchase contract. Indeed, keeping things in perspective, Quintero

23    breached its $31 million dollar loan agreement with Hillcrest Bank and then filed bankruptcy.

24    Thus, Hillcrest Bank is simply attempting to foreclose on its real property security and

25    recover a portion of the $31 million debt owed on the loan.

26        Thus, Plaintiffs have failed to sufficiently plead a claim against Hillcrest Bank for

27    intentional interference with contractual relations in their proposed amended Complaint, and

{02329.003/00179074.DOC /}

11

1  as such their request for leave to so amend their Complaint would be futile.  Plaintiffs'

2  Motion to Amend must, therefore, be denied. *Bishop,* 172 Ariz. at 474-475.

3              **2.     Plaintiffs' "Aiding and Abetting" Claims Fail as a Matter of Law.**

4         Plaintiffs' proposed Amended Complaint also fails to state valid claims for "Aiding

5  and Abetting."  Plaintiffs allege that they loaned Quintero $200,000 prior to December 31,

6  2003, loaned McClung $400,000 on December 18 and 19, 2004, and purchased a charter

7  membership in the golf club on June 30, 2004.  Plaintiffs allege that Quintero and McClung

8  did not repay these loans/investments, and pray that Hillcrest Bank be required to reimburse

9  Plaintiffs on these deals.  Plaintiffs' Aiding and Abetting claims fail to state claims upon

10  which relief can be granted for numerous reasons.  First, Plaintiffs made their

11  loans/investments up to *two (2) years before* Hillcrest Bank made its Construction Loan to

12  Quintero.  Therefore, Hillcrest Bank could not have "aided and abetted" the Plaintiffs'

13  inducement into those deals.  Second, Plaintiffs' attempt to re-cast their breach of contract

14  claims as tort claims would be barred by the Economic Loss Doctrine. *Flagstaff Affordable*

15  *Housing,* 223 Ariz. at 323, 223 P.3d at 667 (The economic loss rule is "common law rule

16  limiting a contracting party to contractual remedies for the recovery of economic losses

17  unaccompanied by physical injury to persons or other property." "Economic loss," as we use

18  the phrase, refers to pecuniary or commercial damage, including any decreased value or

19  repair costs for a product or property that is itself the subject of a contract between the

20  plaintiff and defendant, and consequential damages such as lost profits.).  Third, Plaintiffs'

21  claim for negligence against McClung would be barred by the two-year statute of limitations.

22  *See* A.R.S. §12-542.  Fourth, Plaintiffs' claim for fraud against McClung would be barred by

23  the three-year statute of limitations. *See* A.R.S. §12-543.  Fifth, "a breach of contract is not

24  fraud." *Trollope v. Koerner,* 106 Ariz. 10, 19, 470 P.2d 91, 100 (1970).  Sixth, because

25  "aiding and abetting" liability requires intentional misconduct and scienter, Arizona does not

26  recognize a claim for "aiding and abetting" negligence. *See Wells Fargo,* 201 Ariz. at 485.

27  Seventh, Plaintiffs have not pleaded a fraud claim against Quintero or McClung with

ENGELMAN BERGER, P.C.
3636 North Central Avenue, Suite 700
Phoenix, Arizona 85012

{02329.003/00179074.DOC /}

12

specificity. *Trollope*, 106 Ariz. at 19, 470 P.2d at 100 (Fraud was not "pleaded with particularity in plaintiffs' complaint, as required by Rule 9(c) of the Rules of Civil Procedure, 16 A.R.S. It is worth bearing in mind that charging fraud is a serious matter, and it should never be alleged routinely, as a makeweight or as a hoped-for panacea for an otherwise imperfectly perceived remedy.). Eighth, Hillcrest Bank had no legal obligation to loan Quintero more money than it did, or to increase the amount of the Construction Loan following the maturity of the Loan and Quintero's default. In fact, under Plaintiffs' theory of liability, Plaintiffs themselves would be liable for not loaning Quintero more money than they did and for charging Quintero usurious rates of up to 24% per annum.

Thus, Plaintiffs have failed to sufficiently plead a claim against Hillcrest Bank for "Aiding and Abetting" and such claims otherwise would be barred by the statutes of limitations. As such their request for leave to so amend their Complaint would be futile, and Plaintiffs' Motion to Amend must, therefore, be denied. *Bishop,* 172 Ariz. at 474-475.

### 3.    Plaintiffs' "Civil Conspiracy" Claim Fails as a Matter of Law.

Finally, Plaintiffs' proposed Amended Complaint fails to state a valid claim for "Civil Conspiracy." First, Plaintiffs' proposed amended Complaint includes only one allegation in its "Civil Conspiracy" claim, namely that "Robert Sperry, Jeffrey Wheeler and Jon Forgey were all corporate officers of Hillcrest. Each and all of these individuals agreed with McClung to accomplish an unlawful purpose, as described above or to accomplish a lawful object by unlawful means, as described above." However, "a complaint that states only legal conclusions, without any supporting factual allegations, does not satisfy Arizona's notice pleading standard under Rule 8." *Cullen,* 218 Ariz. at 419, 189 P.3d at 346; *Dube v. Likins,* 216 Ariz. 406, 424, 167 P.3d 93, 111 (Ariz. App. 2007) (a plaintiff cannot simply rely on "labels and conclusions, and a formulaic recitation of the elements of a cause of action."). Second, Arizona does not recognize a claim for "Civil Conspiracy" in the abstract, and Plaintiffs have not identified any underlying tort about which the Bank allegedly conspired. *See Wells Fargo*, 201 Ariz. at 499; *see also Dube,* 216 Ariz. at 413 (for there to be liability

ENGELMAN BERGER, P.C.
3636 North Central Avenue, Suite 700
Phoenix, Arizona 85012

{02329.003/00179074.DOC /}

13

ENGELMAN BERGER, P.C.
3636 North Central Avenue, Suite 700
Phoenix, Arizona 85012

based on a civil conspiracy, two or more people must agree to accomplish a particular tortuous act); *Rowland v. Union Hills Country Club,* 157 Ariz. 301, 306, 757 P.2d 105, 110 (1988). Third, the economic loss doctrine prohibits Plaintiffs from attempting to re-cast their breach of contract claims against McClung as tort claims. *Flagstaff,* 223 Ariz. at 323, 223 P.3d at 667. Fourth, Plaintiffs' claims for negligence or fraud would be barred by the two and three year statutes of limitations. Fifth, if Plaintiffs intended the civil conspiracy claim to apply to their interference with contractual relations claim, an individual or an entity cannot interfere with its own contract. *Pasco Indus., Inc. v. Talco Recycling, Inc.,* 195 Ariz. 50, 53, 985 P.2d 535, 538 (Ariz. App. 1998). As such, it would be impossible for Quintero to conspire with Hillcrest Bank to interfere with Plaintiffs' alleged investment/loan agreements.

Thus, Plaintiffs' proposed claim for "Civil Conspiracy" fails to state a claim for which relief can be granted. Plaintiffs' request for leave to so amend their Complaint would be futile, and Plaintiffs' Motion to Amend must be denied. *Bishop,* 172 Ariz. at 474-475.

## III.   PLAINTIFFS DID NOT ESTABLISH THE GOOD CAUSE NECESSARY TO AMEND THE SCHEDULING ORDER.

While Rule 15 generally governs an attempt to amend a complaint *before* a Rule 16 Scheduling Order is entered, persuasive federal law dictates that Rule 16 requires a movant to demonstrate good cause *after* a Scheduling Order is entered. *Cano,* 236 F.R.D. at 439 *citing Johnson v. Mammoth Recreations, Inc.,* 975 F.2d 604, 608 (9th Cir.1992). The purpose of this rule is ensure that scheduling orders and their deadlines are given meaning so that there is justification for Rule 16(b) to exist in the first place. *Gestetner Corp. v. Case Equipment Co.,* 108 F.R.D. 138, 141 (D. Me. 1985) *citing Forstmann v. Culp,* 114 F.R.D. 83, 85 (M.D.N.C. 1987). The requisite good cause "primarily considers the diligence of the party seeking the amendment." *Cano,* 236 F.R.D. at 439. "If the party seeking to amend were unable to comply with the deadline despite that party's diligence, the Court may modify the schedule." *Id.* **"The inquiry ends, however, if the party seeking the amendment has not shown diligence."** *Id.*(emphasis added). "The existence of prejudice to the opposing party might

1    "supply additional reasons to deny a motion." *Id.*

2           Here, Plaintiffs have not demonstrated diligence.  Plaintiffs did not comply with any of

3    the deadlines established in the Court's Scheduling Order, including the disclosure deadline,

4    written discovery deadline, expert witness disclosure deadline, and amendment of pleadings

5    deadline.  Nor did Plaintiffs seek an extension of deadline to seek to amend pleadings.  Nor

6    have Plaintiffs demonstrated that compliance with the deadline was not possible despite their

7    diligence.  Rather, Plaintiffs simply ignored this case until Hillcrest Bank filed its Motion to

8    Dismiss.  Thus, Plaintiffs have failed to establish good cause why they should be permitted to

9    file a motion to amend in violation of this Court's March 12, 2010 Scheduling Order.

10   Therefore, as directed by the Honorable Roslyn Silver in *Cano*, "the inquiry ends," and

11   Plaintiffs' untimely Motion must be denied.

12   **IV.   CONCLUSION AND RELIEF REQUESTED.**

13          Plaintiffs did not comply with any of the deadlines set forth in the Court's March 12,

14   2010 Scheduling Order, including the deadline to seek leave to amend their Complaint.  In

15   fact, Plaintiffs ignored this lawsuit until Hillcrest Bank filed its Motion to Dismiss.

16   Furthermore, Plaintiffs' proposed amended complaint with 127 paragraphs of new factual

17   allegations and four imaginative new causes of action does not constitute an amendment of

18   their prior Complaint; bur rather would constitute a completely new lawsuit.  Thus, Plaintiffs'

19   untimely Motion to Amend must be denied because of (1) Plaintiffs' undue delay, (2) the

20   undue prejudice to Hillcrest Bank, and (3) the futility of the proposed amendments, any one

21   of which is sufficient to require denial of the Motion.  *Bishop*, 172 Ariz. at 474-475, 837 P.2d

22   at 1209-1210.  Furthermore, Plaintiffs' untimely Motion must be denied because Plaintiffs

23   have not demonstrated that they acted diligently and that it was not possible to comply with

24   this Court's Scheduling Order despite their diligent efforts to do so.  *Cano*, 236 F.R.D. at 439.

25

26   / / /

27

ENGELMAN BERGER, P.C.
3636 North Central Avenue, Suite 700
Phoenix, Arizona 85012

{02329.003/00179074.DOC /}

15

DATED this 20th day of July, 2010.

ENGELMAN BERGER, P.C.


By____/s/ Kevin M. Judiscak #012764____
     Kevin M. Judiscak
     Scott W. Hulbert
     3636 North Central Avenue, Suite 700
     Phoenix, Arizona 85012
     Attorneys for Hillcrest Bank


Copy of the foregoing
mailed this 20th day
of July, 2010 to:

J. Jeffrey Coughlin
J. Jeffrey Coughlin PLLC
114 S. Pleasant Street
Prescott, AZ  86303
Attorneys for Plaintiffs


____/s/ Linda Saperstein____

ENGELMAN BERGER, P.C.
3636 North Central Avenue, Suite 700
Phoenix, Arizona 85012

{02329.003/00179074.DOC /}

16

# NO. "28"

Michael K. Jeanes, Clerk of Court
*** Electronically Filed ***
Angelica Mejia
Filing ID 652784
8/2/2010 3:52:48 PM

J. Jeffrey Coughlin (013801)
**J. JEFFREY COUGHLIN PLLC**
114 S. Pleasant Street
Prescott, Arizona 86303
Telephone: (928) 445-7137
Facsimile: (866) 890-8989
j.coughlin@azbar.org
Attorneys for Plaintiffs

## IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

## IN AND FOR THE COUNTY OF MARICOPA

| | |
|---|---|
| PAUL VAN WEELDEN AND KAREN VAN WEELDEN, husband and wife; Paul Van Weelden, as Trustee for THE VAN WEELDEN FAMILY TRUST. <br><br> Plaintiffs, <br><br> vs. <br><br> HILLCREST BANK, a Kansas banking corporation, <br> Defendants. | CASE NO. CV 2010 000896 <br><br> **REPLY IN SUPPORT OF MOTION TO AMEND VERIFIED COMPLAINT** <br><br> **(Oral Argument Requested)** |

Plaintiffs (Van Weelden), by and through undersigned counsel, hereby submit their

Reply In Support of their motion for leave to amend their Verified Complaint pursuant to Rule

15(a), Arizona Rules of Civil Procedure ("A.R.C.P.") for the purpose submitting additional

counts against the Defendant (Hillcrest Bank). The proposed First Amended Complaint is

attached to the Motion to Amend the Verified Complaint as Exhibit A.

**I.     FACTUAL AND PROCEDURAL BACKGROUND**

On February 5, 2010 this Court issued a temporary restraining order, stating

among other things:

IT IS HEREBY ORDERED that a temporary retraining order be issued

immediately, retraining Defendant, Defendant's attorneys, officers, agents, servants, employees,

-1-

1  and any and all other persons in active concert or participation with them from conducting a

2  trustee's sale or otherwise foreclosing upon the property described in Exhibit A attached hereto

3  and incorporated herein by this reference prior to the completion of the litigation of the above-

4  captioned matter.

5        IT IS FURTHER ORDERED that, unless further extended by Order of this Court, this

6  **Temporary Restraining Order shall remain in full force and effect pending a hearing upon**

7  **and disposition of Plaintiffs' request for a preliminary injunction.** (emphasis added).

8

9        At the time this Court issued the Order, the case was relatively simple. It was Van

10  Weeldens' request for injunctive relief because Hillcrest Bank was about to conduct a trustee's

11  sale impacting the Van Weeldens. This Court ordered that the temporary order would remain in

12  effect until a hearing on the preliminary injunction Van Weeldens requested. At the time this

13  Court issued the restraining order, it also requested the parties confer and produce a joint

14  scheduling order by March 5, 2010.

15        Contrary to Hillcrest Bank's recitation of the sequence of events, on March 4, 2010 at

16  10:32 am, counsel for Van Weeldens emailed a proposed joint scheduling order to counsel for

17  Hillcrest Bank reminding him that the order was due the next day by 5:00pm and that if he had

18  any modifications, to communicate them as soon as possible. Counsel for Hillcrest Bank did not

19  communicate any modifications on March 4, 2010. Instead, he requested that counsel for Van

20  Weeldens call him in the morning, which he did. During the telephone conversation at

21

22  approximately 9:00 am, counsel discussed the order and counsel for Hillcrest Bank would make

23  some modifications and send them to counsel for Van Weeldens for review

24        By 3:47pm, counsel for Van Weeldens still had not received anything from counsel for

25  Hillcrest Bank so he emailed him, reminding him that the order was due at 5:00 pm and inquired

-2-

as to its whereabouts. Counsel for Hillcrest Bank responded that the order would be there in ten minutes. Not believing that this would occur and wanting to file an order timely, counsel for Van Weeldens submitted a unilateral order.

The dates set forth in the scheduling order were short because the only issue at that time was injunctive relief. When counsel for Van Weeldens requested the opportunity to take various key depositions in a letter dated May 3, 2010, counsel for Hillcrest Bank refused to make them available. After weeks of attempts to persuade counsel for Hillcrest Bank that the depositions were reasonable and necessary, and after they had been gathering more information from various individuals concerning Hillcrest Bank's activities, counsel for Van Weeldens began working on an amended complaint containing many more allegations and claims against the bank and involving the very individuals whom Van Weeldens wanted to depose. Hillcrest Bank filed its Motion to Dismiss and Van Weeldens filed their Motion to Amend their complaint.

II.    **ARGUMENT**

**A. Nearly all courts agree that pretrial orders may be amended or modified in the interests of justice**

Van Weeldens' proposed amended complaint asserts facts which have been discovered through no help of Hillcrest Bank in this case. There are multiple proceedings underway which involve Hillcrest Bank directly and indirectly. Gary McClung, the managing member of Quintero Golf and Country Club and close friend of the officials at Hillcrest Bank, is under investigation by the United States Department of Justice. Mr. McClung is also being

1   investigated by the bankruptcy trustee in his bankruptcy proceeding because of the phenomenal

2   sums of money he has handled and which have disappeared over the past decade.  Since the

3   issuance of the restraining order in this case, the Arizona Department of Real Estate (ADRE)

4   issued an order summarily suspending Quintero's Public Report.  ADRE found that Quintero

5   failed to complete roads by the date stated in the Public Reports as required by A.R.S.§32-

6   2181(A)(18) and A.A.C. R4-28-B1203.  ADRE found that the failure of the roads to be

7   completed constituted an immediate threat to the public health, safety, and welfare warranting

8   immediate suspension of the Public Reports.

9

10      Hillcrest was aware that the roadways had not been completed and nevertheless decided

11  to halt all funding for all construction.  Hillcrest was aware that the roadways had not been

12  completed and nevertheless loaned additional monies to McClung in order that its own debt

13  service would continue.  The Quintero properties subject to the Hillcrest loan cannot be sold

14  while the Public Report is suspended.  Van Weeldens' proposed amended complaint delves into

15  the very issues addressed by the ADRE.  This case is only six months old.  To amend the

16  pleadings at such an early stage is hardly unusual.

17      Amending the pleadings will necessary cause any pretrial orders to be extended.  In

18  *Harbel Oil Company v. Steele*, 1 Ariz. App. 315, 402 P. 2d 436 (1965), the Court of Appeals

19  discussed amended pleadings and modifying pretrial orders.  The case involved an amendment

20  which occurred after having been reviewed by the Court of Appeals and the Supreme Court and

21  following a mandate:

22

23          'The trial judge clearly has the authority to amend or modify a pre-trial
            order if this becomes necessary in the interest of justice. (Citations
24          omitted.) To hold otherwise would make a straight-jacket out of a
            procedural reform which was intended to provide a useful device in
25          the court's search for truth.' Scott v. Spanjer Bros., Inc., 298 F.2d 928
            at 931 (1962).

-4-

*Id.* at 317, 402 P. 2d at 438.  The court held that under rules 13, 15(a) and 16(a) a trial court

may permit the amendment or enlargement of the pleadings after the pretrial and after a new

trial has been ordered on appeal when in the court's discretion the ends of justice so require. *Id.*

> 'The modern Rules of Civil Procedure were intended to promote the
> administration of justice by removing the technical requirements of
> common law pleading. (Citations omitted.) In keeping with this spirit
> the rule under consideration, Rule 15(a) regarding 'Leave to amend
> shall be freely given of liberality. It specifically states that 'Leave to
> amend shall be freely given when justice requires.' Furthermore, this
> Court has stated that amendments of pleadings should be allowed with
> great liberality to the end that every cause of action shall be decided
> on its merits whenever possible without prejudice to the other party.'

*Id.* (quoting Frank v. Solomon, 94 Ariz. 55, 57, 381 P.2d 591, 592 (1963)).

In the present case, the amount of discovery relative to the initial complaint is miniscule

compared to that which will be necessary if the motion to amend the complaint is granted.  There

are clearly more claims to address and facts to develop.  Although, as argued in the *Harbel* court,

above, pretrial orders generally control the course of an action, "Rule 16 ... and nearly all courts

agree that a pre-trial order may be amended or modified in the interest of justice at or before the

trial". 1 Ariz. App. 316-317, 402 P. 2d 437-438.

The Motion to Amend should be granted.  The Motion to Dismiss should be considered

moot.  Van Weeldens request that this Court modify its pretrial scheduling order to accommodate

the time necessary to litigate the new allegations against Hillcrest Bank.


**B.  Van Weeldens' proposed amended complaint does not cause any prejudice to**

**Hillcrest Bank.**

1    The thrust of Hillcrest Bank's prejudice argument seems to be that there are too many

2  detrimental facts for it to defend against.  Hillcrest Bank argues that various deadlines have

3  passed and it should only have to deal with thirty-four allegations rather than one hundred and

4  twenty-eight (actually, there are one hundred sixty-two).  This is exactly the straight-jacket

5  approach to civil procedure that the *Harbel* court, above denounced.  If every defendant in every

6  lawsuit could avoid defending against multiple counts and detrimental facts, because of the

7  financial burden, litigation would cease to exist.  Hillcrest Bank argues that "[I]n essence, the

8  proposed Amended Complaint is a totally new complaint and would create a totally new

9  lawsuit".  That's what amended pleadings do; they add to the existing pleading.

10

11    Van Weeldens are accusing Hillcrest Bank of significant financial misconduct.  Some

12  pertinent examples of such misconduct are alleged in the following portions of the proposed

13  amended complaint:

14

15    61.  Despite knowing that there were millions of Dollars of work to be
         completed to conclude the project and that some of the work to be
16         completed was infrastructure, Hillcrest loaned additional funds to
         McClung under the guise that it would be used for the construction
17         of the Quintero Clubhouse.  In fact, the millions of Dollars Hillcrest
         loaned to McClung, he used to service the Quintero debt to
18         Hillcrest.

19    62.  Hillcrest did this to avoid the Quintero loan appearing in Hillcrest's
         books (and scrutinized by the FDIC) as a non-performing loan.
20

21    63.  Hillcrest's conduct as described above constitutes the following
         unsafe or unsound banking practices:
22
           a.  Operating with a board of directors that has failed to provide
23         adequate supervision over and direction to the management of the
         Bank.
24
           b.  Operating with management whose policies and practices are
25         detrimental to the Bank.

-6-

c. Operating with an inadequate level of capital protection for the kind and quality of assets held and/or appropriate to the risk inherent in the activities engaged in by the Bank.

d. Engaging in imprudent lending and lax collection practices.

e. Operating with an excessive level of adversely classifies loans or assets, and/or delinquent loans and/or non-accrual loans.

f. Failing to properly identify risk and assess the level of risk in problem loans.

g. Operating with an inadequate allowance for loans and lease losses for the volume, kind, and quality of loans and leases held, and/or failing to make provision for an adequate allowance for possible loan and lease losses.

h. Operating with inadequate liquidity and an excessive reliance on wholesale funding in light of the bank's assets and liability mix.

i. Operating with inadequate earnings.

These are precisely the findings that the FDIC determined in 2009. As the present case has developed and Van Weeldens have gathered information concerning Hillcrest Bank's nefarious activity, they have been able to connect the dots. The ADRE's summary suspension of the Quintero Public Report is another one of the dots connecting Hillcrest Bank with Quintero and McClung. Hillcrest Bank's asserted prejudice pales in comparison to the scores of millions of dollars lost by investors in Quintero properties. Furthermore, the Thirty-one Million Dollar debt which Hillcrest Bank refers to is worth a fraction of that in today's market. The bank would be fortunate if any of the real estate could be sold and if it was, it might be worth a total of four million dollars.

Hillcrest Bank claims that Plaintiffs' lawsuit has **wrongfully** delayed its right to foreclose on its first position deed of trust. This Court restrained Hillcrest Bank from proceeding with the trustee's sale, so in essence, **Hillcrest Bank is saying that this Court's wrongful conduct has**

**delayed the foreclosure.** This Court must not have thought so when it issued the restraining order. The Court of Appeals must not have thought so when it declined to review Hillcrest Bank's special action to overturn this Court's decision.

Hillcrest Bank claims that having to start all over again with "128 brand new paragraphs and four **never-before-asserted claims**, would constitute severe financial prejudice to Hillcrest Bank"(emphasis added). Yet, at the outset of Hillcrest Bank's Response to Van Weeldens' Motion to Amend, it states "[I]t is further clear that Plaintffs simply block-copied allegations from a complaint lodged in a Missouri state court lawsuit". Hillcrest Bank has seen such assertions before. The FDIC and multiple investors all have been making similar assertions against Hillcrest Bank. Other agencies such as the Kansas Office of the Banking Commissioner and the ADRE involve investigations which either directly or indirectly include Hillcrest Bank. The allegations in Van Weeldens' proposed amended complaint were not necessarily known by Van Weeldens, but Hillcrest Bank was a major participant in the wrongdoing and intimately aware of the consequences of its actions.

Interestingly, one of the bases for Hillcrest Bank's Motion to Dismiss was that there were no substantive claims asserted in the original Verified Complaint; that the complaint only alleged a remedy. The proposed amended complaint ameliorates the bank's concern. There is no prejudice to Hillcrest Bank.

## C. None of Van Weeldens' proposed amendments is futile

Van Weeldens asserted over one hundred factual allegations before asserting the additional claims in their proposed amended complaint. These factual allegations were reasserted in each of the additional claims. On the basis of the factual allegations and the

additional allegations in each count, Van Weeldens have set forth sufficient facts to survive a dispositive motion. It is worth noting that there is no dispositive motion addressing the amended complaint, only the original complaint.

Contrary to Hillcrest Bank's claim that the proposed amended complaint only makes conclusory statements of legal elements, a review of the allegations dispels such a notion.

## 1. Intentional Interference with contract

Hillcrest Bank claims that Van Weedens do not identify any contractual relationship to support their Intentional Interference with Contract claim. Perhaps Hillcrest Bank overlooked allegation #128 which states there was a contractual relationship between the Quintero entities and Plaintiffs when Plaintiffs purchased land in Quintero. This is a factual statement which alleges the **existence of a contract**.

Perhaps Hillcrest Bank overlooked allegation #129 which states that Hillcrest was aware of the contractual relationship between the Quintero entities and Plaintiffs when the purchase proceeds from the sale were applied to the Hillcrest loan balance. This is a factual statement which alleges the **knowledge** of the contractual relationship on the part of the interferer.

Perhaps Hillcrest Bank overlooked allegation ##130 and 131 which state Hillcrest knew that McClung had requested the letters of credit be cancelled and knew that there was infrastructure that had not been completed and with this knowledge, Hillcrest directed PDG to halt the project, thus severing Plaintiff's ability to develop or resell their land. This is a factual statement which alleges an **intentional interference inducing or causing a breach**.

Perhaps Hillcrest Bank overlooked allegation # 132 which states Plaintiffs have been damaged as a result of Hillcrest's improper actions. This is a factual allegation which alleges

**resultant damage** to the party whose relationship has been disrupted as a result of Hillcrest

Bank's improper actions.

### 2.  Aiding and abetting

Hillcrest Bank raises eight questions as to the validity of the aiding and abetting claims.

Van Weeldens respond to those questions in the order they were raised.  First, Hillcrest Bank

misconstrues this claim.  It is not the fact that Quintero solicited loans from Van Weeldens or

that the bank provided construction funding to Quintero, it is what Hillcrest Bank, McClung and

Quintero did following those events.  Paragraphs 133 through 146 of the proposed amended

complaint contain the factual allegations supporting the aiding and abetting claims.  Hillcrest

Bank is certainly entitled to raise factual disputes as to what occurred and when, but for the

purpose of objecting to a motion to amend a pleading, Rule 15 and the case law interpreting it

should control (leave to amend **shall** be freely given when justice requires) (emphasis added).

Second, there are two very separate claims concerning aiding and abetting in the

proposed amended complaint.  McClung was negligent in his management of Quintero and

Hillcrest Bank knew it.  Paragraphs 141 through 146 provide the detail:

> 141.   McClung actually made the misrepresentations alleged herein, failed
> to disclose pertinent information to Plaintiffs and failed to manage Quintero
> with the ordinary care a reasonable person would, he acted/failed to act for
> his personal gain and is responsible for the damages suffered by Plaintiffs
> and, because he has used Quintero as his alter ego, McClung is individually
> liable for his actions.

> 142.   Hillcrest was aware of McClung's tortuous conduct and that it would
> constitute a breach of his obligations to Plaintiffs.

> 143.   Hillcrest substantially assisted or encouraged McClung in the
> achievement of the breach of his obligations by only agreeing to fund the
> development at a level substantially below the threshold necessary to
> complete the project.

-10-

144.    Hillcrest substantially assisted or encouraged McClung in the achievement of the breach of his obligations because Hillcrest was aware of the financial instability of Old Standard and WULA, failed to conduct appropriate due diligence, insisted on worthless personal guarantees by McClung and his wife without requesting any financial verification of McClung's net worth and knew that McClung was in financial dire straits.

145.    Hillcrest substantially assisted or encouraged McClung in the achievement of the breach of his obligations by insisting on a significant reduction in the funding of the lines of credit and requiring McClung to be responsible for privately funding substantial portions of the development when it knew he was financially incapable of doing so.

146.    Hillcrest substantially assisted or encouraged McClung in the achievement of the breach of his obligations by halting the funding of the Quintero development, knowing that the infrastructure was incomplete in violation of the Public Report and then loaning McClung Millions more for the sole purpose of servicing the debt on an otherwise non-performing loan.

Van Weeldens have pled the facts necessary to sustain an aiding and abetting count.

Third, the statute of limitations for negligence is two years from the discovery of the negligent conduct. When Van Weeldens began discovering McClung and Quintero's negligent conduct, they filed an amended complaint identifying some of the negligent and fraudulent conduct against those defendants in a separate action. That amended complaint was filed in April 2009 and did not include any allegations against Hillcrest Bank because the collusion had not yet been discovered. Discovery of conduct for the purposes of a statute of limitation defense is factual. If this Court sustains a defendant's objection to a motion to amend pleadings on the basis of a conclusory assertion of a statute of limitation defense, it would deprive litigants the opportunity of addressing when the discovery of the conduct occurred. The statute of limitations claim is lacks merit at this time.

Fourth, A.R.S.§12-543(3) states that the three year statute of limitations applies to claims "for relief on the ground of fraud or mistake, which cause of action shall not be deemed to have

1   accrued until the discovery by the aggrieved party of the facts constituting the fraud or mistake".

2   As noted above, Van Weeldens only recently discovered Hillcrest Bank's inculpating conduct

3   and as a result, the statute of limitation defense at most, does not apply and at the least, is a

4   factual issue not subject to summary disposition at this time.

5          Fifth, Van Weeldens have appropriately pled the facts and elements of aiding and abetting

6   fraudulent misrepresentation.  As stated in *Wells Fargo v. Arizona Laborers, Teamsters & Cement*

7   *Masons Local No. 395 Pension Trust Fund,* 201 Ariz. 474, 210, 38 P. 3d 12, 22 (2002), claims of

8   aiding and abetting tortious conduct require proof of three elements:

9

10

11          (1) the primary tortfeasor must commit a tort that causes injury to the

12          plaintiff

13          (2) the defendant must know that the primary tortfeasor's conduct

14          constitutes a breach of duty; and

15          (3) the defendant must substantially assist or encourage the primary

16          tortfeasor in the achievement of the breach (quoting Gomez v. Hensley, 145

17          Ariz. 176, 178, 700 P.2d 874, 876 (App. 1984)(citing RESTATEMENT

18          (SECOND) OF TORTS § 876(b)).

19          Van Weeldens have pled the necessary facts to support aiding and abetting liability for

20   fraudulent misrepresentation in paragraphs 147 through 160 of their proposed amended

21   complaint.  Hillcrest Bank must be misreading the claim.

22          Sixth, although Hillcrest Bank cites the *Wells Fargo* case, above at 485 for authority that

23   Arizona does not recognize a claim for aiding and abetting negligence, Van Weeldens are unable

24   to locate such a statement in the case.

25

-12-

Seventh, contrary to Hillcrest Bank's assertion that Van Weeldens have not pled fraud with the requisite specificity, a review of paragraphs 147 through 160 in the proposed amended complaint reveals the contrary.

Eighth, Hillcrest Bank again misconstrues the claim. It is not what Hillcrest Bank did during its original funding years, it is what Hillcrest Bank did when McClung and Quintero were developing and selling the properties as alleged in the general allegations along with paragraphs 147 though 160 of the proposed amended complaint.

### 3. Civil conspiracy

"For a civil conspiracy to occur two or more people must agree to accomplish an unlawful purpose or to accomplish a lawful object by unlawful means, causing damages." Baker v. Stewart Title & Trust of Phoenix, 197 Ariz. 535, 542, 5 P.3d 249, 256 30 (App. 2000) (quoting Rowland v. Union Hills Country Club, 157 Ariz. 301, 306, 757 P.2d 105, 110 (1988)); see also RESTATEMENT (SECOND) OF TORTS § 876. In paragraph 162, Van Weeldens alleged "Robert Sperry, Jeffrey Wheeler and Jon Forgey were all corporate officers of Hillcrest. Each and all of these individuals agreed with McClung to accomplish an unlawful purpose, as described above or to accomplish a lawful object by unlawful means, as described above". The proposed amended complaint is replete with allegations identifying the culpable individuals at Hillcrest Bank, the unlawful purposes or the unlawful object by unlawful means by which those individuals acted and the damages they caused. Van Weeldens incorporated 160 allegations into their count for civil conspiracy.

Interestingly, Hillcrest Bank initially complained in its Motion to Dismiss that there were not any substantive allegations or causes of action in the Verified Complaint. In its Objection to the Motion to Amend the Verified Complaint, the bank complains that there were too many new

allegations for it to defend, yet when Van Weeldens avoided repetition of all the claims supporting civil conspiracy by reasserting them in paragraph 161, Hillcrest Bank now complains that the method of pleading becomes conclusory and "formulaic".

Van Weeldens have appropriately pled the facts and legal elements of civil conspiracy, so as to avoid a dispositive motion and at the very least to survive an objection to a motion to amend the pleadings.

### III.    CONCLUSION

This Court clearly has the authority to amend or modify a pre-trial order if it becomes necessary in the interest of justice. Amendments of pleadings should be liberally allowed so that every cause of action can be decided on its merits whenever possible without prejudice to the other party. The only prejudice to Hillcrest Bank is that it now faces its day of reckoning by having to explain its significant financial misconduct. This Court issued a restraining order on the basis of a fraction of the allegations in the proposed amended complaint. The Court of Appeals refused to review that decision. There is substantially more and good cause now for allowing Van Weeldens to amend their complaint. None of the claims Van Weeldens raise in their proposed amended complaint is futile as all of them are supported by factual allegations and legally sufficient causes of action. For these reasons and those set forth in their Motion to Amend the Verified Complaint, Van Weeldens urge the Court to grant their motion. The Motion to Dismiss should be considered moot. Van Weeldens request that this Court modify its pretrial scheduling order to accommodate the time necessary to litigate the new allegations against Hillcrest Bank.

RESPECTFULLY SUBMITTED this 2d day of August, 2010.

**J. JEFFREY COUGHLIN PLLC**

By:  /s/ J. Jeffrey Coughlin
        J. Jeffrey Coughlin

///

///

ORIGINAL e-filed
this 2d day of August, 2010 with:

Clerk of Court
Maricopa County Superior Court
201 West Jefferson – 7D
Phoenix, Arizona 85003

COPY of the foregoing
mailed same date to:

Kevin M. Judiscak
Scott Hulbert
Engelman Berger, P.C.
3636 North Central Avenue, Ste. 700
Phoenix, AZ 85012
Attorneys for Defendant Hillcrest Bank

By:  AJ Nelson

-15-

# NO. "29"

Michael K. Jeanes, Clerk of Court
*** Electronically Filed ***
08/11/2010 8:00 AM

SUPERIOR COURT OF ARIZONA
MARICOPA COUNTY

CV 2010-000896                                                  08/06/2010


                                                 CLERK OF THE COURT
HONORABLE EILEEN S. WILLETT                           J. Rutledge
                                                       Deputy


PAUL VAN WEELDEN, et al.                 J JEFFREY COUGHLIN

v.

HILLCREST BANK                           STEVEN N BERGER


RULING

        The Court has considered Defendant's *Motion to Dismiss Pursuant to Rule 12(b)(6),
Ariz.R.Civ.P.*, filed June 17, 2010; Plaintiffs' *Objection to Motion to Dismiss*, filed July 6, 2010;
Defendant's Reply, filed July 19, 2010; Plaintiffs' *Motion to Amend Verified Complaint*, filed
June 30, 2010; *Defendant's Response to Plaintiffs' Untimely Motion to Amend*, filed July 20,
2010; Plaintiffs' Reply, filed August 2, 2010; and authorities cited therein. Oral argument has
been requested. However, the parties have thoroughly briefed all issues presented, and the Court
finds that oral argument is not necessary for a determination of the issues. The requests for oral
argument are denied.

        For good cause shown, pursuant to Rule 15(a), Ariz.R.Civ.P.,

        IT IS ORDERED granting Plaintiffs' leave to file their First Amended Complaint, as
proposed, attached to their Motion to Amend. There is no fixed time limit for requesting leave to
amend a complaint, and leave to do so is within the sound discretion of the Court. Bujanda v.
Montgomery Ward & Co., Inc., 125 Ariz. 314, 609 P.2d 584 (App. 1980). The Court finds that
there has been no undue delay, bad faith, dilatory motive, or repeated failures to cure deficiencies
on the part of the Plaintiffs. Owen v. Superior Court, 133 Ariz. 75, 649 P.2d 278 (1982).
Further, denial of a motion for leave to amend which adds new theories is generally an abuse of

SUPERIOR COURT OF ARIZONA
MARICOPA COUNTY

CV 2010-000896                                      08/06/2010

discretion.  As discovery is ongoing in this case, deadlines can be modified.  No trial date has been set.  Therefore, the amendment does not unduly prejudice the Defendant.

If a deficiency in the Complaint can be cured by further pleading, a motion to dismiss is disfavored. <u>Republic Nat. Bank of New York v. Pima County</u>, 200 Ariz. 199, 25 P.3d 1 (App. 2001); <u>In re Cassidy's Estate</u>, 77 Ariz. 288, 270 P.2d 1079 (1954).  As the Court has granted Plaintiffs' Motion to Amend which addresses the deficiencies set forth by Defendant, and as the Court finds that the allegations set forth in the Amended Complaint are sufficient to state a cause of action,

IT IS ORDERED denying Defendant's Motion to Dismiss.  Arizona is a notice pleading state.

IT IS FURTHER ORDERED directing the parties to confer and prepare by stipulation proposed amended discovery deadlines no later than **September 30, 2010.**

**HONORABLE EILEEN S. WILLETT**
**MARICOPA COUNTY SUPERIOR COURT**
**CENTRAL COURT BUILDING**
**201 W. JEFFERSON**
**4TH FLOOR, COURTROOM 401**
**PHOENIX, AZ 85003**
**602-506-3343**
This case is eFiling eligible: http://www.clerkofcourt.maricopa.gov/efiling/default.asp

Docket Code 019                  Form V000A                              Page 2