1   **WO**

2

3

4

5

6                    IN THE UNITED STATES DISTRICT COURT

7                        FOR THE DISTRICT OF ARIZONA

8

9   PAUL  VAN  WEELDEN  AND  KAREN)        No. 2:10-cv-01833-PHX-JAT
    VAN  WEELDEN,  husband  and  wife;)
10  PAUL VAN WEELDEN, as Trustee for)      **ORDER**
    THE VAN WEELDEN FAMILY TRUST,)
11                                        )
            Plaintiffs,                    )
12                                        )
                                          )
13  vs.                                    )
                                          )
14  HILLCREST BANK, a Kansas banking)
    corporation,                          )
15                                        )
            Defendant.                     )
16                                        )
    _____)
17

18          Currently before the Court is Defendant Hillcrest Bank's Motion to Dismiss Plaintiffs'

19  First Amended Complaint. (Doc. 10). Plaintiffs Paul and Karen Van Weelden, and Paul Van

20  Weelden acting as Trustee for the Van Weelden Family Trust, filed a response (Plaintiffs

21  labeled the response as an "Objection to the Motion to Dismiss") on September 30, 2010

22  (Doc. 11) and Defendant filed a Reply on October 12, 2010. (Doc. 12). For the reasons that

23  follow, the Court grants the Defendant's Motion to Dismiss without prejudice and grants

24  Plaintiffs leave to amend the Complaint with regards to Counts II, IV, and V.

25  **I. Background**

26          In 2003, Van Weelden Family Trust loaned Quintero Golf and Country Club

27  ("Quintero") $200,000.00 and received two Revenue Producing Membership Collateral

28  Certificates and Agreements ("RPMs") from Quintero. Repayment for each of these RPMs

1  was pledged by Gary McClung, who was the manager of Quintero Golf and Country Club,

2  LLC ("the LLC"). The LLC was the sub-divider listed in connection with the property

3  development on behalf of Quintero.  In June of 2004, Plaintiffs paid Quintero $150,000.00

4  to become Master Charter members, and were told by McClung that if they kept the

5  membership, it would yield a return of 16%–18%. These loans and payments were used to

6  fund the development of the Quintero property. In December of 2004, McClung executed

7  two promissory notes on behalf of Quintero in Plaintiffs' favor totaling $200,000.00. The

8  notes stated that the principal and interest would be paid on January 31, 2006.

9      About that same time, McClung began negotiating with Defendant to obtain financing

10  for the Quintero property. After several rounds of negotiations, Defendant agreed to issue a

11  line of credit for $31,134,000.00. This would also help service previous debts incurred by the

12  LLC and McClung, including $10,684,828.02 to pay an outstanding loan to another bank,

13  $61,523.59 to a title company, $360,000.00 for Defendant's own fees, $50,000.00 for legal

14  fees.

15      In 2005, Plaintiffs, acting as trustees of the Trust, purchased Lot 40 of the Quintero

16  Golf and Country Club. As part of the Subdivision Public Report released by the State of

17  Arizona Department of Real Estate ("ADRE"), the LLC was supposed to complete asphalt

18  paved public streets with concrete curbs by December 26, 2005, and asphalt paved private

19  streets by February 15, 2006 ("infrastructure work"). As of the date of filing, the

20  infrastructure work on Plaintiffs' property had not been completed. Plaintiffs allege that

21  Defendant began to reduce the funding available to the project, including cancelling certain

22  letters of credit, despite knowing that the infrastructure work had not been completed.

23      By April 2006, McClung had only repaid $100,000.00 of the $200,000.00 owed on

24  the promissory notes to Plaintiffs. Throughout 2006 and 2007, McClung repeatedly promised

25  to repay his financial obligations, including the promissory notes and the RPMs. Defendant

26  also experienced difficulties obtaining payment from McClung. Defendant refused to release

27  any more funds for construction on the Quintero property, and the majority of the contractors

28  had stopped working on the Quintero property because of untimely or complete lack  of

1  payment. In 2007, Defendant officially terminated the Quintero projects, despite the fact that

2  Plaintiffs' property still had an incomplete infrastructure.

3       Defendant sent a Notice of Default to Quintero in 2009, and Quintero's golf course

4  was subsequently surrendered to Defendant. Defendant recorded a Notice of Trustee's Sale

5  for October 7, 2009. However, the date of the sale was postponed several times. Plaintiffs

6  filed a complaint with the ADRE and requested that the public report be suspended. On

7  March 31, 2010, the ADRE suspended the public report for Quintero, in part, because the

8  lack of completed roads constituted an immediate threat to public health, safety, and welfare.

9       Plaintiffs originally filed suit against Defendant in Maricopa County Superior Court

10  on January 8, 2010. On February 5, 2010, Plaintiffs received a Temporary Restraining Order

11  from the Superior Court barring Defendant from conducting the trustee's sale. On August 6,

12  2010, the Superior Court granted Plaintiffs leave to file the First Amended Complaint.[1]

13  Defendant then removed this case to the United States District Court on August 26, 2010.

14  Plaintiffs' First Amended Complaint contains five Counts: (1) Injunctive Relief; (2)

15  Intentional Interference with Contract; (3) Aiding and Abetting McClung's Negligence; (4)

16  Aiding and Abetting McClung's Fraudulent Misrepresentation; and (5) Civil Conspiracy.

17  (Doc. 2 at No. "24").

18  **II. Legal Standard**

19       The Court may dismiss a complaint under 12(b)(6) for two reasons: 1) lack of a

20  cognizable legal theory; and 2) insufficient facts alleged under a cognizable legal theory.

21  *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

22       To survive a 12(b)(6) motion to dismiss for failure to state a claim, a complaint must

23  meet the requirements of Federal Rule of Civil Procedure 8(a)(2).  Rule 8(a)(2) requires a

24  "short and plain statement of the claim showing that the pleader is entitled to relief," so that

25  the defendant has "fair notice of what the . . . claim is and the grounds upon which it rests."

26

27       [1] At the time of this Order, Plaintiffs had not yet filed and served the First Amended
    Complaint. Instead, the First Amended Complaint was presented to the Court as Exhibit No.
28  "24" to Defendant's notice of removal. (Doc. 2).

1   *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355
2   U.S. 41, 47 (1957)).

3          Although a complaint attacked for failure to state a claim does not need detailed
4   factual allegations, the pleader's obligation to provide the grounds for relief requires "more
5   than labels and conclusions, and a formulaic recitation of the elements of a cause of action
6   will not do." *Twombly*, 550 U.S. at 555 (internal citations omitted).  The factual allegations
7   of the complaint must be sufficient to raise a right to relief above a speculative level.  *Id*.
8   Rule 8(a)(2) "requires a 'showing,' rather than a blanket assertion, of entitlement to relief.
9   Without some factual allegation in the complaint, it is hard to see how a claimant could
10  satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also
11  'grounds' on which the claim rests." *Id*. (citing 5 CHARLES ALAN WRIGHT & ARTHUR R.
12  MILLER, FEDERAL PRACTICE & PROCEDURE §1202, at 94–95 (3d ed. 2004)).

13         Rule 8's pleading standard demands more than "an unadorned, the-defendant-
14  unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, __ U.S. __, 129 S.Ct. 1937, 1949
15  (2009) (citing *Twombly*, 550 U.S. at 555).  A complaint that offers nothing more than naked
16  assertions will not suffice.   To survive a motion to dismiss, a complaint must contain
17  sufficient factual matter, which, if accepted as true, states a claim to relief that is "plausible
18  on its face." *Iqbal*, 129 S.Ct. at 1949.  Facial plausibility exists if the pleader pleads factual
19  content that allows the court to draw the reasonable inference that the defendant is liable for
20  the misconduct alleged.  *Id*.  Plausibility does not equal "probability," but plausibility
21  requires more than a sheer possibility that a defendant has acted unlawfully.  *Id*.  "Where a
22  complaint pleads facts that are 'merely consistent' with a defendant's liability, it 'stops short
23  of the line between possibility and plausibility of 'entitlement to relief.'" *Id*. (citing *Twombly*,
24  550 U.S. at 557).

25         In deciding a motion to dismiss under Rule 12(b)(6), the Court must construe the facts
26  alleged in the complaint in the light most favorable to the drafter of the complaint and the
27  Court must accept all well-pleaded factual allegations as true.  *See Shwarz v. United States*,
28  234 F.3d 428, 435 (9th Cir. 2000).  Nonetheless, the Court does not have to accept as true

a legal conclusion couched as a factual allegation. *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

### III. Analysis

#### A. Injunctive Relief

The Court may dismiss a complaint under rule 12(b)(6) for a lack of a cognizable legal theory. *Balistreri*, 901 F.2d at 699. Plaintiffs list their first Count of the Complaint as "Injunctive Relief." (Doc. 2, Ex. No. "24," First Amended Complaint, 20:15). However, injunctive relief is a remedy granted by the Court, not a legal theory. The 11th Circuit has explained:

> [A]ny motion or suit for a traditional injunction must be predicated upon a cause of action, such as nuisance, trespass, the First Amendment, etc., regarding which a plaintiff must show a likelihood or actuality of success on the merits. **There is no such thing as a suit for a traditional injunction in the abstract.** For a traditional injunction to be even theoretically available, a plaintiff must be able to articulate a basis for relief that would withstand scrutiny under FED.R.CIV.P. 12(b)(6) (failure to state a claim).

*Klay v. United Healthgroup, Inc.*, 376 F.3d 1092, 1097 (11th Cir. 2004) (emphasis added). Therefore, because Plaintiffs have not based their request for Injunctive Relief upon a cognizable legal theory, Defendant's Motion to Dismiss, as it relates to Count I of the Complaint, is granted.

#### B. Intentional Interference with Contract

In Arizona, to recover for the tort of intentional interference with contractual relations, a plaintiff must prove five elements: "(1) existence of a valid contractual relationship, (2) knowledge of the relationship on the part of the interferor, (3) intentional interference inducing or causing a breach, (4) resultant damage to the party whose relationship has been disrupted, and (5) that the defendant acted improperly." *Wells Fargo Bank v. Ariz. Laborers, Teamsters & Cement Masons Local No. 395 Pension Trust Fund*, 38 P.3d 12, 31 (Ariz. 2002).

The first element, the existence of a valid contractual relationship, is satisfied in ¶ 53 of Plaintiffs' first amended complaint which states that Paul and Karen Van Weelden, as

1   trustees of the Van Weelden Family Trust, purchased Lot 40 of Founders Estates Three.

2   (Doc. 2). In its Motion to Dismiss, Defendant distinguishes between Plaintiffs acting in their

3   individual capacity and in their capacity as trustees of the Family Trust. Defendant claims

4   that Plaintiffs Paul and Karen Van Weelden, while acting in their individual capacity, were

5   not parties to the purchase contract because the Trust purchased Lot 40. Defendant asserts

6   there is no valid contractual relationship with the Van Weeldens in their individual capacity,

7   and that this count should be dismissed. However, the Court does not need to discuss this

8   distinction at this time because even if Plaintiffs are able to bring suit in their individual

9   capacity, their claim as individuals encounters the same problems as their claim as trustees

10  of the Family Trust.

11          The second element, whether the defendant knew that there was a contractual

12  relationship, is met when Plaintiffs alleged that "[p]ursuant to the transaction requirements,

13  a portion of all Quintero lot sales would be paid to Hillcrest [defendant] to service the loan."

14  (Doc. 2, ¶ 37). The Court must accept all well-pleaded factual allegations as true. *Shwarz*,

15  234 F.3d at 435. To survive a motion to dismiss, a complaint must contain sufficient factual

16  matter, which, if accepted as true, states a claim to relief that is "plausible on its face." *Iqbal*,

17  129 S.Ct. at 1949. Facial plausibility exists if the pleader pleads factual content that allows

18  the court to draw the reasonable inference that the defendant is liable for the misconduct

19  alleged.  *Id*. Taking this well-pleaded fact to be true, the Court finds it plausible that

20  Defendant knew that Plaintiffs had entered into a purchase agreement since Defendant was

21  paid with proceeds from lot purchases that included Plaintiffs' Lot 40 purchase.

22          The third element has several aspects. First there must be 1) a breach of the contract,

23  that was 2) caused by 3) an intentional interference by the defendant. Plaintiffs have alleged

24  sufficiently well-pleaded facts to show that their Lot 40 property's infrastructure remains

25  incomplete. (Doc. 2, ¶¶55–57). However, there is no indication that this lack of infrastructure

26  is the result of a *breach* of the purchase agreement. In order to establish this critical

27  connection, Plaintiffs must plead facts that would show the Court that completed

28  infrastructure, as discussed in the Public Report (Doc. 2, ¶54), was part of the purchase

1   agreement entered into between Plaintiffs and Quintero.

2          Assuming for the time being that there was a breach of the contract, Plaintiffs have

3   not shown that Defendant caused that breach, nor that Defendant intended to cause the

4   breach. Intent is shown "by proving that the interferor either intended or knew that '[a

5   particular] result was substantially certain to be produced by its conduct.'" *Wells Fargo*, 38

6   P.3d at 32 (quoting *Snow v. Western Sav. & Loan Ass'n*, 730 P.2d 204, 211 (Ariz. 1986)).

7   According to the Complaint, Defendant knew that infrastructure had not been completed

8   when Defendant agreed to cancel the letters of credit. (Doc. 2, ¶130). However, Plaintiffs

9   state that "the letter of credit issued regarding Founders Estates Three (the portion of the

10  subdivision containing the Van Weelden property) expired by its terms on May 16, 2006."

11  (Doc. 2, ¶64). Plaintiffs do not explain how the letters of credit that Defendant cancelled

12  relate to their specific piece of property, especially in light of the fact that the specific letter

13  of credit for their property expired through no action of the Defendant. So even if Defendant

14  knew that infrastructure remained incomplete, there is no indication that Defendant knew that

15  Plaintiffs' infrastructure would not be finished *as a result of* Defendant cancelling certain

16  letters of credit. Therefore, the Court finds that Plaintiffs have not pled sufficient facts for

17  the third element.

18         The fourth element requires Plaintiffs to show that they have been damaged as a result

19  of Defendant's intentional interference with the purchase agreement. At first glance, it seems

20  Plaintiffs have pled sufficient facts to meet this requirement. For example, Plaintiffs state that

21  the Quintero property cannot be sold while the Public Report is suspended. (Doc. 2, ¶115).

22  However, Plaintiffs filed a complaint *requesting* the ADRE to suspend the Public Report.

23  (Doc. 2, ¶111). Therefore, as the complaint stands, Plaintiffs are the cause of their own

24  damages. Should Plaintiffs amend the First Amended Complaint, the Court requires them to

25  state with specificity the damages that *Defendant* has caused through its alleged intentional

26  interference with Plaintiffs' purchase agreement. The Court warns Plaintiffs that the

27  allegation in ¶132 which reads "Plaintiffs have been damaged as a result of [Defendant]'s

28  improper actions" is a legal conclusion couched as a factual allegation and is therefore

1    insufficient as the sole evidence of damages. *Papasan*, 478 U.S. at 286.

2        The final element requires Plaintiffs to show that Defendant acted improperly. Of the

3    seven factors that can be analyzed to determine wrongful conduct, the "[f]actors deserving

4    the most weight are the nature of the actor's conduct and the actor's motive." *Wells Fargo*,

5    38 P.3d at 32. In their answer to Defendant's Motion to Dismiss, Plaintiffs do not even

6    address this element. While Plaintiffs' Complaint does allege that Defendant may have been

7    using unsafe or unsound banking practices (Doc. 2, ¶117), Plaintiffs do not allege sufficient

8    facts to show that it is plausible that Defendant's motives were anything but self-interested.

9    There is no indication that Defendant acted with an "affirmative strategy" or an "improper

10   purpose" to deprive Plaintiffs of a fully-completed infrastructure on their property. *See Wells

11   Fargo*, 38 P.3d at 33. As the Complaint currently stands, Defendant cancelled the letters of

12   credit at McClung's request, but not for some allegedly improper motive. Regardless,

13   Plaintiffs' letter of credit expired by its own terms. The Court, therefore, grants Defendant's

14   Motion to Dismiss Plaintiffs' claim of "Intentional Interference with Contract" and grants

15   Plaintiffs leave to amend this particular claim with specific instruction to address the

16   pleading insufficiencies, if possible.

17       **C. Aiding and Abetting McClung's Negligence**

18       "Arizona recognizes aiding and abetting as embodied in Restatement § 876(b), that

19   a person who aids and abets a tortfeasor is himself liable for the resulting harm to a third

20   person." *Id.* at 23. Plaintiffs correctly state the three elements that are required for a claim

21   of aiding and abetting tortious conduct: "(1) the primary tortfeasor must commit a tort that

22   causes injury to the plaintiff; (2) the defendant must know that the primary tortfeasor's

23   conduct constitutes a breach of duty; and (3) the defendant must substantially assist or

24   encourage the primary tortfeasor in the achievement of the breach." *Id.* Plaintiffs allege that

25   McClung was negligent and that this constitutes the underlying tort as required by the first

26   element of the aiding and abetting claim. (Doc. 2, 23:1). For the reasons stated below,

27   Plaintiffs' allegation of negligence fails.

28       "To prevail on a negligence claim, a plaintiff must show 'the existence of a duty owed

by the defendant to the plaintiff, a breach of that duty and an injury proximately caused by that breach.'" *Tilley v. Delci*, 204 P.3d 1082, 1085 (Ariz. Ct. App. 2009) (quoting *Flowers v. K-Mart Corp.*, 616 P.2d 955, 957 (Ariz. Ct. App. 1980)). Plaintiffs allege that McClung, "[a]s a promoter and the Manager of Quintero, a limited liability company, . . . owed a fiduciary duty to Plaintiffs as investors in the company," (Doc. 2, ¶134), and "[a]s a Manager of Quintero . . . [McClung] has a duty to manage the corporate affairs of Quintero with the ordinary care a reasonably prudent person would." (Doc. 2, ¶137). However, Plaintiffs' claim is insufficient given the current case law in Arizona.

Arizona did not adopt the exact language of the Uniform Limited Liability Company Act. One of the key differences, at least as it relates to this case, is that the Arizona Limited Liability Company Act does not impose express fiduciary duties on managers or members of a limited liability company. Therefore, under Arizona law there is no express duty imposed on McClung, which he could have breached to Plaintiffs' detriment.[2]

The Court may dismiss a complaint for failure to state a claim under 12(b)(6) for a lack of a cognizable legal theory. *Balistreri*, 901 F.2d at 699. Because there is no law or statute in Arizona which imposes a duty on McClung to the extent alleged in this count of the Complaint, he did not act negligently towards Plaintiffs. Therefore, because there is no underlying tort, Plaintiffs' claim that Defendant aided and abetted McClung's negligence fails as a matter of law. The Court grants Defendant's Motion to Dismiss with respect to Count III of the First Amended Complaint. The deficiencies in Plaintiffs' claim arise from substantive law, rather than poorly pleaded factual allegations; therefore, the Court does not grant Plaintiffs leave to amend this particular claim.

### D. Aiding and Abetting McClung's Fraudulent Misrepresentation

Plaintiffs' claim that Defendant aided and abetted McClung's fraudulent

---

[2] It is important to note that the Court is simply stating that Defendant has no duty, because the Arizona courts have not yet determined whether, and how, that duty exists—the Court is not interpreting the Arizona Limited Liability Company Act as expressly creating no duty.

1   misrepresentation introduces the heightened pleading standard of Rule 9(b). Rule 9(b)

2   requires that "allegations of fraud must be 'specific enough to give defendants notice of the

3   particular misconduct which is alleged to constitute the fraud charged so that they can defend

4   against the charge and not just deny that they have done anything wrong.'" *Bly-Magee v.*

5   *California*, 236 F.3d 1014, 1019 (9th Cir. 2001) (quoting *Neubronner v. Milken*, 6 F.3d 666,

6   672 (9th Cir. 1993)). The 9th Circuit has held:

7           In order for a complaint to allege fraud with the requisite
        particularity, "a plaintiff must set forth more than the neutral
8       facts necessary to identify the transaction. The plaintiff must set
        forth *what* is false or misleading about a statement, and *why* it
9       is false. In other words, the plaintiff must set forth an
        explanation as to why the statement or omission complained of
10      was false or misleading."

11  *Yourish v. Cal. Amplifier*, 191 F.3d 983, 993 (9th Cir. 1999) (emphasis added) (quoting *In*

12  *re GlenFed*, 42 F.3d 1541, 1548 (9th Cir. 1994)).

13          Because Plaintiffs' fourth claim is also an aiding and abetting claim, the three aiding

14  and abetting elements listed above apply here as well. Therefore, the first element that

15  Plaintiff must plead is that McClung committed fraud. In order to prevail on a fraud claim

16  under Arizona law, a claimant must show:

17          1) a representation; 2) its falsity; 3) its materiality; 4) the
        speaker's knowledge of the representation's falsity or ignorance
18      of its truth; 5) the speaker's intent that it be acted upon by the
        recipient in the manner reasonably contemplated; 6) the hearer's
19      ignorance of its falsity; 7) the hearer's reliance on its truth;
        8) the right to rely on it; and 9) his consequent and proximate
20      injury.

21  *Echols v. Beauty Built Homes*, 647 P.2d 629, 631 (Ariz. 1982). According to Plaintiffs,

22  McClung made false representations "regarding the repayment of monetary obligations."

23  (Doc. 2, ¶148). Therefore, the only facts that are applicable to this element of the claim are

24  those interactions between Plaintiffs and McClung regarding the loans and other *monetary*

25  obligations. After a review of the record, the only allegations that explicitly refer to monetary

26  obligations between Plaintiffs and McClung are ¶¶ 6–7, 9–10, and 65–77. (Doc. 2). It is

27  Plaintiffs' burden to show, from these factual allegations, the specifics regarding the fraud,

28  including what it is false or misleading about a statement, and why it is false. *Yourish*, 191

F.3d at 993.

Plaintiffs do not state which of McClung's statements are false, nor why they are false. Plaintiffs allege that "McClung made material false representations to Plaintiffs regarding the repayment of monetary obligations." (Doc. 2, ¶148). However, simply asserting that a statement was false, and offering no other evidence, other than the fact that the money was not repaid, does not meet the burden to set forth what is false or misleading about the statement. *Yourish*, 191 F.3d at 993. Because the rest of the elements for fraud under Arizona law appear to build on the existence of a false representation, and Plaintiffs have not pled sufficiently particular facts for that element, the Court does not need to address whether Plaintiffs have met their burden with respect to the remaining elements. Therefore, the Court grants Defendant's Motion to Dismiss with leave for Plaintiffs to amend this particular claim to correct the deficiencies in the First Amended Complaint, if possible.

**E. Civil Conspiracy**

"For a civil conspiracy to occur two or more people must agree to accomplish an unlawful purpose or to accomplish a lawful object by unlawful means, causing damages." *Wells Fargo*, 38 P.3d at 36 (quoting *Baker v. Stewart Title & Trust of Phoenix*, 5 P.3d 249, 256 (Ariz. Ct. App. 2000)). The individuals  must "agree and thereupon accomplish" an underlying tort. *Id.* "A claim for civil conspiracy must include an actual agreement, proven by clear and convincing evidence . . . ." *Id.* at 37.

Plaintiffs claim that three of Defendant's corporate officers "agreed with McClung to accomplish an unlawful purpose, as described [by the complaint] or to accomplish a lawful object by unlawful means, as described [by the complaint]." (Doc. 2, ¶162). However, Plaintiffs do not state the tort that was previously agreed upon. Plaintiffs simply state that there was an agreement to accomplish an unlawful purpose "as described above." There are four other claims in Plaintiffs' complaint, three of which are considered torts: intentional interference with a contract and two claims of aiding and abetting. Plaintiffs must present clear and convincing evidence that there was an agreement to accomplish a specific tort, and without stating the underlying tort, Plaintiffs' conclusory allegation that Defendant's officers

1   entered into an agreement with McClung is insufficient to state a claim for civil conspiracy.

2         The Supreme Court of Arizona explained that "[t]here is a qualitative difference

3   between proving an *agreement* to participate in a tort, *i.e.*, a civil conspiracy, and proving

4   knowing action that substantially aids another to commit a tort." *Wells Fargo*, 38 P.3d at 37

5   (quoting *Halberstam v. Welch*, 705 F.2d 472, 478 (D.C. Cir 1983)). The Supreme Court held

6   that it was "unreasonable to infer a conspiratorial agreement . . . [e]ven though legitimate

7   questions exist on the . . . claims of aiding and abetting, . . . [and] intentional interference."

8   *Id.* (quoting *Aetna Cas. & Sur. Co. v. Leahey Constr. Co., Inc.*, 219 F.3d 519, 537 (6th Cir.

9   2000)). The Court echoes this caution to Plaintiffs. There must be clear and convincing

10  evidence of an agreement to carry out, and the actual completion, of a specific underlying

11  tort. Using evidence that may otherwise support other claims is insufficient. Therefore, the

12  Court grants Defendant's Motion to Dismiss and grants Plaintiffs leave to amend this claim.

13  **IV. Leave to Amend**

14        Defendant has requested the Court to grant its Motion to Dismiss with prejudice.

15  However, the Ninth Circuit has instructed district courts to grant leave to amend, *sua sponte*,

16  when dismissing a case for failure to state a claim, "unless the court determines that the

17  pleading could not possibly be cured by the allegations of other facts." *Lopez v. Smith*, 203

18  F.3d 1122, 1127 (9th Cir. 2000) (quoting *Doe v. United States*, 58 F.3d 494, 497 (9th Cir.

19  1995)). There is a "longstanding rule that '[l]eave to amend should be granted if it appears

20  at all possible that the plaintiff can correct the defect.'" *Id.* at 1129 (quoting *Balistreri*, 901

21  F.2d at 701)). In this case, the Court cannot say that *some* of the deficiencies in Plaintiffs'

22  First Amended Complaint cannot be cured by amendment; therefore, the Court will grant

23  Defendant's Motion to Dismiss with leave to amend. Plaintiffs will be given a reasonable

24  opportunity, if they so choose, to amend their complaint to make clear their allegations in

25  short plaint statements. In the amended complaint, Plaintiffs must resolve the issues

26  identified by the Court in this Order.

27  //

28  //

1    Accordingly,

2        **IT IS ORDERED** that Defendant's Motion to Dismiss (Doc. # 10) is **GRANTED**

3   with prejudice with regards to Counts I and III.

4        **IT IS ORDERED** that Defendant's Motion to Dismiss (Doc. # 10) is **GRANTED**

5   without prejudice with regards to Counts II, IV, and V.

6        **IT IS FURTHER ORDERED** that Plaintiff may file a Second Amended Complaint

7   with respect to Counts II, IV, and V, which complaint must be in compliance with Rule 8(a)

8   and filed  no later than 30 days from the date of this Order. If no second amended complaint

9   is filed within 30 days, the Clerk of the Court shall, without further Court order, dismiss this

10   case with prejudice.

11       DATED this 28th day of February, 2011.

12

13

14                                    James A. Teilborg
                                United States District Judge
15

16

17

18

19

20

21

22

23

24

25

26

27

28